# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| JILL HINES ET AL | CASE NO. 3:23-CV-00571 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| ALEX STAMOS ET AL | MAG. JUDGE KAYLA D. MCCLUSKY |

## MEMORANDUM ORDER

Pending before the Court is a Motion to Compel Individual Arbitration, Dismiss Plaintiff's Class Claims, and Stay all Proceedings, or Alternatively to Transfer Venue Under U.S.C. § 1404 [Doc. No. 69] filed by Defendants.[1] An Opposition [Doc. No. 84] was filed by Plaintiffs Jill Hines ("Hines") and Jim Hoft ("Hoft").

The primary issue is whether Defendants (who are not signatories thereto) can require Hines and Hoft to arbitrate pursuant to an arbitration clause contained in the terms of the service agreements with both Facebook and Twitter. This Court finds that they cannot. Therefore, Defendants' Motion to Compel Arbitration is **DENIED.**

## I. BACKGROUND

Hines is a resident of Ruston, Louisiana, and co-Director of Health Freedom Louisiana, a consumer and human rights advocacy organization.[2] Hoft is a resident of St. Louis, Missouri and the founder, owner, and operator of the news website, The Gateway Pundit.[3] Hines and Hoft allege their free speech rights under the First Amendment of the United States Constitution were violated

---

[1] Alex Stamos ("Stamos"), Renee DiResta ("DiResta"), the Board of Trustees of the Leland Stanford Junior University ("Board of Trustees"), the Leland Stanford Junior University ("Stanford"), Kate Starbird ("Starbird"), Graphika, Camille Francois ("Francois"), the Atlantic Council ("Atlantic"), Graham Brookie ("Brookie"), and the Aspen Institute ("Aspen") (collectively "Defendants")
[2] [Doc. No. 77, p. 4 ¶8]
[3] [Id., ¶ 10]

by the censorship and/or suppression of their views on social media platforms.[4,5] Hines and Hoft filed this Complaint on behalf of themselves and those similarly situated to assert their Constitutional right to freedom of speech under the First Amendment.[6]

The following facts are those alleged by Plaintiffs in their Amended Complaint [Doc. No. 70]. The Court is not adopting them as findings of fact, but for these purposes, the Court asks the reader to read these facts *as alleged* by Plaintiffs.

Defendants are alleged to have worked closely and/or collaborated with state and federal government officials to urge, pressure, and coerce social media platforms to monitor and censor disfavored speakers and content.[7] Stamos is the Director of the Stanford Internet Observatory ("SIO").[8] DiResta is the Research Manager of the SIO.[9] Hines and Hoft allege social media censorship activities of the SIO were conducted under the direction of Stamos and DiResta.[10]

Starbird is a state official from the University of Washington who has played and continues to play a key role in co-directing the Election Integrity Partnership ("EIP") and Virality Project ("VP").[11] Starbird's organization, the University of Washington's Center for an Informed Public ("CIP"), was supposedly one of the major contributors to this effort.[12]

The Board of Trustees is the governing body of Stanford University.[13] Stanford is a private university located in Stanford, California. Plaintiffs assert that Stanford is responsible for the social media censorship conducted by the SIO.[14]

---

[4] [Id., ¶ 9]
[5] [Id., p. 5 ¶ 11]
[6] [Id., ¶ 12]
[7] [Id., p. 2, ¶ 2]
[8] [Id., p. 6 ¶ 18]
[9] [Id., ¶ 19]
[10] [Id., ¶ 20]
[11] [Id., p.7 ¶ 23]
[12] [Id., ¶ 24]
[13] [Id., p. 6 ¶ 17]
[14] [Id. ¶ 16]

Graphika is a network analysis firm that is one of the major participants in the EIP and VP. Graphika supposedly played a major role in the EIP and VP's social media censorship activities.[15] Francois is purported to be the Chief Innovation Officer of Graphika and lead Graphika's participation in the EIP, which Plaintiffs claim includes the social media censorship activities.[16]

The Atlantic is a think tank based in Washington, DC that houses the Atlantic Council's Digital Forensic Research Lab ("DFRLab"). Plaintiffs claim that the DFRLab is operationalizes the study of disinformation by exposing falsehoods. The DFRLab is to be a central participant and to have played a major role in social-media censorship activities.[17] Brookie is the Senior Director of Atlantic's DFRLab and to have played a leading role in social media censorship activities.[18]

Aspen is a non-profit organization headquartered in Washington, DC, which sponsors seminars and festivals for government and private sector individuals for the purpose of government-private collaboration on government-induced censorship. Aspen allegedly receives funding from both the federal government and social media platforms. Plaintiffs claim that Aspen conspired and colluded with social-media companies and journalists to minimize news coverage of the Hunter Biden laptop story before the story was published in October 2020.[19] Stamos and Starbird purported to have worked with Aspen to coordinate these activities.[20]

According to Hines and Hoft, they do not seek to enforce Facebook, Twitter and/or YouTube's terms of service (which included an arbitration agreement) against the social media platforms, but they instead intend to challenge the pressure, coercion, cooperation, and

---

[15] [Id., p. 8, ¶ 25]
[16] [Id., p. 9, ¶ 28]
[17] [Id., p. 10, ¶¶ 29-30]
[18] [Id., p. 10, ¶¶ 33-34]
[19] [Id., pp. 11-12, ¶¶37-40]
[20] [Id., pp 11-12, ¶¶ 39, 42]

entwinement of these outside persons and entities working with government officials to suppress and/or remove free speech from social media platforms.[21]

In Defendants' Motion to Compel Arbitration, Defendants attempt to use the arbitration clauses contained in the terms of service agreement with Facebook and Twitter to compel arbitration for Hines and Hoft's claims. Facebook and Twitter are not parties in this lawsuit. Defendants are non-signatories to Hines and Hoft's terms of service agreement with Facebook and Twitter.

## II. LAW AND ANALYSIS

### A. Arbitration

The Federal Arbitration Act[22] ("FAA") requires arbitration provisions to be valid, irrevocable, and enforceable, except for such grounds as exist in law or in equity for the revocation of any contract. The FAA reflects a liberal federal policy favoring arbitration and courts must enforce arbitration agreements as written. *Epic Sys. Corp. v. Lewis*, 138 U.S. 1612, 1630, 1632 (2018).

The FAA requires courts to compel arbitration if (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of that agreement. *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006).

While the Fifth Circuit has not yet articulated the appropriate procedure to evaluate a defendant's motion to compel arbitration, district courts have used the summary judgment standard under Fed. R. Civ. P. 56. *Grant v. House of Blues New Orleans Restaurant Corp.*, 2011 WL 1596207 at 3 (E.D. La., April 27, 2011). Under this standard, summary judgment is appropriate when the pleadings and evidence submitted show no genuine issue exists as to any material fact,

---

[21] [Id., p. 15, ¶ 50]
[22] 9 U.S.C. § 2

and that the moving party is entitled to judgment as a matter of law. *Gassaway v. Beacon Fabrication LLC*, 2021 WL 1523008 at 4 (N.D. Tex. Feb. 24, 2021). In the context of a motion to compel arbitration, the Rule 56 standard requires the movant to present evidence sufficient to demonstrate an enforceable agreement to arbitrate. *Barnes v. Vroom Auto, LLC*, 2023 WL 3025076 at 2 (S.D. Tex. Apr. 20, 2023).

No party disputes an arbitration clause exists in the Facebook and Twitter terms of service agreements. Also, no party disputes that the Defendants were neither parties nor signatories to the arbitration agreements entered into by Hines and Hoft. In an attempt to enforce the arbitration clause and the choice of law provisions in the Hines and Hoft terms of service agreement, Defendants attempt to use an equitable estoppel legal theory.

**B.     Equitable Estoppel**

In *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527 (5th Cir. 2000), the United States Court of Appeals for the Fifth Circuit held that a non-signatory to an arbitration agreement can compel arbitration under equitable estoppel in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the non-signatory; or (2) when the signatory to a contract containing an arbitration clause raises allegations of substantially independent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract.[23]

The Court finds that Defendants are not entitled to the use of equitable estoppel to enforce arbitration for a number of reasons. First, Hines and Hoft are not relying on the terms of the Facebook and/or Twitter terms of service agreement to assert their claims. Second, Hines and Hoft have not named either Facebook or Twitter in their lawsuit as the lawsuit only alleges that

---

[23] Referred to as the "intertwined-claims" test.

5

Defendants have worked closely with and collaborated with state and federal government officials to urge, pressure, and coerce the social media platforms to censor disfavored speakers and content. Third, because the application of equitable estoppel is discretionary and based upon equitable fairness considerations, the Court finds that Defendants do not have the "clean hands" required for the application of equitable estoppel. Nevertheless, the Court will analyze whether equitable estoppel may be used on these facts below.

### 1. *Grigson* Test One

*Grigson* holds that the first way for a non-signatory to an arbitration agreement to compel arbitration under equitable estoppel is when the signatory must rely on the written agreement in asserting its claim against the non-signatories. Hines and Hoft are not relying on Facebook and/or Twitter's terms of service in asserting its claims against the Defendants. The Plaintiffs' First Amended Complaint specifically alleges that Plaintiffs do not seek to enforce the terms of service agreements but alleges the Defendants collaborated with government officials to push the social media platforms to suppress Plaintiffs' speech.[24]

Defendants cannot satisfy this *Grigson* test to show why equitable estoppel would allow for arbitration here.

### 2. *Grigson* Test Two

Grigson's second test requires that the signatory to a contract containing an arbitration clause raise allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract. The allegations of the First Amended Complaint are aimed at Defendants, not Facebook or Twitter. The Defendants are alleged to have

---

[24] [Doc No. 77, p. 15, ¶ 50]

colluded with government officials to urge, pressure, and coerce the social media companies to censor disfavored speakers and content.

The alleged concerted misconduct is between Defendants and government officials, not between Defendants and Facebook and/or Twitter. Therefore, Defendants also cannot satisfy the second *Grigson* test to show why equitable estoppel would allow for arbitration here.

### C. Fairness and Clean Hands

The linchpin for equitable estoppel is equity-fairness. *Grigson*, 210 F.3d at 528. Because the equitable estoppel doctrine invoked by defendants is rooted in equity, it is therefore subject to the equitable maxim that "he who comes into equity must come with clean hands." *Motorola Credit Corp. v. Uzan*, 274 F. Supp. 2d 481, 505 (S.D. N.Y. 2003), affirmed in part, vacated in part, 388 F.3d 39 (2d Cir. 2005).

Equitable estoppel is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief. *Precision Instrument Mfg. Co. v. Automotive Maint. Machinery*, 324 U.S. 806, 814 (1945).

A motion to compel arbitration, like all equity-oriented actions, carries with it the affirmative defense of "unclean hands." *Bank of Saipan v. CNG Financial Corp.*, 380 F.3d 836, 840 (5th Cir. 2004).

Based upon the allegations contained in the First Amended Complaint, it would be inequitable to allow Defendants to compel arbitration. According to the allegations, both of the signatories to the terms of the service agreement are victims of Defendant and government collusion and pressure to violate Plaintiffs' free speech rights. To allow Defendants to take advantage of an arbitration agreement against the two alleged victims would be inequitable.

7

Additionally, the Defendants are alleged to have violated the Plaintiffs' fundamental constitutional right of free speech, as guaranteed by the First Amendment. To allow Defendants to avoid a court proceeding based upon an arbitration agreement they did not sign would also be inequitable, especially when a fundamental right is at issue.

The terms of the service agreement state the agreement is governed by California law. In *Hernandez v. Meridian Management Services, LLC*, 87 Cal. App. 5th 1214 (2d Div. Cal., 2023), the California court held that where a signatory to an arbitration agreement sues a non-signatory, there is no unfairness in allowing the suit to proceed. The case in opposition cited by Defendants[25] was decided prior to *Hernandez* and was admittedly an *Erie* guess.

This Court finds it would be inequitable to compel arbitration under these circumstances. Defendants request to compel arbitration is therefore, **DENIED**.

### D. Transfer Venue, Dismiss Class and Stay

Defendants also move the Court to dismiss the Plaintiffs' class claims, stay the proceeding after ordinary arbitration, and transfer venue to California. All of these requests are based upon being able to receive the benefit of the arbitration agreements. Without being able to use the arbitration agreement, there is no basis to dismiss Plaintiffs' class claims, stay the proceedings, or transfer venue based upon the choice of law provision in the arbitration clause.

Because this Court has found that the Defendants are not entitled to use or receive the benefit of the arbitration clauses in the Facebook and/or Twitter terms of service agreements, Defendants' request to dismiss the Plaintiffs' class claims, stay the proceeding, and transfer venue are also **DENIED.**

---

[25] *Franklin v. Community Regional Medical Center*, 998 F.3d 867, (9th Cir. 2021).

### III. CONCLUSION

For the reasons set forth herein, ,

**IT IS ORDERED** that Defendants Motion to Compel Individual Arbitration, Dismiss Plaintiffs' Class Claims, and Stay All Proceedings, or Alternatively to Transfer Venue [Doc. No. 69] is **DENIED**.

**MONROE, LOUISIANA**, this 15th day of November, 2023.

_____
Terry A. Doughty
United States District Judge