# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

JILL HINES, et al.,

    *Plaintiffs*,

v.

ALEX STAMOS, et al.,

    *Defendants*.

Case No. 3:23-cv-00571-TAD-KDM

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STAY PROCEEDINGS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ........................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..................................................................2

    A.  Proceedings in *Missouri v. Biden* ...................................................................................2

    B.  Proceedings in *Hines v. Stamos* .....................................................................................5

    C.  The EIP/VP Plans Massive Censorship Activity in the 2024 Election Cycle ......................7

ARGUMENT ...............................................................................................................................10

    A.  The Requested Stay Would Not Serve Judicial Economy ...................................................10

    B.  The Requested Stay Would Inflict Severe Prejudice on Plaintiffs .....................................13

    C.  Plaintiffs Do Not Object to Defendants' Other Requested Relief ......................................14

CONCLUSION ............................................................................................................................14

CERTIFICATE OF SERVICE ....................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Ali v. Quarterman*,
 607 F.3d 1046 (5th Cir. 2010)...................................................................................................12

*Berry v. Epps*,
 506 F.3d 402 (5th Cir. 2007).....................................................................................................12

*FTC v. Hornbeam Special Situations, LLC*,
 2020 WL 5492991 (N.D. Ga. Sept. 10, 2020) ..........................................................................12

*In re Offshore Diving & Salvaging, Inc.*,
 1999 WL 407545 (E.D. La. June 18, 1999)..............................................................................12

*Landis v. N. Am. Co.*,
 299 U.S. 248 (1936)..................................................................................................................12

*Missouri v. Biden*,
 2023 WL 4335270 (W.D. La. July 4, 2023)..................................................................1, 2, 8, 9

*Missouri v. Biden*,
 2023 WL 5841935 (W.D. La. July 4, 2023)...........................................................................2, 3

*Missouri v. Biden*,
 80 F.4th 641 (5th Cir. 2023).......................................................................................................3

*Missouri v. Biden*,
 83 F.4th 350 (5th Cir. 2023)................................................................................................4, 14

*Murthy v. Missouri*,
 No. 23-411, 601 U.S. ___ (U.S. Oct. 20, 2023).........................................................................5

*Schwab v. Sec'y, Dep't of Corr.*,
 507 F.3d 1297 (11th Cir. 2007) ................................................................................................12

*Tyler v. Travelers Com. Ins. Co.*,
 499 F. Supp. 3d 693 (N.D. Cal. 2020) .....................................................................................12

## INTRODUCTION

Defendants, who are key participants in the Election Integrity Partnership and Virality Project ("EIP/VP"), have asked this Court to stay all proceedings in this case for the next seven months, pending the resolution of *Murthy v. Missouri*, No. 23-411, in the Supreme Court of the United States.[1] Only when *Murthy* is decided, Defendants contend, should the Court resume any proceedings in this case, even briefing of Defendants' initial motion to dismiss. Doc. 86-1.

This motion is a transparent procedural gambit intended to evade judicial review. Defendants seek to postpone any discovery, scrutiny, or judicial review of the EIP/VP's unlawful conduct until *after next year's 2024 election cycle*. All the circumstances indicate that Defendants plan to ramp up their mass-surveillance and mass-censorship activities next year during the 2024 election cycle, and they want to evade judicial scrutiny until after that election cycle. Defendants, acting hand-in-glove with government officials, conducted surveillance and censorship of conservative social-media speech on a colossal scale in the 2020 election cycle, and they continued to do so again during the 2022 election cycle. Defendant DiResta has publicly stated their intention to continue doing so in the future. In these circumstances, "it is certainly not imaginary or speculative to predict that Defendants could use their power over millions of people to suppress alternative views or moderate content they do not agree with in the upcoming 2024 national election." Doc. 293 in *Missouri v. Biden*, No. 3:22-cv-01213-TAD-KDM, at 142.

Granting Defendants' requested stay would effectively deprive Plaintiffs of the opportunity to develop a robust factual record to support their imminent request for preliminary injunctive

---

[1] As Plaintiffs were finalizing this response to Doc. 86, Defendants have filed yet another stay motion, this time styled a "Notice of Automatic Stay of Proceedings Pending Appeal Pursuant to the Federal Arbitration Act," Doc. 90. That separate demand for yet another stay is likewise meritless, and Plaintiffs will address it in a separate response.

1

relief before the 2024 election cycle—as Defendants undoubtedly intend. Expedited preliminary-injunction-related discovery took over five months to complete in *Missouri v. Biden*. If this case is stayed until early July 2024, as Defendants hope, Plaintiffs would have no meaningful window to obtain such discovery before a ruling from this Court on their motion for preliminary injunction.

By contrast, Plaintiffs request that the Court grant expedited preliminary-injunction-related discovery now, on a schedule that would allow that discovery to be completed by the spring of 2024, followed by post-discovery supplemental briefing on their motion for preliminary injunction. This schedule would allow the Court to have the benefit of *both* a robust factual record *and* the Supreme Court's ruling in *Murthy v. Missouri* when it rules upon Plaintiffs' motion for a preliminary injunction—all in time for Plaintiffs to obtain relief before Defendants ramp up their mass-surveillance and mass-censorship activities in July 2024.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court is familiar with the procedural history of this case and *Missouri v. Biden*, No. 3:22-cv-01213-TAD-KDM ("*Missouri v. Biden*"). Plaintiffs recount the relevant portions of that procedural history here in brief.

### A. Proceedings in *Missouri v. Biden*.

On July 4, 2023, this Court entered an historic injunction against federal officials, preventing them from continuing to pressure, coerce, encourage, and collaborate with social-media platforms to censor disfavored viewpoints. Docs. 293, 294, in *Missouri v. Biden*. Among other things, this Court's preliminary injunction in *Missouri v. Biden* specifically prevented federal officials from "collaborating, coordinating, partnering, switchboarding, and/or jointly working with the Election Integrity Partnership, the Virality Project, the Stanford Internet Observatory, or any like project or group for the purpose of urging, encouraging, pressuring, or inducing in any

2

manner removal, deletion, suppression, or reduction of content posted with social-media companies containing protected free speech." Doc. 294 in *Missouri v. Biden*, at 4 (Paragraph (5)).

After an expedited appeal, the Fifth Circuit affirmed this injunction with modifications as to most of the covered entities, but it vacated the injunction as to CISA and as to the EIP/VP. Doc. 238-1 in *Missouri v. Biden*, No. 23-30445, Slip Op. (5th Cir. Sept. 8, 2023), at 68-69. As to the EIP/VP, the Fifth Circuit did not address the merits of the injunction, but merely stated:

> Finally, the fifth prohibition—which bars the officials from "collaborating, coordinating, partnering, switchboarding, and/or jointly working with the Election Integrity Partnership, the Virality Project, the Stanford Internet Observatory, or any like project or group" to engage in the same activities the officials are proscribed from doing on their own—may implicate private, third-party actors that are not parties in this case and that may be entitled to their own First Amendment protections.

*Id.* at 68-69. That was the sum total of the Fifth Circuit's analysis in vacating the injunction against collaborating with the EIP/VP. Regarding the prohibition's reference to "any like project or group," the Fifth Circuit held that this reference "fails to identify the specific parties that are subject to the prohibitions" and "exceeds the scope of the parties' presentation." *Id.* at 69. Thus, the Fifth Circuit did not opine on the merits of an injunction against the EIP/VP's activities. Instead, the Court indicated that those issues should be litigated in an action where those "private, third-party actors … are parties in th[e] case" and may assert "their own First Amendment protections." *Id.*

In other words, the Fifth Circuit's opinion strongly indicates that the question whether to issue a preliminary injunction against the EIP/VP should be adjudicated in *this* case, which exactly fits that description. The Fifth Circuit confirmed that it was not opining on the merits of such an injunction by emphasizing the provisional nature of its ruling: "So, this provision [of the injunction] cannot stand *at this juncture*." *Id.* at 69 (emphasis added).

The decision vacating the Fifth Circuit's injunction deprived the *Missouri* plaintiffs—who include Plaintiffs Jill Hines and Jim Hoft—of the Court's significant protection from the EIP/VP's

3

activities in the upcoming 2024 election cycle. Accordingly, Hines, Hoft, and the other *Missouri* plaintiffs promptly sought to reinstate the injunction against the EIP/VP. First, they filed a petition for panel rehearing in the Fifth Circuit, asking the Fifth Circuit to reinstate the injunction as to both CISA and the EIP/VP. Plaintiffs-Appellees' Petition for Panel Rehearing, Doc. 249-1 in *Missouri v. Biden*, No. 23-30445 (5th Cir. filed Sept. 22, 2023); *see id.* at 5-16 (detailed arguments regarding the EIP/VP). On October 3, 2023, the Fifth Circuit granted panel rehearing and issued a revised opinion. Slip Opinion, Doc. 268-1 in *Missouri v. Biden*, No. 23-30445 (5th Cir. Oct. 3, 2023). The Fifth Circuit's revised opinion reinstated the Court's injunction against CISA, but did not change its analysis of the injunction against the EIP/VP. *Id.* The Fifth Circuit's revised opinion continues to state that the injunction's provision addressing the EIP/VP "may implicate private, third-party actors that are not parties in this case and that may be entitled to their own First Amendment protections," and accordingly that "this provision cannot stand *at this juncture*." *Id.* at 69 (emphasis added). Thus, the Fifth Circuit's revised opinion continues to indicate that the question whether to issue a preliminary injunction against the EIP/VP should be litigated in a case where those "private, third-party actors" are "parties in th[e] case" and may assert "their own First Amendment protections," *id.*—in other words, *this* case.

The *Missouri v. Biden* plaintiffs also sought to reinstate the Court's injunction against the EIP/VP in the U.S. Supreme Court. When the Government in *Missouri v. Biden* sought a grant of certiorari in that case, the *Missouri v. Biden* plaintiffs specifically requested, if the Supreme Court were to grant certiorari, that it expand the Questions Presented to address this Court's injunction against the EIP/VP. *See* Response to Applicants' Third Supplemental Memorandum Regarding Application for Stay of Injunction in *Murthy v. Missouri*, No. 23A243 (U.S. filed Oct. 10, 2023), at 15. On October 8, 2023, eight days after the Fifth Circuit denied panel rehearing on the question

4

of the EIP/VP, the *Missouri v. Biden* plaintiffs urged the Supreme Court, if it were to grant certiorari, to expand the Questions Presented to include: "(1) Whether the Fifth Circuit erred in vacating the provision of the district court's preliminary injunction that prevents federal officials from collaborating with the Election Integrity Partnership, the Virality Project, and similar government/private consortia to censor Americans' speech on social media." *Id.*

The Supreme Court declined to do so. On October 20, 2023, the Supreme Court issued an order granting certiorari and staying the injunction pending resolution of the case on the merits. Order in No. 23-411 (U.S. Oct. 20, 2023). The Supreme Court's Order states: "The application for stay is also treated as a petition for a writ of certiorari, and the petition is granted *on the questions presented in the application*." *Id.* at 1 (emphasis added). As Defendants here acknowledge, the "questions presented in the application" do *not* include the *Missouri v. Biden* plaintiffs' proposed additional question regarding the injunction's validity as to the EIP/VP. *See* Doc. 86-1, at 5 (quoting the Questions Presented before the Supreme Court).

Thus, as of October 20, 2023, despite the *Missouri v. Biden* plaintiffs' best efforts, the provision in the *Missouri v. Biden* injunction regarding the EIP/VP has been vacated by the Fifth Circuit, and the Supreme Court has declined to directly address that question. To reiterate, the validity of the injunction against the EIP/VP's activities is not among the Questions Presented in *Murthy v. Missouri*. And the Fifth Circuit has instructed that the issue should be considered in a case where the EIP/VP's private participants are parties. Any injunctive relief against the EIP/VP's unlawful activities in the upcoming election cycle, therefore, must be sought in this case.

B. **Proceedings in *Hines v. Stamos*.**

Plaintiffs Jill Hines and Jim Hoft filed this case, *Hines v. Stamos*, on May 2, 2023. Doc. 1. Unlike *Missouri v. Biden*, this case does not include federal officials as defendants, but it does

5

have as defendants key participants in the EIP/VP who are not federal officials, including private parties like Stanford, Graphika, Alex Stamos, Renee DiResta, and others. *See id.*

Plaintiffs did not immediately move for a preliminary injunction in this case. When this case was filed, their request for a preliminary injunction against federal officials' participation in the EIP/VP in *Missouri v. Biden* was already pending and nearing resolution. *See supra*, Part A. As discussed above, this Court entered a preliminary injunction against federal officials' involvement in the EIP/VP on July 4, 2023, and the *Missouri v. Biden* plaintiffs, including Jill Hines and Jim Hoft, then litigated in the Fifth Circuit to defend and reinstate the injunction against federal officials' involvement in the EIP/VP in that case. Ultimately, the Fifth Circuit vacated the injunction and instructed that the issue be raised in a case where the private EIP/VP participants are parties. The Supreme Court then declined to expand the Questions Presented in *Murthy v. Missouri* to include the appropriateness of issuing a preliminary injunction against the EIP/VP.

Responding to these developments and consistent with the Fifth Circuit's opinion, Plaintiffs in this case are now filing a motion for preliminary injunction and a motion for expedited preliminary-injunction-related discovery. As outlined in those motions, Plaintiffs propose conducting expedited preliminary-injunction-related discovery for the next five months to allow the Court to have the benefit of full factual development before considering whether to enter a preliminary injunction against the EIP/VP's unlawful activities before the 2024 election cycle. This schedule, moreover, would give the Court the benefit of the Supreme Court's ruling in *Murthy v. Missouri*, which is most likely to issue in late spring or early summer 2024, before the Court rules on this motion for preliminary injunction.

Meanwhile, Defendants' litigation conduct in this case reflects a strategy of delay. They took lengthy extensions before filing lengthy motions to dismiss and to compel arbitration, which

they now concede are moot and wish to re-file after another lengthy extension. *See* Docs. 69, 70. Notably, their motion to compel individual arbitration, Doc. 69, tries to enforce contractual terms to which they are not parties and whose actual parties are *victims* of Defendants' unlawful conduct—all in an attempt to obtain a months-long delay while they litigate these baseless arguments on appeal. *See* Doc. 90. As Plaintiffs noted in their opposition, Defendants' motion to compel arbitration is "premised on a contract they did not sign. [It] is the first shot in a war of attrition whose aim is to prevent these Defendants from ever having to answer for their role in a massive, government-sponsored censorship regime." Doc. 79, at 1. Yesterday, this Court denied this motion to compel arbitration, Doc. 88, and Defendants immediately filed a notice of appeal, Doc. 89, and proclaimed (meritlessly) that all proceedings in this case are now stayed. Doc. 90.

Defendants' Motion to Stay Proceedings, Doc. 86, is thus the latest "shot" in this "war of attrition" and delay. Doc. 79, at 1. Defendants seek to stay all proceedings in this case until "June 2024," when they anticipate the Supreme Court will decide *Murthy v. Missouri*. *Id.* at 9. This delay would be stacked on top of the additional delay that Defendants seek to interpose based on their meritless appeal of their meritless attempt to compel arbitration. *See id.* at 10; Doc. 90. Not coincidentally, these combined delays would push any meaningful scrutiny of their censorship activities *past the 2024 election cycle. See* Doc. 86-1, at 10.

      **C.**      **The EIP/VP Plans Massive Censorship Activity in the 2024 Election Cycle.**

It is clear that the EIP/VP plans to engage, once again, in massive surveillance and censorship activities in the 2024 election cycle. Though the EIP/VP's surveillance and censorship activities likely never fully relent, these activities ramp up into exceptionally high gear to censor conservative election-related speech during each election cycle.

The EIP's mass-surveillance and mass-censorship activities during the 2020 election cycle are well-documented. As this Court found in *Missouri v. Biden*, during the 2020 election cycle, "CISA and the EIP were completely intertwined," and "[t]he tickets and URLs" processed by the EIP "encompassed millions of social-media posts, with almost twenty-two million posts on Twitter alone." Doc. 293 in *Missouri v. Biden*, at 82, 113. The EIP/VP's mass censorship, like other federal activities, "restricts the free flow of information on social-media platforms used by millions" of Americans. *Id.* at 123. The Court made extensive findings about the nature and scope of those election-related activities in 2020. *See id.* at 70-75, 80-86, 111-13. The EIP/VP played a critical role in what is "arguably … the most massive attack against free speech in United States' history." *Id.* at 2.

The EIP/VP's election-related censorship activities continued during the 2022 election cycle. For example, a key funder from the Aspen Institute met with Kate Starbird "to talk about mid-term monitoring and election response," including "'rapid-response' capacity" and "currently planning 2022 election efforts." Doc. 77, at 14, ¶ 44. Brian Scully, likewise, testified that the EIP continued to operate in the 2022 election cycle, stating that the EIP "'gave us [CISA] a briefing, early on, about what they were thinking about,' which occurred in 'May/June of 2022.' Scully Depo. 53:14-19. Scully and Geoff Hale of CISA received the briefing from Renée DiResta and another EIP official. Scully Depo. 53:22-54:7. In that briefing, the EIP officials 'walked through what their plans were for 2022, [and] some of the lessons learned from 2020.' Scully Depo. 54:11-13. Their plans for 2022 were that 'they were going to do something similar to what they did in 2020 ….' Scully Depo. 54:16-18. They planned to continue to 'work with state and local election officials.' Scully Depo. 54:22-25." *Id.* at 43-44, ¶ 201. Furthermore, "[o]n July 31, 2022, the Election Integrity Partnership's blog posted 'The Election Integrity Partnership in 2022: Our Work

Ahead.' *See* https://www.eipartnership.net/blog/about-eip-2022. This blog post states: "*The EIP is continuing its nonpartisan and collaborative work in the 2022 election cycle.*" *Id.* (emphasis added). The EIP then posted at least 14 more blog posts, reporting observations from its mass surveillance of election-related speech on social media, throughout the 2022 election cycle, between July 31, 2022 and November 14, 2022." *Id.* at 44, ¶ 202. Moreover, "[o]n July 27, 2022, Renée DiResta gave testimony to the Committee on House Administration, Subcommittee on Elections of the U.S. House of Representatives at a hearing entitled 'A Growing Threat: Foreign and Domestic Sources of Disinformation.' In that testimony, DiResta describes the EIP's activities as ongoing during the 2022 election cycle, and notes that this ongoing activity includes coordinating with government officials and flagging misinformation to platforms for censorship." *Id.* at 44, ¶ 203.

There is no doubt that the EIP/VP intends to ramp up its mass-surveillance and mass-censorship activities during the 2024 election cycle. Renee DiResta said as much in her 2022 congressional testimony: "Doing nothing is not an option. While the Election Integrity Partnership was intended to meet an immediate need, the conditions that necessitated its creation have not abated, and in fact may have worsened. Academia, tech platforms, civil society, and state and local election officials … must be committed to collaborative models for understanding and responding to rumors and false and misleading claims in the modern information environment." *Id.* at 44-45, ¶ 204. As this Court held in *Missouri v. Biden*, "it is certainly not imaginary or speculative to predict that Defendants could use their power over millions of people to suppress alternative views or moderate content they do not agree with in the upcoming 2024 national election." Doc. 293 in *Missouri v. Biden*, at 142.

# ARGUMENT

The Court should not stay these proceedings. Instead, the Court should grant the Plaintiffs' motion for expedited preliminary-injunction-related discovery and adopt Plaintiffs' proposed discovery schedule. Given the experience of *Missouri v. Biden*, with diligent efforts, that should allow the parties sufficient time to develop a robust factual record related to the Plaintiffs' motion for preliminary injunction by next spring. The Court would then be able to rule on Plaintiffs' motion for preliminary injunction before the 2024 election cycle ramps up next summer, by which time the Court would also have the benefit of the Supreme Court's merits ruling in *Missouri v. Biden*.

### A. The Requested Stay Would Not Serve Judicial Economy.

Defendants' arguments in favor of a stay are meritless. First, a stay would not serve judicial economy, but would instead threaten Plaintiffs' ability to obtain meaningful relief before the 2024 election cycle. *See supra*. Defendants contend that this case and *Missouri v. Biden* involve "essentially identical legal and factual theories." Doc. 86-1, at 6. This overstates the degree of overlap between the two cases. *Missouri v. Biden* involves claims against federal officials directly, while this case involves claims against the academic and for-profit "research" groups that collaborate with federal and state officials to suppress free speech. The Fifth Circuit evidently believed that the cases raise distinct issues because it effectively instructed that the question of injunctive relief against the EIP/VP should be raised in a case like this one, not in *Missouri v. Biden*. In *Murthy v. Missouri*, the Supreme Court declined to consider the question directly at stake in this case by refusing the request to add a Question Presented that would have considered "[w]hether the Fifth Circuit erred in vacating the provision of the district court's preliminary injunction that prevents federal officials from collaborating with the Election Integrity Partnership,

the Virality Project, and similar government/private consortia to censor Americans' speech on social media." *See* Statement of Facts, Part A, *supra*.

To be sure, the Supreme Court's decision in *Murthy v. Missouri* is likely to address questions closely related to this case, such as the standards for discerning state action under pressure from government officials, and the standing of plaintiffs to sue federal officials for interfering with social-media platforms content-moderation decisions about the plaintiffs' speech. These questions will doubtless illuminate legal and factual issues in dispute in this case. But the pendency of *Murthy v. Missouri* does not justify staying proceedings in this case, for at least three reasons.

First, Plaintiffs' proposed schedule on expedited preliminary-injunction-related discovery will allow the Court to have the benefit of a ruling in *Murthy v. Missouri* before the Court rules on a motion for preliminary injunction in this case, which undermines the sole justification for the requested stay. Indeed, the Supreme Court's expected ruling in *Murthy v. Missouri* in late spring or early summer 2024 is likely to be issued at just the right time to be reviewed before the Court's decision on that motion.

Second, district courts routinely decline to stay proceedings under these very circumstances, *i.e.*, where one party claims that a pending appeal may set a precedent that will shed light on issues in dispute before the district court. The reason for this reluctance is easy to see—it is very common for there to be pending appeals that might shed light on the issues at stake in a pending case, and so granting such motions could effectively grind all district-court proceedings to a halt. A legion of cases in this Circuit and elsewhere have declined to grant similar requests to stay district-court proceedings, including in cases where a pending appeal in the Supreme Court could have decided issues of great relevance to the pending district-court case.

11

*See, e.g., Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."); *Ali v. Quarterman*, 607 F.3d 1046, 1049 (5th Cir. 2010) ("Although district courts have inherent authority to control their dockets, 'only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.'") (quoting *Landis*, 299 U.S. at 255); *Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1298 (11th Cir. 2007) (per curiam) ("The district court's action in granting the stay is contrary to the unequivocal law of this circuit that, because grants of certiorari do not themselves change the law, they must not be used by courts of this circuit as a basis for granting a stay of execution that would otherwise be denied."); *Berry v. Epps*, 506 F.3d 402, 405 (5th Cir. 2007) (denying a stay based on a grant of certiorari because "fifth circuit precedent remains binding until the Supreme Court provides contrary guidance") (quotations omitted); *Tyler v. Travelers Commercial Ins. Co.*, 499 F. Supp. 3d 693, 702–04 (N.D. Cal. 2020) (denying a stay while a case involving a similar issue is appealed in state court); *FTC v. Hornbeam Special Situations, LLC*, 2020 WL 5492991, at *2 (N.D. Ga. Sept. 10, 2020) (denying stay after certiorari granted, and rejecting equitable arguments for a stay); *In re Offshore Diving & Salvaging, Inc.*, 1999 WL 407545, at *2 (E.D. La. June 18, 1999) ("This Court cannot grant a stay every time there are unrelated cases pending in the courts of appeals that may or may not modify the law.").

Third, as discussed below, granting the stay would be extremely prejudicial to Plaintiffs. Expedited preliminary-injunction-related discovery in *Missouri v. Biden* took over five months, from July 12, 2022, through early January, 2023. If preliminary-injunction-related discovery takes even a fraction of that time in this case, resuming the case sometime after "June 2024" will render

12

it nearly impossible for Plaintiffs to develop facts and obtain injunctive relief before the EIP/VP ramps up its censorship during the 2024 election cycle.

### B. The Requested Stay Would Inflict Severe Prejudice on Plaintiffs.

As noted, the requested stay would inflict severe prejudice on Plaintiffs, by effectively depriving them of the right to obtain meaningful preliminary-injunction-related discovery before the 2024 election cycle—as Defendants no doubt intend. In arguing that Plaintiffs face no prejudice, Defendants state that Plaintiffs "have not sought preliminary relief or to expedite this litigation in any fashion." Doc. 86-1, at 9. This is incorrect. Plaintiffs, quite appropriately, litigated their request for preliminary injunction relief in *Missouri v. Biden*, including seeking relief in this Court, the Fifth Circuit, and the Supreme Court. *See supra*, Statement of Facts, Part A. These efforts terminated on October 20, 2023, when the Supreme Court granted certiorari in *Murthy v. Missouri* without adding Plaintiffs' proposed Question Presented regarding injunctive relief against the EIP/VP. Plaintiffs then acted expeditiously in this case to file a motion for preliminary injunction and for expedited preliminary-injunction-related discovery that will allow sufficient time for discovery, supplemental briefing, and a ruling on their motion for preliminary injunction before the 2024 election cycle—all in time to receive the benefit of the Supreme Court's ruling in *Murthy v. Missouri* before this Court rules.

Defendants also argue that the Fifth Circuit has "already concluded that Plaintiffs are not entitled to preliminary relief relating to Defendants in *this case*." Doc. 86-1, at 9. This is plainly incorrect. The Fifth Circuit's sole basis for vacating the injunction against federal officials' involvement in the EIP/VP was its statement that an injunction against the EIP/VP "may implicate private, third-party actors that are not parties in this case and that may be entitled to their own First Amendment protections," and accordingly that "this provision cannot stand *at this juncture*." Slip

13

Opinion, Doc. 268-1 in *Missouri v. Biden*, No. 23-30445 (5th Cir. Oct. 3, 2023), at 69 (emphasis added). The Fifth Circuit did not purport to prejudge the merits of a claim for injunctive relief against the EIP/VP in a case involving those "private, third-party actors," and it merely stated that the provision could not stand "at this juncture." *See id.* The Fifth Circuit's opinions thus *invites*, not forbids, this Court to consider an injunction against the EIP/VP in this case.

### C. Plaintiffs Do Not Object to Defendants' Other Requested Relief.

Provided that the Court does not stay this case pending *Murthy v. Missouri*, Plaintiffs do not object to Defendants' other requested relief. Defendants have voluntarily withdrawn their pending motion to dismiss as moot, Doc. 86-1, at 10; Plaintiffs have no objection to the dismissal of that meritless motion. Plaintiffs also consent to Defendants' request for an extension to file renewed motions to dismiss. *See id.* Going forward, the case should focus on Plaintiffs' request for expedited preliminary-injunction-related discovery.

### CONCLUSION

Defendants' Motion to Stay Proceedings pending the outcome of *Murthy v. Missouri*, Doc. 86, should be denied.

14

Dated: November 16, 2023

AMERICA FIRST LEGAL

/s/ Gene P. Hamilton
Gene P. Hamilton, GA Bar No. 516201*
Reed D. Rubinstein, DC Bar No. 400153*
Nicholas R. Barry, TN Bar No. 031963*
Michael Ding, DC Bar No. 1027252*
Juli Z. Haller, DC Bar No. 466921*
James K. Rogers, AZ Bar No. 027287*
Andrew J. Block, VA Bar No. 91537*
611 Pennsylvania Ave SE #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org
reed.rubinstein@aflegal.org
nicholas.bary@aflegal.org
juli.haller@aflegal.org
james.rogers@aflegal.org
andrew.block@aflegal.org

Respectfully submitted,

JAMES OTIS LAW GROUP, LLC

/s/ D. John Sauer
D. John Sauer, Mo. Bar No. 58721*
Justin D. Smith, Mo. Bar No. 63253*
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
(314) 562-0031
John.Sauer@james-otis.com

* admitted *pro hac vice*

LANGLEY & PARKS, LLC

By: /s/ *Julianna P. Parks*
Julianna P. Parks, Bar Roll No. 30658
4444 Viking Drive, Suite100
Bossier City, Louisiana 71111
(318) 383-6422 Telephone
(318) 383-6405 Telefax
jparks@langleyparks.com

15

## CERTIFICATE OF SERVICE

I hereby certify that, on November 16, 2023, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

/s/ D. John Sauer