**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

JILL HINES, ET AL.,

            *Plaintiffs*,

    v.

ALEX STAMOS, ET AL.,

            *Defendants*.

Civil Action No. 3:23-cv-00571

Chief Judge Terry A. Doughty

Magistrate Judge Kayla D. McClusky

**MEMORANDUM IN SUPPORT OF DEFENDANT THE ASPEN INSTITUTE'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND IMPROPER VENUE**

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................................................... 1

II.    BACKGROUND .................................................................................................... 2

III.    STANDARD ......................................................................................................... 5

IV.    ARGUMENT ........................................................................................................ 6

    A.    **The Court Cannot Assert Personal Jurisdiction Over Aspen.** ........................ 6

        i.    Each Plaintiff must demonstrate that subjecting Aspen to personal jurisdiction comports with due process ........................................ 6

        ii.    The Court lacks general personal jurisdiction over Aspen. ........................ 8

        iii.    The Court cannot assert specific personal jurisdiction over Aspen. ........... 8

            1.    Aspen has no contacts with Louisiana. .......................................... 9

            2.    Plaintiffs' alleged injuries or audiences in Louisiana cannot support personal jurisdiction over Aspen. ...................................... 9

            3.    Plaintiffs' group pleading cannot support personal jurisdiction over Aspen. ..................................................................... 12

        iv.    Subjecting Aspen to suit in Louisiana would be unfair and unreasonable. ........................................................................ 14

    B.    **This Court Does Not Have Subject Matter Jurisdiction Because Plaintiffs Lack Article III Standing To Assert These Claims Against Aspen.** ............... 16

        i.    Plaintiffs' alleged injuries are not fairly traceable to Aspen .................... 16

        ii.    Defendants' public advocacy did not have a "determinative or coercive effect" on the social media platforms' content moderation decisions ........................................................................ 19

    C.    **Venue Is Improper in This District.** ................................................. 21

V.    CONCLUSION ................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aegean Marine Petroleum Network, Inc. Secs. Litig.*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021)......................................................................13

*Ambraco, Inc. v. Bossclip B.V.*,
    570 F.3d 233 (5th Cir. 2009) .....................................................................................6

*Armstrong v. Ashley*,
    60 F.4th 262 (5th Cir. 2023) ....................................................................................13

*ASARCO Inc v. Kadish*,
    605, 615 (1989)........................................................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................6

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
    571 U.S. 49 (2013)...................................................................................................23

*Bar Grp., LLC v. Bus. Intel. Advisors, Inc.*,
    215 F. Supp. 3d 524 (S.D. Tex. 2017)....................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................6, 19

*Bennett v. Spear*,
    520 U.S. 154 (1997).....................................................................................19, 20, 21

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017)...............................................................................................8

*Bristol-Myers Squib Co. v. Superior Court*,
    582 U.S. 255, (2017).................................................................................7, 8, 12, 13

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)...................................................................................................7

*Burstein v. State Bar of Cal.*,
    639 F.2d 511 (5th Cir. 1982) ...................................................................................15

*Bustos v. Lennon*,
    538 F. App'x 565 (5th Cir. 2013) ............................................................................15

*Calder v. Jones,*
    465 U.S. 783 (1984)..................................................................................................11

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 389 (2013)..................................................................................................20

*Collins v. Morgan Stanley Dean Witter,*
    224 F.3d 496 (5th Cir. 2000) ....................................................................................3

*Daniel v. Am. Bd. of Emergency Med.,*
    428 F.3d 408 (2d Cir. 2005).....................................................................................22

*Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.,*
    22 F.4th 522 (5th Cir. 2022) ...........................................................................7, 9, 10

*Daves v. Dallas Cty., Tex.,*
    24 F.4th 491 (5th Cir. 2022) ....................................................................................20

*Defense Distrib. v. Grewal,*
    971 F.3d 485 (5th Cir. 2020) .....................................................................................5

*Fielding v. Hubert Burda Media, Inc.,*
    415 F.3d 419 (5th Cir. 2005) ...................................................................................14

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
    141 S. Ct. 1017 (2021)..............................................................................7, 8, 13, 14

*Garcia v. Vasilia,*
    319 F. Supp. 3d 863 (S.D. Tex. 2018) ...............................................................21, 22

*Guidry v. United States Tobacco Co.,*
    188 F.3d 619 (5th Cir. 1999) ...................................................................................13

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984)..................................................................................................13

*Inclusive Communities Project, Inc. v. Dep't of Treasury,*
    946 F.3d 649 (5th Cir. 2019) ...................................................................................19

*Inst. For Creation Rsch. Graduate Sch. v. Paredes,*
    2009 WL 4333366 (N.D. Tex. Dec. 1, 2009) .........................................................22

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945)............................................................................................7,13,14

*Jenkins Brick Co. v. Bremer,*
    321 F.3d 1366 (11th Cir. 2003) ...............................................................................22

*Johnson v. TheHuffingtonPost.com, Inc.*,
 21 F.4th 314 (5th Cir. 2021) ...........................................................5, 12, 13, 14

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
 213 F.3d 841 (5th Cir. 2000) ...................................................................14

*Lane v. Halliburton*,
 529 F.3d 548 (5th Cir. 2008) ....................................................................6

*Leroy v. Great W. United Corp.*,
 443 U.S. 173 (1979)................................................................................22

*Libersat v. Sundance Energy, Inc.*,
 978 F.3d 315 (5th Cir. 2020) ....................................................................6

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)....................................................................16, 19, 21

*Nat'l Council of La Raza v. Mukasey*,
 283 F. App'x 848 (2d Cir. 2008) ............................................................21

*Rush v. Savchuk*,
 444 U.S. 320 (1980)................................................................................13

*Sangha v. NAVIG8 Shipmanagement Priv. Ltd.*,
 882 F.3d 96 (5th Cir. 2018) ..............................................................11, 14

*Seiferth v. Helicopteros Atuneros, Inc.*,
 472 F.3d 266 (5th Cir. 2006) ....................................................................7

*Smith v. Bayer Corp.*,
 564 U.S. 299 (2011)..................................................................................7

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016)................................................................................16

*Stroman Realty, Inc. v. Wercinski*,
 513 F.3d 476 (5th Cir. 2008) ....................................................................6

*Thompson v. Georgia*,
 2008 WL 4909421 (W.D. La. Oct. 15, 2008) ........................................22

*Turaani v. Wray*,
 988 F.3d 313 (6th Cir. 2021) ......................................................19, 20, 21

*Utterback v. Trustmark Nat'l*
 Bank, 716 F. App'x 241, 244 .................................................................22

*Walden v. Fiore*,
    571 U.S. 277 (2014)........................................................................8, 9, 10, 11

*Woodke v. Dahm*,
    70 F.3d 983 (8th Cir. 1995) ...............................................................22

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..........................................................................7

**Statutes**

28 U.S.C. § 1391(b) ...............................................................................2

28 U.S.C. § 1391(b)(2) ......................................................................21, 23

28 U.S.C. § 1406(a) ..............................................................................23

42 U.S.C. § 1983 ....................................................................................5

42 U.S.C. § 1985(3) ................................................................................5

La. Rev. Stat. § 13:3201..........................................................................6

**Other Authorities**

14D Richard D. Freer, *Federal Practice and Procedure* § 3807 (4th ed. Supp.
    Apr. 2023)..........................................................................................22

## I.      INTRODUCTION

Plaintiffs are social-media users who assert that Facebook and Twitter took down their posts or suspended or closed accounts they ran for their businesses or other groups because of determinations that Plaintiffs were spreading disinformation. Plaintiffs contend that they have a First Amendment and contractual right to post freely on social media. But they have not sued the social-media companies that removed their content.

Instead, Plaintiffs have chosen to sue Defendants—nonprofits, academic institutions, and researchers alleged to have been involved in examining the issue of the viral spread of disinformation on social-media and the resulting harms to society. Recently, Plaintiffs filed an amended complaint adding The Aspen Institute ("Aspen") as a defendant. Plaintiffs assert that Defendants worked "closely with state and federal government officials," to "coerce" the platforms to censor Plaintiffs. Am. Compl. [Doc. #77], ¶ 2. Plaintiffs allege that Defendants violated Plaintiffs' First Amendment rights and tortiously interfered with their contracts with the social-media companies.

This lawsuit cannot be maintained in this Court, for multiple reasons.

*First*, this Court lacks personal jurisdiction over Aspen. Plaintiffs do not allege that Aspen has any contacts with Louisiana, much less that Aspen engaged in activities that purposefully availed itself of Louisiana. One of the two plaintiffs—Jim Hoft—is not a resident of Louisiana and has no claimed connection to Louisiana, other than that some members of his nationwide audience might live here. Although the other plaintiff (Jill Hines) does reside in Louisiana, that fact is insufficient to support personal jurisdiction over Aspen. When, as here, a defendant accused of an intentional tort is not alleged to have targeted a particular state—and here, Plaintiffs allege that the campaign to remove disinformation was nationwide and do not allege any targeting of Louisiana—

the fact that a plaintiff has contacts with the forum is insufficient to show that a *defendant* has the contacts needed to establish personal jurisdiction.

*Second*, Plaintiffs lack Article III standing, which deprives this Court of subject matter jurisdiction. Article III requires that a plaintiff allege an injury that is "directly traceable" to the challenged actions of the defendant, rather than to the independent conduct of third parties. Plaintiffs' alleged injuries here—the removal of their content—were the result of actions taken by Facebook and Twitter, not Aspen. Indeed, Plaintiffs do not allege that Aspen even made any report regarding Plaintiffs or Plaintiffs' social-media posts to any government official or social-media company. Even if Aspen did make such a report, Plaintiffs' allegations stating that social-media companies declined to act on the vast majority of content that the other Defendants reported to them confirms that those social-media companies were exercising their own independent judgment—and that Plaintiffs' injuries resulted from those companies' actions.

*Third*, venue in this Court is improper. Plaintiffs must allege that a "substantial part of the events or omissions giving rise to the claim occurred" in this District. 28 U.S.C. § 1391(b). The only tie to this District does not involve any "event" but rather that one Plaintiff (Ms. Hines) resides here. All of the disputed conduct took place elsewhere. Accordingly, venue is not permissible here.

For all of these reasons, this action should be dismissed. Aspen has also separately moved to compel arbitration.

## II.    BACKGROUND

Plaintiffs Jill Hines and Jim Hoft are social-media users who allege that some of their social-media posts regarding "COVID-19 issues and election-security issues" were removed by the social-media companies based on the companies' conclusions that the posts contained misinformation. Am. Compl. [Doc. #77], ¶ 11. Rather than suing the social-media companies that removed their posts, Plaintiffs instead have chosen to sue several academics, universities, and non-

profits for allegedly working with "state and federal government officials" to "urge, pressure, and coerce social-media platforms to monitor and censor disfavored speakers and content." *Id.* ¶ 2.

Specifically, Plaintiffs allege that "[f]our entities—Stanford Internet Observatory, University of Washington's Center for an Informed Public, Graphika, and the Atlantic Council's Digital Forensic Lab—collaborate[d] closely with" government officials to create the "Election Integrity Partnership" and the "Virality Project" *Id.* ¶ 1. Plaintiffs allege that these projects identified disinformation on social-media platforms and urged social-media companies to adopt policies that resulted in the removal of posts or accounts. *Id.* ¶¶ 55, 63, 207, 258.

Plaintiffs do not allege that Aspen is or was a member of either the Election Integrity Partnership or the Virality Project. But Plaintiffs allege that some participants in those initiatives emailed individuals associated with Aspen regarding efforts to address misinformation and that Aspen had an undefined "strategic and/or coordinating role" in these projects' "censorship activities." *Id.* ¶ 41.

According to an article attached to the operative complaint,[1] the Election Integrity Partnership identified instances of electoral misinformation by "partisans on both sides." Am. Compl. [Doc. #77], Ex. 1 at 68 (50) (found at Doc. #1-2).[2] For example, the report cited posts by "liberal" influencers claiming falsely "that President Trump was deliberately sabotaging the USPS to reduce the number of democratic votes," as well as false information posted by right-leaning

---

[1]    Plaintiffs' amended complaint incorporates by reference "Exhibits 1-17 attached to the original Complaint, Docs. 1-2 through 1-18." Am. Compl. [Doc. #77] ¶ 28 n.1. Accordingly, Exhibit 1 to the amended complaint may be found at Doc. #1-2. Some of those exhibits, including Exhibit 1, are reports with their own internal pagination. For the convenience of the Court, when citing to these reports, we provide both the cited page number of the PDF and, in parentheses, the cited page number according to the report's internal pagination.

[2]    Courts may consider documents attached to the complaint in deciding a motion to dismiss. *See*, *e.g.*, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

influencers. *Id.*, at 72-73 (54-55). The Election Integrity Partnership flagged a total of 639 "tickets" (*i.e.*, reports of disinformation), of which "363 tickets" were reported to an "external partnership organization," such as a social-media company, with the observation that the post contained "potentially violative content." *Id.*, at 45 (27), 55 (37). Of the reported posts, "platforms took action on 35% of the URLs that [were] reported to them. 21% of URLs were labeled" with a link to trusted sources of information on the topic, "13% were removed, and 1% were soft blocked. No action was taken on 65%." *Id.*, at 58 (40).[3]

The Virality Project was formed in 2021 when researchers from the four members of the Election Integrity Partnership began to catalog false information about COVID-19 vaccines. Am. Compl. [Doc. #77], ¶ 206. According to another report attached to the operative complaint, the Virality Project tracked a total of 911 identified posts, of which "174 [19%] were referred to platforms for potential action." Am. Compl. [Doc. #77], Ex. 10 at 37 (30) (found at Doc. #1-3).

Plaintiffs allege that their social-media accounts were affected by the Election Integrity Partnership and Virality Project.

Plaintiff Jill Hines is a Louisiana resident who is the co-director of Health Freedom Louisiana and a founder of Reopen Louisiana. Am. Compl. [Doc. #77], ¶ 8. She alleges that she has run "Facebook groups" that were "suspended on Facebook," "deplatformed," or had posts "censored" because they advocated against COVID-19 vaccines; she asserts that those actions were part of a nationwide effort to eliminate certain posts by what the amended complaint describes as "health freedom groups." *Id.* ¶¶ 362, 364, 367, 394, 397, 399.

---

[3] A "soft block" occurs when content is visible only if the user clicks to bypass a warning. Am. Compl. [Doc. #77], Ex. 1, at 57 (39) (found at Doc. #1-2).

Plaintiff Jim Hoft is a Missouri resident who runs the "Facebook account," "Instagram account," and "Twitter account" for his business, a website called "The Gateway Pundit." *Id.* ¶ 10. He alleges that as a result of his posts about the 2020 election and COVID-19 vaccines, he has experienced "suspensions and deplatforming by Twitter, and censorship on Facebook." *Id.* ¶ 406. He states that he has "substantial audiences in Louisiana and elsewhere." *Id.* ¶ 386.

Plaintiffs sue on behalf of a putative class of all "social-media users who have engaged or will engage in, or who follow, subscribe, to, are friends with, or are otherwise connected on social media" to any users "who have engaged or will engage in, any speech on any social-media platform(s) that has been or will be censored or suppressed by any platform after Defendants" or "anyone acting in concert with them have flagged or will flag the speech . . . for suppression[.]" *Id.* ¶ 423. Seeking nominal damages for every suppressed social-media interaction, compensatory and punitive damages, attorneys' fees and costs, and injunctive relief (*id.*, at p 101), Plaintiffs assert (1) a claim under 42 U.S.C. § 1985(3) for conspiracy to violate First Amendment rights; (2) a claim under 42 U.S.C. § 1983 for First and Fourteenth Amendment violations; (3) a claim directly under the First Amendment; (4) a common law claim for tortious interference with contractual and business relationships; and (5) a claim alleging a breach of a purported duty "not to interfere unlawfully with [Plaintiffs'] freedom." Am. Compl. [Doc. #77], ¶¶ 434, 447, 454, 459, 469.

### III.    STANDARD

In assessing "personal jurisdiction" at "the motion to dismiss stage, the plaintiffs bear the burden of presenting sufficient evidence to support a prima facie case of jurisdiction." *Defense Distrib. v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020). At this stage, the district court "accept[s] [the plaintiff's] uncontroverted, non-conclusory allegations of fact." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317 (5th Cir. 2021). The same standard of assuming

the truth of only "the well-ple[a]d[ed] factual allegations of the complaint" also applies to a "motion to dismiss for lack of subject matter jurisdiction" (*Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008)), and to a motion to dismiss for improper venue (*Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)). Courts do not assume the truth of "mere conclusory statements" or "'a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In deciding whether the "well-pleaded facts," accepted as true, "'state a claim to relief that is plausible on its face'" (*id.* at 678-79 (quoting *Twombly*, 550 U.S. at 570), courts need not credit allegations that "the complaint itself gives reasons to believe" are untrue (*Twombly*, 550 U.S. at 568).

## IV.    ARGUMENT

### A.    The Court Cannot Assert Personal Jurisdiction Over Aspen.

#### i.    Each Plaintiff must demonstrate that subjecting Aspen to personal jurisdiction comports with due process.

When, as here, the asserted basis for subject matter jurisdiction is either diversity or a federal question under federal statutes that do not authorize nationwide service of process (*see* Am. Compl. [Doc. #77], ¶¶ 45-46), a district court's exercise of personal jurisdiction must comport with "the state's long-arm statute" and "the Due Process Clause of the Fourteenth Amendment [to the U.S. Constitution]." *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 318 (5th Cir. 2020) (internal quotation marks omitted); *see also Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008). "Because '[t]he limits of the Louisiana Longarm Statute and the limits of constitutional due process are' effectively 'coextensive,' the sole inquiry is whether exercising jurisdiction would violate the Due Process Clause." *Libersat*, 978 F.3d at 318 (internal citations omitted); *see also* La. R.S. § 13:3201.

"Due process requires that the defendant have minimum contacts with the forum state (*i.e.*, that the defendant has purposely availed himself of the privilege of conducting activities within the forum state) and that exercising jurisdiction is consistent with traditional notions of fair play and substantial justice." *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022) (internal quotation marks omitted); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945).

These requirements "derive from" the need to "treat[] defendants fairly and protect[] 'interstate federalism.'" *Ford*, 141 S. Ct. at 1025 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)). They "provide[] defendants with 'fair warning'—knowledge that 'a particular activity may subject [it] to the jurisdiction of a foreign sovereign.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). And they also "seek[] to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Id.* (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 582 U.S. 255, 263 (2017)).

In a multi-party lawsuit such as this one, each plaintiff must show that the Court has jurisdiction over each of his or her claims against each defendant. *See, e.g.*, *Bristol-Myers Squibb*, 582 U.S. at 264-65; *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).

Plaintiffs may satisfy that burden by establishing one of "two kinds of personal jurisdiction: [1] general (sometimes called all-purpose) jurisdiction [or] [2] specific (sometimes called case-linked) jurisdiction." *Ford*, 141 S. Ct. at 1024. Both types of personal jurisdiction are absent here.[4]

---

[4] It is premature for Aspen to challenge personal jurisdiction with respect to the claims of absent class members—until a class is certified, absent members of a putative class are not parties to the case. *Smith v. Bayer Corp.,* 564 U.S. 299, 313-15 (2011). Aspen reserves the right to argue at the

### ii.   The Court lacks general personal jurisdiction over Aspen.

Plaintiffs cannot show that Aspen is subject to general personal jurisdiction in Louisiana. The Supreme Court has made clear that—absent extraordinary circumstances not present here—a corporation is subject to general jurisdiction only in the states where the corporation is incorporated and has its principal place of business. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017).

Plaintiffs do not allege any basis for general personal jurisdiction over Aspen in Louisiana. To the contrary, they allege that Aspen "is a nonprofit organization headquartered in Washington, DC, and with campuses in Aspen, Colorado, and Wye River, Maryland." Am. Compl. [Doc. #77], ¶ 37. Because Plaintiffs do not allege any facts showing that Aspen is incorporated in Louisiana or has its principal place of business there, they have failed to establish general personal jurisdiction. *BNSF*, 137 S. Ct. at 1558.

### iii.   The Court cannot assert specific personal jurisdiction over Aspen.

Nor has either Plaintiff alleged a basis for this Court to exercise specific jurisdiction over Aspen. Specific, or "case-linked," personal jurisdiction exists only when the defendant's "suit-related conduct" creates "a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 & n.6 (2014); *accord Bristol-Meyers Squibb*, 137 S. Ct. at 1780. "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment,'" which means that the defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford*, 141 S. Ct. at 1024-25 (internal quotation marks omitted). In other words, Plaintiffs must show that Aspen "deliberately reached out beyond

---

appropriate stage that lack of personal jurisdiction precludes the assertion of claims on behalf of absent class members and/or that the claims of some or all absent class members should be dismissed if a class eventually is certified.

its home" to Louisiana and that each of their claims "arise[s] out of or relate[s] to [Aspen's] contacts with [Louisiana]." *Id.* at 1025 (internal quotation marks omitted). Plaintiffs' allegations fall far short of this requirement. And any assertion that alleged contacts with Louisiana by other defendants, third parties, or Plaintiffs could support personal jurisdiction fails as a matter of law.

1. Aspen has no contacts with Louisiana.

Plaintiffs do not allege that Aspen has conducted any activities in Louisiana, much less purposefully availed itself of the benefits of that forum. Like the defendant in *Walden*—who the Supreme Court held had "formed no jurisdictionally relevant contacts" with the forum—Plaintiffs here do not allege that Aspen or anyone working for it ever "traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" Louisiana. *Walden*, 571 U.S. at 289.

The Fifth Circuit recently held that there is no "personal jurisdiction over . . . intentional tort claims" against a defendant who has not chosen to "*meaningfully* connect" with the forum." *Danziger*, 24 F.4th at 500. Plaintiffs have not alleged any facts showing that Aspen has connected at all, much less meaningfully, with Louisiana.

2. Plaintiffs' alleged injuries or audiences in Louisiana cannot support personal jurisdiction over Aspen.

For multiple reasons, Plaintiffs cannot establish personal jurisdiction by arguing that they (or others) "experienced . . . censorship" in Louisiana. Am. Compl. [Doc. #77], ¶ 9.

*First*, one Plaintiff (Mr. Hoft), who resides in Missouri (*id.* ¶ 10), alleges no personal connection to Louisiana and does not suggest that he has ever posted from or used his social-media accounts in Louisiana. *See id.*

*Second*, the other Plaintiff (Ms. Hines) does reside in Louisiana (*id.* ¶ 9), but binding precedent forecloses her attempt to premise personal jurisdiction on the allegation that she experienced her injury there.

9

In *Walden*, the Supreme Court held that a Nevada court lacked jurisdiction over a Georgia police officer sued with respect to his seizure of a Nevada citizen's cash in an Atlanta airport. 571 U.S. at 288-89. The Court explained that the fact that the officer "allegedly directed his conduct at plaintiffs whom he knew had Nevada connections" or that the plaintiffs had "suffered the 'injury'" in Nevada were insufficient to establish personal jurisdiction in Nevada. *Id.*

The same is true here. Ms. Hines's allegation that she "experienced . . . censorship" in Louisiana (Am. Compl. [Doc. #77], ¶ 9) or that "Defendants deliberately monitor and track speech on social media by Louisiana residents" so that they can communicate with "state officials in the relevant State" regarding particular content (*id.* ¶ 377) are insufficient.

To begin with, Plaintiffs have not alleged that Aspen communicated with anyone in Louisiana. Plaintiffs allege that the communications with government officials were by "analyst[s]" working for "EIP" (*id.* ¶ 280) and "VP" (*id.* ¶ 282). Aspen is not alleged to be a member of either the Election Integrity Partnership or the Virality Project. *See id.* ¶ 1 (identifying members). Neither do Plaintiffs allege that Aspen knew of Ms. Hines's Louisiana connections.[5]

Next, *Walden* makes clear that a court in Louisiana could not exercise personal jurisdiction over Aspen even if Ms. Hines experienced harm there. As the Fifth Circuit explained in applying *Walden* in *Danziger*, "although [an out-of-state defendant's] allegedly tortious conduct might have *affected* [the plaintiff] in Texas," if "none of this conduct *occurred* in Texas," then "none of" the "allegedly tortious conduct meaningfully connects it to Texas,' and "Texas courts do not have

---

[5] Plaintiffs do allege that Defendant Alex Stamos, the director of one of the alleged members of those initiatives (Am. Compl. [Doc. #77], ¶ 18), serves on an Aspen-sponsored commission (*id.* ¶ 39). But Plaintiffs do not allege that Aspen itself is a member. Instead, Plaintiffs allege merely that Aspen and one if its donors have communicated with Election Integrity Partnership and Virality Project members. *See id.* ¶¶ 41-44. But, as explained in the text, they do not allege that any such communications involved Louisiana or Ms. Hines.

jurisdiction[.]" 24 F.4th at 497-98; *see also Sangha v. NAVIG8 Shipmanagement Priv. Ltd.*, 882 F.3d 96, 103-04 (5th Cir. 2018) (similar). The same is true here: None of Aspen's alleged conduct occurred in or meaningfully connected Aspen to Louisiana, and therefore Aspen is not subject to personal jurisdiction in Louisiana.

The Supreme Court in *Walden* contrasted that case's facts with those in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, California was permitted to exercise jurisdiction over an out-of-state National Enquirer reporter and editor sued for libel. *Walden*, 571 U.S. at 286-68. The *Calder* defendants had "'expressly aimed'" their actions at California; they had called "'California sources' for information in their article"; the story was about "activities in California"; and they knowingly caused "reputational injury in California," where the National Enquirer "'ha[d] its largest circulation.'" *Id.* at 282, 287 & n.7. The *Walden* Court's contrast of facts confirms that Louisiana cannot assert jurisdiction over Aspen.

Plaintiffs do not, and could not, assert that Aspen's alleged activities were "expressly aimed" at Louisiana in particular. In fact, they do not allege that those activities were aimed at any particular state. Therefore, Ms. Hines' connections with Louisiana are irrelevant. *Id.* Again, as noted above, Plaintiffs do not allege that Aspen was a member of the Election Integrity Partnership or Virality Project. But even as to the other Defendants that were members, Plaintiffs' allegations make clear that the reporting of content to social-medial companies and state officials was nationwide, not targeted uniquely at Louisiana. *See, e.g.*, Am. Compl. [Doc. #77], ¶¶ 78-79, 173, 377. Indeed, Ms. Hines does not allege that she individually was targeted by any Defendant's actions, but rather her type of content—"health freedom" or "medical freedom" content—was flagged. *Id.* ¶¶ 362, 364. Ms. Hines also alleges that the Virality Project's efforts were nationwide, rather than targeted at Louisiana, because the Virality Project allegedly took the position that

"'medical freedom' groups spread misinformation 'across all 50 states.'" *Id.* ¶ 373; *see also id.* ¶¶ 362-75. Plaintiffs' own allegations similarly demonstrate that the Election Integrity Partnership did not target Louisiana either, because it "prioritize[d] . . . swing states over non-swing states." *Id.* ¶ 173.[6]

Finally, the allegations here closely resemble those that the Fifth Circuit found insufficient to establish specific jurisdiction in *Johnson*, 21 F.4th at 318-26. In that case, the Huffington Post was alleged to have libeled the plaintiff, who sued because he felt "the libel's effects in the forum state," where the website's article was available. *Id.* at 317. The Fifth Circuit disagreed, explaining that the Huffington Post's "universal accessibility" does not prove "purposeful availment" of the forum. *Id.* at 320. The same principle precludes personal jurisdiction here: The alleged removal of content posted nationwide does not in any way establish purposeful availment by Aspen of Louisiana.[7]

3. Plaintiffs' group pleading cannot support personal jurisdiction over Aspen.

Plaintiffs may attempt to base specific jurisdiction on allegations that refer to "Defendants" generally in connection with the activities of the Election Integrity Partnership and Virality Project.[8] Those allegations cannot support specific jurisdiction over Aspen.

---

[6] Plaintiffs allege that Mr. Hoft was a major focus of the Election Integrity Partnership. *See* Am. Compl. [Doc. #77], ¶ 11 ("The EIP report mentions Hoft 47 times[] and identifies him as the '#2 superspreader' of misinformation on Twitter alone[.]"). But Mr. Hoft is not from Louisiana. *Id.* ¶ 10.

[7] Even if Plaintiff Hines could establish personal jurisdiction with respect to her claims against Aspen, that would not aid Plaintiff Hoft. The Supreme Court has held that "[t]he mere fact that *other* plaintiffs" who "allegedly sustained the same injuries as nonresidents" can sue in a forum "does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Bristol-Myers Squibb*, 582 U.S. at 265.

[8] Plaintiffs repeatedly allege conduct by Defendants collectively, often by attributing actions not to individual Defendants but to the Election Integrity Partnership or the Virality Project as a whole

Aspen is not alleged to be a member of either the Election Integrity Partnership or the Virality Project. *See* Am. Compl. [Doc. #77], ¶ 1. And Plaintiffs cannot evade their burden to establish personal jurisdiction as to Aspen *individually* by alleging merely that Defendants' *collectively* engaged in particular conduct—for two reasons.

*First*, allegations regarding "Defendants" or actions taken by the Election Integrity Partnership or Virality Project as a collective constitute "group pleading" that cannot support personal jurisdiction. *Armstrong v. Ashley*, 60 F.4th 262, 274 (5th Cir. 2023); *accord*, *e.g.*, *In re Aegean Marine Petroleum Network, Inc. Secs. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) ("To allege personal jurisdiction over a defendant, group pleading is not permitted."). "The requirements of *International Shoe*, however, must be met as to each defendant over whom a . . . court exercises jurisdiction." *Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

*Second*, by attempting to attribute the other Defendants' potential contacts with Louisiana to Aspen, Plaintiffs' group allegations contravene the Supreme Court's directive that "[t]he contacts must be the defendant's own choice." *Ford*, 141 S. Ct. at 1025. "The defendant's ties to the forum . . . must be ties that 'the defendant *himself*' purposefully forged." *Johnson*, 21 F.4th at 317 (citation omitted). The "unilateral activity of another party or a third person is not an appropriate consideration[.]" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984); *see also*, *e.g.*, *Bristol-Myers Squibb*, 582 U.S. at 265.

For that reason, the Fifth Circuit has instructed district courts to "determine whether the plaintiffs had made a prima facie case of specific personal jurisdiction" with respect to each defendant "individually and not as part of a conspiracy." *Guidry v. United States Tobacco Co.*,

---

(*e.g.*, Am. Compl. [Doc. #77], ¶¶ 2, 4-7, 52-421), or to a "federal-state-academic censorship consortium" that includes unnamed third-party government officials (*id.* ¶ 155; *see also id.* ¶¶ 1, 426).

188 F.3d 619, 625 (5th Cir. 1999); *see also, e.g., Bar Grp., LLC v. Bus. Intel. Advisors, Inc.*, 215 F. Supp. 3d 524, 539 (S.D. Tex. 2017) ("Allegations of conspiracy will not establish a prima facie case of personal jurisdiction[.]"). Plaintiffs have entirely failed to allege facts showing that Aspen itself has any contacts with Louisiana, let alone significant contacts.

In sum, Plaintiffs have failed to allege that Aspen had formed sufficient minimum contacts with Louisiana to support personal jurisdiction in Louisiana.[9]

### iv.  Subjecting Aspen to suit in Louisiana would be unfair and unreasonable.

Even if Aspen did have sufficient minimum contacts with Louisiana, which it does not for the reasons just discussed, "'maintenance of the suit'" against Aspen would nonetheless be impermissible because it would "'offend traditional notions of fair play and substantial justice.'" *Ford*, 141 S. Ct. at 1024 (quoting *International Shoe*, 326 U.S. at 316-17). The relevant factors are: "(1) the burden on [Defendants] of having to defend [themselves] in [Louisiana], (2) the interests of [Louisiana] in the case, (3) [Plaintiffs'] interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies." *Sangha*, 882 F.3d at 102. Each of these factors weighs heavily in favor of dismissal. Together, they require it.

---

[9] Any request by Plaintiffs for jurisdictional discovery should be denied. "Discovery on matters of personal jurisdiction . . . need not be permitted unless the motion to dismiss raises issues of fact." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000). Here, Aspen's motion raises no fact issues because it assumes the truth of Plaintiffs' allegations. Plaintiffs are not entitled to discovery because  they have "not made even a preliminary showing of jurisdiction" by "present[ing] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (internal quotation marks omitted). As the Fifth Circuit put it recently explained, "[w]e will not authorize 'a jurisdictional fishing expedition' based on a plaintiff's general averments that more discovery will prove our jurisdiction.'" *Johnson*, 21 F.4th at 326 (citation omitted).

To begin, the burden on Aspen of having to litigate this case in Louisiana would be great. Plaintiffs themselves allege that Aspen—and therefore its potentially relevant evidence and witnesses—is located in Washington, DC, Aspen, Colorado, and Wye River, Maryland (Am. Compl. [Doc. #77], ¶ 37), all places that are far from Louisiana. Likewise, Louisiana has essentially no interest in the outcome of this case, as only one plaintiff (Ms. Hines) resides here and the bulk of Plaintiffs' allegations pertain to a putative nationwide class of social-media users residing throughout the country. Further, Aspen has no alleged contacts with Louisiana. "The cause of action here is essentially unrelated to [Aspen's] contacts with Louisiana." *Burstein v. State Bar of Cal.*, 639 F.2d 511, 522 (5th Cir. 1982). In addition, the other Defendants' alleged actions took place outside of Louisiana. *See*, *e.g.*, *Bustos v. Lennon*, 538 F. App'x 565, 568-69 (5th Cir. 2013) ("The assertion of personal jurisdiction in Texas is unreasonable in this case" in part because "[t]he burden on all of the defendants, who live and work outside of Texas" and "the relevant conduct occurred outside the state.")

Moreover, neither Plaintiffs nor the judicial system have any interest in maintaining this action in Louisiana. Only one Plaintiff and only one of Plaintiffs' ten lawyers are from Louisiana (Am. Compl. [Doc. #77], ¶¶ 8, 10 & p. 102), and the putative class members are primarily from other states. None of Aspen's conduct occurred in or was directed at Louisiana, none of the evidence is in this State, and any witness likely to be called, other than Ms. Hines herself, are located outside of Louisiana.

Finally, principles of federalism support dismissal here, where there is no connection at all between Aspen's conduct and Plaintiffs' claims. Litigating the case here would infringe on the sovereignty of other states with more meaningful connections to these events and undermine the

anti-forum shopping principles that are at the heart of the Due Process Clause's express limitations on personal jurisdiction.

**B.    This Court Does Not Have Subject Matter Jurisdiction Because Plaintiffs Lack Article III Standing To Assert These Claims Against Aspen.**

One of the "irreducible constitutional minimum" requirements for Article III standing is that the plaintiff's alleged injury "is fairly traceable to the challenged conduct of the defendant." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Because Plaintiffs' allegations do not support a plausible inference satisfying this basic prerequisite, Plaintiffs lack Article III standing and the claims against Aspen must be dismissed.

**i.    Plaintiffs' alleged injuries are not fairly traceable to Aspen.**

Article III's traceability requirement requires a plaintiff, at the motion-to-dismiss stage, to allege facts supporting a plausible inference that his injuries result from the "challenged actions of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs do not allege that Aspen was a member of either the Election Integrity Project or the Virality Project—which allegedly flagged content for social-media companies—or that Aspen otherwise brought any content to the attention of those companies.

Even if Aspen were alleged to be a participant in those initiatives (and it was not), those initiatives did not remove Plaintiffs' content. And although Plaintiffs allege that those initiatives urged social-media companies to remove flagged content, it was only unnamed government officials who allegedly coerced the social-media companies to remove content. Am. Compl. [Doc. #77], ¶¶ 147-54. Those government officials are "third part[ies] not before the court." *Lujan*, 504 U.S. at 560. Finally, and in addition, Plaintiffs' harms—the removal of their social-media

16

content—was effected by social-media companies, not by Aspen. Am. Compl. [Doc. #77], ¶¶ 51, 394, 397, 399, 406.

Ms. Hines's allegations demonstrate the fatal flaws in Plaintiffs' alleged chain of causation. She asserts that, as a result of the Virality Project, Facebook "restricted" her account for "30 days starting in January 2022" and again "restricted" her account in May 2022. Am. Compl. [Doc. #77], ¶ 394. She further alleges that another one of her posts "was censored on Facebook" on "April 26, 2023." *Id.* ¶ 397. But the complaint explains that the Virality Project flagged content between "February to August 2021." *Id.*, ¶ 281 & *id.* Ex. 10 at 34 (27) (found at Doc. #1-11). It therefore could not be the flagging of content by Virality Project—and certainly not by Aspen—that produced the content removal or other restrictions that Ms. Hines allegedly experienced.

Even setting aside that fundamental chronological problem, Ms. Hines does not allege that Aspen or any of the Defendants flagged her content in particular—or even ever read a single one of her posts or mentioned them to anyone. To the contrary, Plaintiffs merely allege that the Virality Project flagged content "like" that of Hines. *See*, *e.g.*, *id.* ¶ 362 ("On information and belief, health freedom groups, *like Plaintiff Jill Hines's group Health Freedom Louisiana*, are particular targets of the VP's monitoring and censorship activities.") (emphasis added).

Mr. Hoft's allegations similarly fail to allege facts showing the constitutionally required traceability. To be sure, he alleges that the Election Integrity Partnership "repeated flagged" his website, the Gateway Pundit, and mentioned it "47 times" in its final report. *Id.* ¶ 410. He also alleges that another Defendant, Kate Starbird, a University of Washington professor involved in the Election Integrity Partnership and Virality Project, discussed plans to ask social-media companies to "demote sites like . . . Gateway Pundit" in a meeting with Aspen. *Id.* ¶ 43 (emphasis omitted).

But those allegations do not come close to supporting a plausible inference that Aspen itself ever communicated with any social-media platform or that it had any control over the decisions of the platforms. Moreover, the chain of causation that Plaintiffs would have to allege cannot satisfy Article III's requirement that that Plaintiffs prove that their injuries resulted from Aspen's conduct rather than that of a third party:

- Plaintiffs must allege that Aspen, which was not a member of the Election Integrity Partnership or Virality Project, influenced them to recommend the removal of Plaintiffs' content (the amended complaint does not contain any such allegation);

- That the members of those initiatives influenced government officials to pressure social-media companies because of Aspen's conduct; and

- That social-media companies removed Plaintiffs' content only because of that pressure, and not because of the social-media companies' exercise of their own independent judgment.

A fundamental flaw in Plaintiffs' theory, however, is that "[n]o action was taken on 65%" of the posts that the Election Integrity Project shared with Facebook, Instagram, Twitter, TikTok and YouTube. Am. Compl. [Doc. #77], Ex. 1 at 58 (40). And when the social-media companies did take action, they usually merely added labels to the posts in order to direct users to further information. *Id.*, at 58 (40), 234 (216). For example, of all the posts that the Election Integrity Project shared with social-media companies, the companies chose to remove only 13% of posts and to add labels or warnings to 22% of posts. *Id.* In other words, the companies did not remove content 87% of the time, and took no action at all on 65% of reports. *Id.* Similarly, when the Virality Project reported content to these platforms, as Plaintiffs themselves note, those platforms "act[ed] on it in accordance with their policies[.]" *Id.* ¶ 272 (quoting *id.* Ex. 10, at 25 (18).

18

The Supreme Court has made clear that conclusory allegations in a complaint—like Plaintiffs' refrain of "pressure and coercion" here (Am. Compl. [Doc. #77], ¶¶ 50, 147, 305, 417)—that are contradicted by factual allegations in the complaint cannot support a plausible inference. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566-69 (2007) (conspiracy allegation not plausible when "the complaint itself gives reasons to believe" that a "conspiracy was not suggested by the facts"). Plaintiffs' conclusory allegations of coercion cannot be credited given the factual allegations demonstrating that the social-media companies most frequently rejected recommendations that content violated their policies.

In sum, Plaintiffs' own allegations make plain that their alleged injuries resulted from the "independent action[s]" of "third part[ies]"—here, the social media platforms—not Aspen's conduct. *Lujan*, 504 U.S. at 560.

ii.   **Defendants' public advocacy did not have a "determinative or coercive effect" on the social media platforms' content moderation decisions.**

A plaintiff may in limited circumstances be able to establish standing if the "injury" to them was "produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997). For example, in *Bennett*, the Supreme Court held that an advisory opinion by the federal Fish and Wildlife Service had a "powerful coercive effect on the action agency" because it "alters the legal regime to which the action agency is subject." *Id*. That is, while "[t]he action agency is technically free to disregard the" advisory opinion, "and proceed with its proposed action . . . it does so at its own peril" at the risk of "substantial civil and criminal penalties, including imprisonment." *Id*. at 170

Meeting this high bar is "difficult." *Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019). That is why claims of "[i]ndirect harm[] typically fail" to meet the traceability requirement of standing—because "the claimant's quarrel is" most

often "with the third party, not the defendant." *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021); *see also Bennett,* 520 U.S. at 170. And "[a] third party's 'legitimate discretion' breaks the chain of constitutional causation." *Turaani*, 988 F.3d at 317 (quoting *ASARCO Inc v. Kadish*, 490 U.S. 605, 615 (1989)). "An independent theory of traceability requires . . . cajol[ing], coerc[ing], [or] command[ing]." *Id*. And in assessing a plaintiff's causal chain, a court cannot "'presume either to control or to predict' the 'unfettered choices made by independent actors." *Id.* at 317 (quoting *ASARCO*, 490 U.S. at 615); *see also Daves v. Dallas Cty., Tex.*, 22 F.4th 522, 543 (5th Cir. 2022) ("The Supreme Court is 'reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors.'") (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)).

In *Turaani*, a plaintiff sued the FBI for a gun dealer's refusal to allow him to purchase a gun because—after the dealer ran a background check—an FBI agent visited the dealer and warned him about "the company [the plaintiff] keeps." *Turaani*, 988 F.3d at 315. The plaintiff lacked standing because he never alleged that the FBI agent "*commanded* the gun dealer not to go through with the sale." *Id*. at 317 (emphasis added). Instead, the dealer "exercised his" own, independent "discretion after speaking with [the agent]." *Id*. As Judge Sutton, writing for the Sixth Circuit, explained, "Article III demands more" of a plaintiff than a "reliance on a chain of contingencies" that "create[] 'mere speculation,' not traceable harm." *Id*. (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 389, 410 (2013)).

This case bears a striking resemblance to *Turaani*. Plaintiffs here do not allege that Aspen's conduct—allegedly hosting meetings and generally advising members of the Election Integrity Partnership and Virality Project (Am. Comp. [Doc. #77], ¶¶ 41-44)—had any sort of "determinative or coercive effect" on any of the decisions made by the various social-media

platforms to remove content or otherwise take action against Plaintiffs' accounts or posts. Instead, the very most that Plaintiffs allege is that Aspen in some indeterminate way helped others make the social-media companies aware of content that those third parties thought ran afoul of the platforms' respective policies so the platforms themselves could "independently evaluate" the content or the accounts. Am. Compl. [Doc. #77], Ex. 1 at 37 (19).

Just like the FBI agent's statement to the dealer urging caution about the plaintiff in *Turaani*, the other Defendants' alleged actions—much less Aspen's—"do[] not equal coercion." 988 F.3d at 316 at 316. And unlike *Bennett*, the social-media companies faced no threat of liability or criminal punishment from their refusal to remove or otherwise restrict the flagged accounts and posts. The social-media companies could—and most often did—"disregard" the items flagged (*Bennett*, 520 U.S. at 170), "choos[ing] not to comply" with the Election Integrity Partnership's or the Virality Project's identification of content as potentially problematic without "suffer[ing] any adverse consequences." *Nat'l Council of La Raza v. Mukasey*, 283 F. App'x 848, 852 (2d Cir. 2008).

Even if Plaintiffs had alleged that Aspen itself had reported content (and Plaintiffs do not), "[p]assing along information . . . is a distant cry from forcing action." *Turaani*, 988 F.3d at 316. Accordingly, Plaintiffs lack standing to assert claims against Aspen and this Court lacks subject matter jurisdiction. *Lujan*, 504 U.S. at 560-61.

**C.     Venue Is Improper in This District.**

Plaintiffs allege venue is proper under 28 U.S.C. § 1391(b)(2), which authorizes venue in "a judicial district in which a substantial part of the events or omissions giving rise to the *claim* occurred[.]" 28 U.S.C. § 1391(b)(2) (emphasis added); *see* Am. Compl. [Doc. #77], ¶ 49.

The venue provision's focus on where "the *claim* occurred" means that "*each* plaintiff" must allege facts showing that his or her claims arose out of in-district conduct. *Garcia v. Peterson*,

21

319 F. Supp. 3d 863, 877 (S.D. Tex. 2018) (emphasis by court). "The fact that a claim for some of the plaintiffs or some of the defendants arose in a particular district does not make that district a proper venue for parties as to whom the claim arose somewhere else." 14D Richard D. Freer, *Federal Practice and Procedure* § 3807 (4th ed. Supp. Apr. 2023); *see also id.*, at § 3807 n.11 (citing cases).

Plaintiffs fail to allege any facts showing that a "substantial part of the events" giving rise to their claims against Aspen occurred in this District. As explained above, Plaintiffs fail to allege that Aspen engaged in any conduct in this District. *See* pages 8-14, *supra*.

In determining where a "substantial part of the events . . . occurred," as with assessing personal jurisdiction, courts must "'focus on relevant activities of the defendant, not of the plaintiff.'" *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003) (quoting *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)). Accordingly, "even if . . . the effects of [the defendant's] actions were felt in Louisiana," that would "not suffice to authorize venue in this district pursuant to § 1391(b)(2)." *Thompson v. Georgia*, 2008 WL 4909421, at *2 (W.D. La. Oct. 15, 2008) (rep. & rec.); *see also, e.g.*, *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 434 (2d Cir. 2005); *Inst. For Creation Rsch. Graduate Sch. v. Paredes*, 2009 WL 4333366, at *3 (N.D. Tex. Dec. 1, 2009). That is because, "[l]ike personal jurisdiction, venue is 'designed to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial.'" *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 244 (5th Cir. 2017) (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979)).

The fact that one of the two Plaintiffs resides in this District therefore is irrelevant. What matters is where *Aspen* is located and where its alleged conduct occurred—none of which is

alleged to be this District. Accordingly, no part of the events giving rise to Plaintiffs' claims, much less the required "substantial part of the events," occurred in this District. 28 U.S.C. § 1391(b)(2).

Where (as here) a case is filed in the "wrong division or district," the district court "shall dismiss, or . . . transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013).[10]

## V.    CONCLUSION

Aspen respectfully requests that this Court enter judgment dismissing Plaintiffs' claims against Aspen under Federal Rules of Civil Procedure 12(b)(1)-(3).

Dated: December 18, 2023

Respectfully submitted,

By: /s/    *Elizabeth M. Carmody*
Elizabeth Mendell Carmody, #25792
COOK, YANCEY, KING & GALLOWAY, PLC
333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, LA 71120-2260
Tel: (318) 221-6277
Fax: (318) 227-7850
elizabeth.carmody@cookyancey.com

Andrew J. Pincus (*pro hac vice*)
Archis A. Parasharami (*pro hac vice*)
Kevin Ranlett (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
Tel: (202) 263-3000
Fax: (202) 263-3300
apincus@mayerbrown.com
aparasharami@mayerbrown.com
kranlett@mayerbrown.com

*Attorneys for Defendant The Aspen Institute*

---

[10] If the claims against it are not dismissed on jurisdictional or venue grounds or compelled to arbitration, Aspen will raise its arguments that Plaintiffs have failed to state a claim in a subsequent motion.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 18th day of December, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will provide notice of electronic filing to the attorneys for all parties.


*/s/    Elizabeth M. Carmody*
Elizabeth Mendell Carmody