UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

J<small>ILL</small> H<small>INES</small>, <small>ET AL</small>.,

   *Plaintiffs*,

 v.

A<small>LEX</small> S<small>TAMOS</small>, <small>ET AL</small>.,

   *Defendants*.

Civil Action No. 3:23-cv-00571

Chief Judge Terry A. Doughty

Magistrate Judge Kayla D. McClusky

**REPLY IN SUPPORT OF DEFENDANT THE ASPEN INSTITUTE'S MOTION
TO DISMISS FOR LACK OF JURISDICTION AND IMPROPER VENUE**

# **TABLE OF CONTENTS**

                                                                                                                       **Page**

I.     ARGUMENT ................................................................................................................. 1

         A.     The Court Lacks Personal Jurisdiction Over Aspen. ............................................... 1

                1.     Plaintiffs do not allege that Aspen has minimum contacts with Louisiana, but instead rely on impermissible group pleading. ................... 1

                2.     The group allegations cannot establish personal jurisdiction either. ........... 3

         B.     This Court Does Not Have Subject Matter Jurisdiction Because Plaintiffs Lack Article III Standing to Assert These Claims Against Aspen. ........................ 5

                1.     *Murthy* requires Plaintiffs to plead Facts showing that each Defendant caused particular content to be removed or blocked. ................................. 5

                2.     Plaintiffs lack standing under *Murthy*. ......................................................... 6

         C.     Plaintiffs' request for jurisdictional discovery should be denied ........................... 8

         D.     Venue Is Improper in This District. ...................................................................... 10

II.    CONCLUSION ............................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Admar Int'l, Inc. v. Eastrock, L.L.C.*,
  18 F.4th 783 (5th Cir. 2021) ...................................................................................................4

*Allstate Life Ins. v. Linter Grp. Ltd.*,
  782 F. Supp. 215 (S.D.N.Y. 1992) ..........................................................................................3

*Armstrong v. Ashley*,
  60 F.4th 262 (5th Cir. 2023) ...................................................................................................2

*Bennett v. Spear*,
  520 U.S. 154 (1997).................................................................................................................7

*BNSF Ry. v. Tyrrell*,
  581 U.S. 402 (2017)...............................................................................................................10

*Bristol-Myers Squibb Co. v. Super. Ct.*,
  582 U.S. 255 (2017).................................................................................................................2

*Chow v. U.S.*,
  2021 WL 3438365 (5th Cir. Aug. 5, 2021)..............................................................................2

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).................................................................................................................8

*Defense Distributed v. Grewal*,
  971 F.3d 485 (5th Cir. 2020) ..................................................................................................4

*ENTU Auto Servs., Inc. v. PicMyRide.Biz, LLC*,
  2015 WL 1638179 (E.D. La. Apr. 13, 2015).........................................................................10

*Fielding v. Hubert Burda Media, Inc.*,
  415 F.3d 419 (5th Cir. 2005) ..................................................................................................9

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021).................................................................................................................5

*Freeman v. United States*,
  556 F.3d 326 (5th Cir. 2009) ..................................................................................................9

*Ghedi v. Mayorkas*,
  16 F.4th 456 (5th Cir. 2021) ..................................................................................................8

*Guidry v. U.S. Tobacco Co.*,
   188 F.3d 619 (5th Cir. 1999) ...................................................................................................2

*Johnson v. TheHuffingtonPost.com, Inc.*,
   21 F.4th 314 (5th Cir. 2021) ...........................................................................................4, 5, 9

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984)................................................................................................................2, 5

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
   213 F.3d 841 (5th Cir. 2000) ...................................................................................................9

*Kennedy v. Biden*,
   2024 WL 3879510 (W.D. La. Aug. 20, 2024)..........................................................................8

*Melea, Ltd. v. Jawer SA*,
   511 F.3d 1060 (10th Cir. 2007) ...............................................................................................3

*Miss. Interstate Exp., Inc. v. Transpo, Inc.*,
   681 F.2d 1003 (5th Cir. 1982) ............................................................................................2, 5

*Missouri v. Biden*,
   No. 22-cv-01213 (W.D. La.)..........................................................................................4, 5, 8

*In re MPF Holdings US LLC*,
   701 F.3d 449 (5th Cir. 2012) ...................................................................................................9

*Murthy v. Missouri*,
   144 S. Ct. 1972 (2024).........................................................................................1, 5, 6, 7, 8

*Pace v. Cirrus Design Corp.*,
   93 F.4th 879 (5th Cir. 2024) .................................................................................................10

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
   882 F.3d 96 (5th Cir. 2018) ......................................................................................................2

*Walden v. Fiore*,
   571 U.S. 277 (2014)......................................................................................................2, 3, 4

*Williamson v. Tucker*,
   645 F.2d 404 (5th Cir. 1981) ...................................................................................................9

**Statutes, Rules, and Other Authorities**

28 U.S.C. § 1391(b)(2) ...........................................................................................................10

Fed. R. Civ. P. 12(b)(1)......................................................................................................8, 10

Fed. R. Civ. P. 12(b)(2)...........................................................................................................10

Fed. R. Civ. P. 12(b)(3)...........................................................................................................10

Fed. R. Civ. P. 12(b)(6).............................................................................................................8

14D Richard D. Freer, Federal Practice and Procedure (4th ed. Supp. 2024) ...............................10

In remanding, the Fifth Circuit held that if this Court "lacks either personal jurisdiction or subject-matter jurisdiction (in light of *Murthy* [*v. Missouri*, 144 S. Ct. 1972 (2024)]), it *must* dismiss the case." Doc. #112, at 22 (emphasis added). As to the Aspen Institute, neither exists here, and so the claims against it must be dismissed.[1]

There is no personal jurisdiction because Plaintiffs cannot point to any allegations that *Aspen itself* has minimum contacts with Louisiana. Instead, they rely on impermissible group pleading and the alleged contacts of Aspen's codefendants. But only a particular *defendant's* contacts with the forum matter—not those of other parties (even if a conspiracy is alleged).

As to subject-matter jurisdiction, Plaintiffs have no answer to *Murthy*, which held that they lack Article III standing to sue federal officials for allegedly coercing social-media platforms into moderating Plaintiffs' content. Plaintiffs thus necessarily lack standing to sue the Defendants in the Election Integrity Project (EIP) and Virality Project (VP) for allegedly helping those officials. And they have no hope of standing as to Aspen, which was not even a part of EIP or VP. The Court should decline Plaintiffs' invitation to circumvent Supreme Court precedent.

Plaintiffs all but concede that jurisdiction is lacking by making a Hail-Mary request for jurisdictional discovery. Opp. 4-5. But discovery is improper when, as here, a plaintiff does not allege a *prima facie* case for jurisdiction. No amount of discovery can plug that hole.

## I.   ARGUMENT

**A.   The Court Lacks Personal Jurisdiction Over Aspen.**

   **1.   Plaintiffs do not allege that Aspen has minimum contacts with Louisiana, but instead rely on impermissible group pleading.**

Plaintiffs do not suggest that they have adequately alleged general jurisdiction, and their assertion of specific jurisdiction fails because they cannot show that Aspen "has purposely availed

---

[1] Aspen joins in and incorporates the other Defendants' dismissal arguments. Doc. #116 and 122.

1

[itself] of the privilege of conducting activities within the forum state." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). They do not allege that Aspen "traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" Louisiana, *Walden v. Fiore*, 571 U.S. 277, 289 (2014),—much less in a way connected to this suit.

Plaintiffs cannot overcome that failure by referring generally to actions by "Defendants." Opp. 5-9 (citing Am. Compl. ¶¶ 375-89). "Each defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *see also Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 268 (2017) (due process "requirements . . . must be met as to each defendant") (citation omitted); *Armstrong v. Ashley*, 60 F.4th 262, 274-75 (5th Cir. 2023) ("group pleading" is "insufficient").

Plaintiffs' conspiracy allegations (Opp. 11-14) cannot bridge the gap. The Fifth Circuit has explained that "specific personal jurisdiction" must be shown as to each defendant "individually and not as part of a conspiracy." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999); *see also Chow v. U.S.*, 2021 WL 3438365, at *2 (5th Cir. Aug. 5, 2021) ("personal jurisdiction over one defendant conspirator is not sufficient to establish personal jurisdiction over a nonresident coconspirator"). Simply put, a "defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286. That is why, in the very case that Plaintiffs say rested jurisdiction on conspiracy allegations (Opp. 11-12), the Fifth Circuit was careful to consider the actions of the "non-resident defendant," concluding that it was "no mere passive customer," but affirmatively contracted with the plaintiff in the forum state with the intent that the plaintiff "perform[] its part of the undertaking" there. *Miss. Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1009 (5th Cir. 1982).[2] Thus, Plaintiffs' allegations that "Defendants" had

---

[2] The out-of-circuit cases that Plaintiffs incorrectly cite for the proposition that allegations of conspiracy are sufficient to attribute one conspirator's contacts to another (Opp. 11) are equally

2

contacts with Louisiana fail as a matter of law to show that *Aspen* had the requisite contacts.

Nor are Plaintiffs' scant allegations as to Aspen itself sufficient. Their core allegations are that their posts were censored because EIP and VP members worked with the government to pressure social-media platforms. Am. Compl. ¶¶ 1-11. But Aspen is not alleged to ever have been a member of EIP or VP. Plaintiffs note that Defendant Stamos is a member of a separate Aspen commission (Opp. 2-3 (citing Am. Compl. ¶ 39)), but they do not allege that that commission had any role in their purported censorship. Plaintiffs also cite their allegations that Defendant Starbird has emailed or met with individuals associated with Aspen, and that Starbird and Stamos emailed someone who donated money to Aspen. Opp. 10 (citing Am. Compl. ¶¶ 38-44). But these allegations do not show that Aspen had any role in the alleged censorship—much less that Aspen had any connection with or targeted Louisiana in any way. In their brief, Plaintiffs say that "Aspen was involved" in alleged efforts to "target[] Louisiana," "communicat[e] with Louisiana officials," and "intentionally cause[] harm in Louisiana." Opp. 10-11. But the cited provisions of the amended complaint all refer to actions of EIP and VP members (*see* Am. Compl. ¶¶ 375-78)—not Aspen.

### 2. The group allegations cannot establish personal jurisdiction either.

In any event, the group allegations do not show minimum contacts with Louisiana.

To begin with, Hines's arguments that she was "targeted" by VP (Opp. 14-15) miss the mark because VP did *not* target or ever mention or flag her. *See* Am. Compl. ¶¶ 362-64. Allegations that VP addressed "medical freedom" groups generally do not show that VP targeted *all* such groups (as she now contends (Opp. 14-15)) or that VP targeted her *in particular*, which is required to show purposeful availment. Mot. 10-12; *see also*, *e.g.*, *Walden*, 571 U.S. at 288-89.

---

inapposite. Those courts required that the conspiracy be "in th[e] [forum," *Allstate Life Ins. v. Linter Grp. Ltd.*, 782 F. Supp. 215, 221 (S.D.N.Y. 1992), or that "substantial steps in furtherance" were "taken" there, *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1070 (10th Cir. 2007). Those factors aren't met here. And Aspen is not even part of the EIP or VP projects alleged to be the conspiracy.

3

Hoft concedes that he is not from Louisiana, arguing that it is enough that he has followers there. Opp. 14. But he pleads no facts suggesting that Defendants targeted his Louisiana audience in particular. Allegations that out-of-state actions have an "effect" in Louisiana simply because the internet is available there cannot support personal jurisdiction. *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318, 321-22 (5th Cir. 2021) ("To target every" follower "everywhere . . . is to target no place at all."); *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 787 (5th Cir. 2021) (fact that "Louisiana residents can access" a "website, no less than residents of other states," cannot be a basis for purposeful availment unless the defendant specifically "targets Louisiana").

Plaintiffs' allegations about emails with Louisiana officials about election misinformation (Opp. 10) do not help them either. Those emails are irrelevant to Hines, who does not allege censorship of posts about elections. And the complaint reveals that the factual support for Plaintiffs' assertion about these emails is an email chain produced in *Missouri v. Biden* in which Louisiana officials contacted CISA officials in 2020. Am. Compl. ¶ 382. These e-mails do not mention EIP, any Defendant, or any Plaintiff. Doc. #266-5 at 192-200, *Missouri v. Biden*, No. 22-cv-01213 (W.D. La.). And the Louisiana officials' communication with federal officials cannot constitute contacts by any Defendant with Louisiana. "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum." *Walden*, 571 U.S. at 291.

Plaintiffs' reliance on *Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020) and *Mississippi Interstate Express* is misplaced. *Grewal*'s holding depended on the fact that the defendant sent a cease-and-desist letter into the forum to the plaintiff, whose "injuries stemm[ed] solely and directly from [that] letter[.]" *Id.* at 492. No such forum connections are present here. And as noted above, in *Mississippi Interstate Express*, jurisdiction turned on the fact that the defendant contracted with the plaintiff in the forum to obtain "performance" in the forum, which

4

"was known to" the defendant. 681 F.2d at 1009.[3]

In sum, Plaintiffs cannot show that there is personal jurisdiction over Aspen.[4]

**B.     This Court Does Not Have Subject Matter Jurisdiction Because Plaintiffs Lack Article III Standing to Assert These Claims Against Aspen.**

In *Murthy*, the Supreme Court held that Plaintiffs lack standing to sue the government because, despite an extensive evidentiary record, Plaintiffs could not show that the government was responsible for platform moderation decisions. 144 S. Ct. at 1992-93. Plaintiffs necessarily lack Article III standing to sue Aspen, which is yet another step removed from those decisions.

**1.      *Murthy* requires Plaintiffs to plead Facts showing that each Defendant caused particular content to be removed or blocked.**

In *Murthy*, Plaintiffs' standing arguments relied on their alleged past injuries, and so the Supreme Court discussed whether they "have demonstrated traceability for their past injuries." 144 S. Ct. at 1987.  The Court explained that "a federal court cannot redress 'injury that results from the independent action of some third party not before the court.'" *Id.* at 1986 (citation omitted). Given the "one-step removed" nature of Plaintiffs' claims in *Murthy*, Plaintiffs' "guesswork" about whether platforms would have moderated their content was insufficient to confer standing. *Id.* at 1986. Instead, Plaintiffs must show "specific causation" by the actions of each defendant "with respect to any discrete instance of content moderation." *Id.* at 1987-88. Yet

---

[3] Plaintiffs also cite *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). Opp. 14. But as the Fifth Circuit explained, "*Keeton* stressed the substantial physical circulation of print media" because "sending magazines" into a state "reflects purposeful availment."*Johnson*, 21 F.4th at 325. "[W]ebsites are different." *Id.* Imposing jurisdiction merely because forum residents "can visit a website" would be "unlimited jurisdiction," which is inconsistent with "due process." *Id.* at 326.

[4] Beyond the lack of minimum contacts, as Aspen explained (Mot. 14), suing Aspen in Louisiana would "'offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citation omitted). Plaintiffs argue that Louisiana favors free speech (Opp. 15)—but the First Amendment applies throughout the Union. *See* U.S. Const. amend. I. Plaintiffs also note that *Missouri v. Biden* is also pending here, but the presence of a suit against *others* says nothing about the fairness to *Aspen* of litigating here.

evidence in *Murthy*—including what is incorporated in the amended complaint here (*see* Compl. Ex. 10 at 16 (VP Report at 9), 133 (126) & Fig. 5.1; Am. Compl. ¶ 66)—showed that the platforms were increasing moderation before any defendant's involvement. 144 S. Ct. at 1987-88.

The Court added that allegations cannot "treat[] the defendants, plaintiffs, and platforms each as a unified whole." 144 S. Ct. at 1988. Instead, the allegations must show "that a particular defendant pressured a particular platform to censor a particular content *before* that platform suppressed a particular plaintiff's speech on that topic." *Id.* And even if there are links, those "links must be evaluated in light of the platform's independent incentives to moderate content." *Id.*

### 2.     Plaintiffs lack standing under *Murthy*.

Plaintiffs' claims against Aspen flunk *Murthy*. For starters, they "treat[] the defendants" as "a unified whole," failing to include even a single factual allegation that any action by Aspen caused any "particular platform" to engage in any "discrete instance of content moderation." *Id.* at 1987-88. Instead, Plaintiffs improperly allege that "Defendants" collectively, or that "EIP" or "VP"—groups of which Aspen was not allegedly a part—took particular actions. *E.g.*, Am. Compl. ¶¶ 2, 362-421. *Murthy* is controlling on this point; dismissal is warranted for that reason alone.

Even if group allegations could be applied to Aspen, Plaintiffs have not adequately alleged that Defendants had a role in moderation of Hines's content. She alleges that Facebook moderated her COVID-19-related posts three times—in January and May 2022 and April 2023. Am. Compl. ¶¶ 394, 397. But she never alleges that any Defendant (or VP) communicated with Facebook about her "*before* that platform suppressed" her "speech on that topic." *Murthy*, 144 S. Ct. at 1988. She contends that her allegations that VP "tracks and flags 'medical freedom' groups" mean that Defendants sought to censor *everyone* (Opp. 19 (citing Am. Compl. ¶¶ 370-75)), but that reading of her generalized allegations is implausible, and in any event fails *Murthy*'s requirement of "specific causation" as to each "discrete instance of content moderation." 144 S. Ct. at 1987.

6

Hines also has no answer to the defects in her timeline. VP allegedly stopped flagging COVID-19-related misinformation in August 2021. Am. Compl. ¶ 281. Yet her allegedly moderated content was not posted until the next year. *Id.* ¶¶ 394, 397. And the *Murthy* Court noted that "Facebook began to reduce the reach of Hines' and Health Freedom's pages" back "[i]n October 2020," 144 S. Ct. at 1990, well before VP started its work in 2021. Am. Compl. ¶ 281.[5]

Hoft also has failed to allege facts showing he has Article III standing. Although he alleges that EIP "repeatedly flagged" "The Gateway Pundit" (his website) in its database and discussed it in its June 2021 report, the only allegation linking Defendants to any censorship of him is an allegation that "content was reported to Twitter because 'EIP . . . saw [an] article on The Gateway Pundit.'" Am. Compl. ¶ 129. But Plaintiffs do not allege that that article was moderated by Twitter, and the document on which the allegation is based, which lists the content that Twitter moderated, does not say that this article was "actioned." Compl. Ex. 6 at 4-5. Further, although the only specific instance of censorship that Hoft alleges is that "Twitter suspended [The Gateway Pundit] account on February 6, 2021," Am. Compl. ¶ 188, EIP's Twitter reporting had ended months before, on December 12, 2020, and EIP's report criticizing The Gateway Pundit as a "repeat spreader" of misinformation was not published until months later, on June 15, 2021. Compl. Ex. 1 at 4; *see also id.* at 200, 225 n.1 (EIP Report at 182, 207 n.1). In any event, The Gateway Pundit was just one of 21 "repeat spreaders" on Twitter, and Twitter deactivated only four of those accounts (*id.* Ex. 1 at 206 (EIP Report at 188))—which is hardly proof that EIP's actions had the requisite "determinative or coercive effect" on Twitter. *Bennett v. Spear*, 520 U.S. 154, 169 (1997).

Because neither Hines nor Hoft has plausibly alleged that Defendants caused moderation

---

[5] This Court can take judicial notice of Hines's chronology discussed in *Murthy*, and allegations in and documents incorporated by the operative complaint show that Facebook was moderating anti-vaccine and COVID-19 misinformation well before Defendants allegedly began their efforts. Compl. Ex. 10 at 16, 133 & fig. 5.1 (VP Report at 9, 126).

of *their* content, their reliance (Opp. 22-23) on *Kennedy v. Biden*, 2024 WL 3879510 (W.D. La. Aug. 20, 2024), is misplaced. The plaintiffs there alleged *specific instances* in which government defendants had platforms remove their content. *Id.* at *4-9. There are no similar allegations here.[6]

Moreover, Plaintiffs make no factual allegation showing that Defendants' actions had a coercive effect on platforms' moderation decisions. They point to the findings from *Louisiana v. Biden* and *Missouri v. Biden* that the government induced platforms to cooperate with EIP and VP (Opp. 16), but *Murthy* vacated those findings because the courts lacked subject-matter jurisdiction.

Nor may Plaintiffs excuse the deficiencies in their pleadings by pointing to an Eighth Circuit case relaxing the plausibility standard when pleading standing. Opp. 20. The Fifth Circuit has been crystal clear that "the same plausibility standard that applies in the Rule 12(b)(6) context also applies to Rule 12(b)(1)." *Ghedi v. Mayorkas*, 16 F.4th 456, 463-64 (5th Cir. 2021).

Finally, Plaintiffs lack standing to seek prospective relief for two additional reasons. First, Plaintiffs do not allege that EIP or VP are in operation now or will be in the future. Plaintiffs therefore cannot point to the required "certainly impending" injury that Article III requires. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Second, *Murthy* holds that the government is not pressuring platforms to moderate misinformation now, nor is it likely to do so in the future. 144 S. Ct. at 1993-96. Because the claims here rely on government-induced pressure on the platforms, *Murthy*'s holding forecloses standing for injunctive relief against Defendants.[7]

## C. Plaintiffs' request for jurisdictional discovery should be denied.

In the alternative, Plaintiffs ask for jurisdictional discovery in the hopes of unearthing a basis for jurisdiction. Opp. 4-5. That request should be denied for three separate reasons.

---

[6] *Kennedy* is distinguishable, but to the extent the Court believes otherwise, Aspen respectfully submits that the standing analysis in *Kennedy* contravenes *Murthy*.

[7] Plaintiffs also argue that they "have standing as audience members." Opp. 24. But *Murthy* rejected their "'right to listen' theory." 144 S. Ct. at 1996.

8

First, as the other Defendants explain in detail, Plaintiffs' request fails at the threshold. Jurisdictional discovery exceeds the scope of the limited remand, and Plaintiffs waived their right to take jurisdictional discovery by disclaiming it in the Fifth Circuit. Doc. #122 at 1-4.

Second, even if jurisdictional discovery were available here, it would be improper because Aspen's motion does not "raise[] issues of fact." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (discovery into personal jurisdiction); *see also In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012) (same for standing).[8] Even the case that Plaintiffs cite confirms that discovery is proper only "[i]nsofar as the defendant's motion to dismiss raises factual issues." *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981). Here, Aspen raised no fact issues; its motion assumes the truth of Plaintiffs' allegations and does not rest on additional evidence. Because the allegations do not make "even a preliminary showing of jurisdiction," discovery should be denied. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).

Third, Plaintiffs have failed to "articulate a discrete discovery request." *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009). The Fifth Circuit "will not authorize 'a jurisdictional fishing expedition' based on a plaintiff's general averments that more discovery will prove our jurisdiction.'" *Johnson*, 21 F.4th at 326 (citation omitted). Yet that is all that Plaintiffs offer here.

Specifically, Plaintiffs ask for discovery into whether (1) Defendants were in a "conspiracy" and (2) there is "general jurisdiction" because Aspen "has often stepped foot into Louisiana." Opp. 4-5 & n.1. These two topics go only to personal jurisdiction, which the Court need not reach when (as here) there is no standing. And "jurisdictional discovery" would still be

---

[8] Plaintiffs mischaracterize *Kelly* as holding that "an *opportunity* for [jurisdictional] discovery is required" in every case. Opp. 4 (quoting *Kelly*, 213 F.3d at 855). They ignore the court's clarification, quoted above, that discovery is appropriate only when there are "issues of fact," as "'discovery [that] would serve no purpose . . . should not be permitted.'" *Kelly*, 213 F.3d at 855 (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982)).

9

improper because the facts Plaintiffs seek discovery to show would not "specifically establish" jurisdiction. *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 902-03 (5th Cir. 2024). As explained above (at 2-3), a conspiracy cannot support personal jurisdiction over Aspen. And no matter how often Aspen donates money to schools and nonprofits in Louisiana (Opp. 5 n.1), Aspen is not incorporated or headquartered there. It thus cannot be "at home" there—the test for general jurisdiction. *BNSF Ry. v. Tyrrell*, 581 U.S. 402, 413 (2017).

### D.     Venue Is Improper in This District.

Finally, Plaintiffs fail to show that "a substantial part of the events" giving rise to each of their claims against Aspen occurred in this District, as is required for venue. 28 U.S.C. § 1391(b)(2). Plaintiffs contend that they adequately alleged "Aspen's connection with Louisiana" (Opp. 25), but those allegations fail to establish venue for the same reason they fail to establish personal jurisdiction. And Plaintiffs' argument that "the effects Plaintiffs felt" allegedly were in this District (*id.*) is mistaken. The "focus of the" § 1391(b)(2) "inquiry is on the actions or omissions of the defendant, and not where the plaintiff later feels the . . . effects," because "'otherwise venue almost always would be proper at the place of the plaintiff's residence, an option that Congress abolished in the general venue statute [in] 1990.'" *ENTU Auto Servs., Inc. v. PicMyRide.Biz, LLC*, 2015 WL 1638179, at *4 (E.D. La. Apr. 13, 2015) (citation omitted); *see also*, *e.g.*, 14D Richard D. Freer, *Federal Practice and Procedure* § 3806 & n.22 (4th ed. Supp. 2024) (citing cases). In any event, Hoft, who does not reside in Louisiana, could not have felt effects in this District. Thus, at a minimum, venue is improper as to his claims.

## II.     CONCLUSION

Plaintiffs' claims against Aspen should be dismissed under Rules 12(b)(1), (2), and (3).

Dated: September 11, 2024

Respectfully submitted,

By: */s/ Elizabeth Mendell Carmody*
Elizabeth Mendell Carmody, #25792
COOK, YANCEY, KING & GALLOWAY, PLC
333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, LA 71120-2260
Tel: (318) 221-6277
Fax: (318) 227-7850
elizabeth.carmody@cookyancey.com

Andrew J. Pincus (*pro hac vice*)
Archis A. Parasharami (*pro hac vice*)
Kevin Ranlett (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
Tel: (202) 263-3000
Fax: (202) 263-3300
apincus@mayerbrown.com
aparasharami@mayerbrown.com
kranlett@mayerbrown.com

*Attorneys for Defendant Aspen Institute*

11

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 11th day of September, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will provide notice of electronic filing to the attorneys for all parties.

*/s/ Elizabeth Mendell Carmody*
Elizabeth Mendell Carmody