UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **JILL HINES ET AL** | **CASE NO. 3:23-CV-00571** |
| **VERSUS** | **JUDGE DOUGHTY** |
| **ALEX STAMOS ET AL** | **MAG. JUDGE MCCLUSKY** |

## MEMORANDUM ORDER

Pending before the Court are two motions to dismiss. The first motion (R. Doc. 70) was filed by the original defendants, Alex Stamos, Renée DiResta, the Board of Trustees of the Leland Stanford Junior University, the Leland Stanford Junior University, the Stanford Internet Observatory, Kate Starbird, Graphika, Camille François, the Atlantic Council, the Atlantic Counsel's Digital Forensic Research Lab, and Graham Brookie (the "Stanford Defendants" or "Defendants"); and seeks dismissal of this case under "Rules 12(b)(1), (2), (3), and (6) of the Federal Rules of Civil Procedure because the Court lacks personal and subject-matter jurisdiction, venue is improper, and the Complaint fails to state a claim upon which relief may be granted." *See id.* at 1. The second (R. Doc. 104) was filed by the later-added defendant, The Aspen Institute ("Aspen"), and seeks dismissal of this case "for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), lack of personal jurisdiction under Rule 12(b)(2), and improper venue under Rule 12(b)(3)." *See id.* at 1. Both motions are opposed by plaintiffs Jill Hines and Jim Hoft. *See* R. Doc. 85; R. Doc. 120; R. Doc. 121; R. Doc. 130.

After careful consideration of the parties' memoranda, the record, our mandate from the Fifth Circuit, and the applicable law, the first motion is **DENIED WITHOUT PREJUDICE** and may be refiled if appropriate following jurisdictional discovery.  The second motion is similarly **DENIED WITHOUT PREJUDICE** and may be refiled if appropriate following jurisdictional discovery.

I.   BACKGROUND

This case stems from Defendants' alleged participation in censoring Plaintiffs' speech on social media.[1]  Defendants are "nonprofits, academic institutions, and researchers alleged to have been involved in examining the issue of the viral spread of disinformation on social-media and the resulting harms to society."[2]  Plaintiffs are social media users, each with significant followings, who allege that the acts of Defendants caused Plaintiffs' disfavored viewpoints to be censored—namely their speech concerning COVID-19 and elections.[3]  As a result of this alleged past and ongoing censorship, Plaintiffs filed this putative class action lawsuit on behalf of themselves and "others similarly situated," against Defendants.[4]

Defendants filed motions seeking a flurry of relief including compelled arbitration, dismissal of class claims, staying of the proceedings, transfer of venue, and dismissal of the case under Rules 12(b)(1), (2), (3), and (6) of the Federal Rules of Civil Procedure.[5]  As a matter of primacy, we decided the issue of arbitrability first,

---

[1] R. Doc. 77 at 2–5.
[2] R. Doc. 104-1 at 7.
[3] R. Doc. 77 at 4–5.
[4] *Id.* at 5.
[5] *See* R. Doc. 69; R. Doc. 70.

which also (at least then) dispensed of the issue of venue.[6]  In doing so, we held that Defendants could not avail themselves of the arbitration clauses contained within the Facebook and Twitter terms of service agreements, nor to a California venue flowing therefrom.[7]  Defendants appealed our ruling, and the Fifth Circuit reversed—holding that we should have considered jurisdictional challenges before arbitrability.[8]  Now the case is before us on remand, to "determine whether [we] [have] personal jurisdiction and subject-matter jurisdiction over Defendants."[9]

## II.   LAW AND ANALYSIS

### A. The Stanford Defendants

The Stanford Defendants' Motion is wide-ranging; however, we only consider their arguments related to jurisdiction—as instructed by the Fifth Circuit.  *See Hines v. Stamos*, 111 F.4th 551, 566-67 (5th Cir. 2024).  Furthermore, personal jurisdiction and standing are the points upon which Defendants focused their briefing following the Fifth Circuit's rule.  *See* R. Doc. 116 at 2.  Because Plaintiffs have made the requisite showing for entitlement to jurisdictional discovery as to both personal jurisdiction and standing, the Stanford Defendants' Motion is denied without prejudice for the reasons set forth below.

*1. Personal Jurisdiction*

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a party to move to dismiss for lack of personal jurisdiction. "Where a defendant challenges personal

---

[6] *See* R. Doc. 88.
[7] *Id*. at 8.
[8] *Hines v. Stamos*, 111 F.4th 551 (5th Cir. 2024) (in the record at R. Doc. 112)
[9] *Id.* at 566–67.

jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).

When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. *Johnston v. Multidata Systems Intern. Corp.,* 523 F.3d 602, 609 (5th Cir. 2008). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Id*. (quoting *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citations omitted) ("Proof by preponderance of the evidence is not required.")). However, in assessing whether the plaintiff has presented a prima facie case of personal jurisdiction, the court "will not 'credit conclusory allegations, even if uncontroverted.'" *Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed.Appx. 628, 631 (5th Cir. 2015) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)). The court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)); *cf.* Fed. R. Civ. P. 12(d) (listing only motions under Rule 12(b)(6) and 12(c) as requiring conversion to summary judgment if evaluated on matters outside the pleadings).

4

The Stanford Defendants contend that they do not have the requisite "minimum contacts" with Louisiana and, thus, that this forum has no personal jurisdiction over them. *See* R. Doc. 116 at 8–19. If true, this would warrant dismissal. "Due process requires that the defendant have 'minimum contacts' with the forum state (i.e., that the defendant has purposely availed himself of the privilege of conducting activities within the forum state) and that exercising jurisdiction is consistent with 'traditional notions of fair play and substantial justice.'" *Sangha v. Navig8 Shipmanagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). Plaintiffs counter that they should be permitted to conduct jurisdictional discovery to determine whether Defendants sufficiently interacted with Louisiana and its residents. R. Doc. 120 at 7–10.

We agree with Plaintiffs.[10] In the Rule 12(b)(2) context, a Court has broad discretion to permit a party to conduct jurisdictional discovery. *See Fiduciary Network, LLC v. Buehler*, No. 3:15-CV-0808, 2015 WL 2165953, at *4 (N.D. Tex. May 8, 2015) (citing *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014)); *see also, Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982) ("[W]e will not hesitate to reverse a dismissal for lack of personal jurisdiction, on the ground that the plaintiff was improperly denied discovery..." nevertheless "[t]he decision not to permit depositions on a motion to dismiss for lack of personal jurisdiction is specifically one for the trial court's discretion."). To earn jurisdictional discovery, the movant must

---

[10] We do not agree with their alternative argument that they have established personal jurisdiction, however. *See* R. Doc. 120 at 10–19.

5

first make "a preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). A preliminary showing does not require proof that personal jurisdiction exists, but "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Id.* (internal citation omitted). In other words, Plaintiffs must state what facts discovery is expected to uncover and how those facts would support personal jurisdiction. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000). "'If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts ... the plaintiff's right to conduct jurisdictional discovery should be sustained.'" *Fielding*, 415 F.3d at 429 (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).

We find that Plaintiffs have presented adequate factual allegations to support limited jurisdictional discovery in this matter. *See Fielding*, 415 F.3d at 429. Indeed, Plaintiffs have alleged—to the point of "possible existence"—that the Stanford Defendants effectuated censorship in Louisiana by "assigning analyst[s] specifically to Louisiana, determining whether speech originated in Louisiana, tracking the speech's spread from Louisiana, and communicating with state officials in Louisiana about supposed disinformation." *See* R. Doc. 77 at ¶ 378; *see also id.* at ¶ 376–84. And as such, Plaintiffs have adequately alleged that the Stanford Defendants' online activities may support personal jurisdiction. *See Hawbecker v. Hall*, 88 F.Supp.3d 723, 727–30 (W.D.Tex. 2015). Limited jurisdictional discovery is thus necessary to show to what extent Defendants' online activities were "directed" at the forum state.

6

*Id.* And while perhaps ultimately turning upon a legal question, the instant inquiry would be better served with a deeper understanding of Defendants' contacts with Louisiana. *See* 5B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & A. BENJAMIN SPENCER, FEDERAL PRACTICE AND PROCEDURE § 1351 (4th ed. 2024) ("Deferring the ruling [on the motion to dismiss] will enable the parties to employ discovery on the jurisdictional issue and might lead to a more accurate judgment on the subject"). Not to mention the deference with which we must treat Plaintiffs' jurisdictional allegations at the pleadings stage. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) ("Although the burden rests with the plaintiff to establish the core elements of personal jurisdiction, the plaintiff can satisfy that burden at the pleading stage by simply presenting a prima facie case for jurisdiction."); *see also, Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001)) (In this context, "[w]e accept the plaintiff's uncontroverted, nonconclusional factual allegations as true and resolve all controverted allegations in the plaintiff's favor."). Contrary to Defendants' assertions, jurisdictional discovery here is not "outside the scope of remand." *See* R. Doc. 122 at 3. Instead, the Fifth Circuit saw fit to return this issue to our discretion "given the interlocutory posture of this appeal, and the *fact-intensive nature* of personal jurisdiction *inquiries.*" *Hines v. Stamos*, 111 F.4th 551, 566-67 (5th Cir. 2024). With that resolved, and in the interests of judicial economy and accuracy, the Stanford Defendants' Motion is **DENIED WITHOUT PREJUDICE** as to personal jurisdiction.

*2. Standing*

The second part of the Stanford Defendants' jurisdictional argument focuses on alleged defects in Plaintiffs' standing. R. Doc. 116 at 19–30. Defendants mainly cite the Supreme Court's ruling in *Murthy v. Missouri,* 144 S. Ct. 1972 (2024), for the proposition that Plaintiffs here lack standing because Plaintiffs' alleged injuries are not adequately traceable to the Stanford Defendants. In doing so, Defendants challenge Plaintiffs' ability to show that a "particular defendant pressured a particular platform to censor a particular topic before that platform suppressed a particular plaintiff's speech on that topic." *Murthy*, 144 S. Ct. at 1988. Instead, Defendants reiterate their contention that it was the social media companies' independent idea to censor Plaintiffs' speech—if at all. R. Doc. 116 at 29–30. Plaintiffs counter that *Murthy* demands less of them than Defendants assert, and point out the difference in posture that *Murthy* was decided in. R. Doc. 120 at 20–30. Plaintiffs again demand jurisdictional discovery, this time of standing. *Id.*

Plaintiffs are again correct. It appears that Defendants seek to have this baby thrown out with the proverbial *Missouri/Kennedy* bathwater, by both overstating the effect of the *Murthy* decision and understating the difference in Plaintiffs' burden here. First, Defendants err in their appraisal of what *Murthy* said. *Murthy* did not say that those plaintiffs did not have standing to maintain suit. Instead, *Murthy* held that those plaintiffs failed to show standing sufficient for a preliminary injunction. *See Murthy*, 144 S. Ct. at 1985, 1990. There is a difference. *See Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564, 567 n.1 (5th Cir. 2020) (citation omitted); *see also*,

8

*Bennett v. Spear*, 520 U.S. 154, 170–171 (1997); *Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 658 n.16 (5th Cir. 2019). As the instant case does not rely on the higher burden that *Murthy* demanded, Defendants cannot summarily demand a similar outcome. Second, neither *Missouri v. Biden* nor *Kennedy v. Biden* have been dismissed, as Defendants argue should be done here. *Missouri v. Biden*, 114 F.4th 406 (5th Cir. 2024); *Kennedy v. Biden*, No. 24-30252, 2024 WL 4664015 (5th Cir. Nov. 4, 2024). In fact, in November of this year, this Court ordered jurisdictional discovery on standing in the *Missouri* case. *See Missouri v. Biden,* No. 3:22-CV-1213, R. Doc. 404 (W.D. La. Nov. 8, 2024).

We find here that Plaintiffs have "demonstrated the necessity of [jurisdictional] discovery." *Mid City Tower, LLC v. Certain Underwriter's at Lloyd's London*, No. CV 21-440-SDD-EWD, 2023 WL 7064162 at *3 (M.D. La. Oct. 26, 2023) (citing *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013). Just as with personal jurisdiction, "District courts may permit jurisdictional discovery to determine whether the court has subject matter jurisdiction." *Id.* But plaintiffs are "not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Id.* And such jurisdictional discovery is improper "… when the proponent of such discovery only supports the request by conjecture, speculation, or suggestion." *See id.* (citation omitted). Such is not the case here.

Instead, we find that Plaintiffs have provided sufficient allegations to put beyond mere conjecture or suggestion that Defendants, through their participation in

9

the Election Integrity Project and Virality Project, caused Plaintiffs to be censored on social media platforms. *See* R. Doc. 77 at ¶¶ 1–2, 5, 7, 43, 67–73, 82–155, 179–205, 210, 235, 255, 257–70, 278, 290, 316–19, 374, 394, 397, 399, 402, 405–07, 412, 416–19. Specifically, Plaintiffs allege that Defendants were active participants, if not architects, of a vast censorship scheme, and—in collaboration with government officials—actively monitored, targeted, and ultimately induced social media platforms to censor Plaintiffs' speech (among many others). *See id.* at ¶¶ 2, 82–140, 147–55, 317–19, 397, 406. As jurisdictional discovery on the finer points of Plaintiffs' allegations can aid in establishing whether Defendants' conduct is traceable to Plaintiffs' harms, and thus, is "likely to produce the facts needed to withstand a Rule 12(b)(1) motion," such discovery warranted. *See Mid City Tower*, 2023 WL 7064162 at *3; *Obama v. Klayman*, 800 F.3d 559, 564, 568 (D.C. Cir. 2015) ("It remains possible that […] plaintiffs will be able to collect evidence that would establish standing . . . Given the possibility that plaintiffs' efforts along these lines may be fruitful, I join Judge Brown in remanding to the district court for it to decide whether limited discovery to explore jurisdictional facts is appropriate.").

Nevertheless, given our charge from the Fifth Circuit, we "circumscribe the scope of discovery … to only the factual questions necessary to determine [our] jurisdiction." *See Schuchardt v. President of the United States*, 839 F.3d 336, 354 (3d Cir. 2016). The remainder of the Stanford Defendants' Motion is thus **DENIED WITHOUT PREJUDICE** to refiling.

10

### B. The Aspen Institute

For substantially the same reasons that we deny dismissal—and order jurisdictional discovery in the alternative—above, we do so too with Aspen. *See ante* at 3–10. Plaintiffs have alleged—to the point of "possible existence"—that Aspen effectuated censorship in Louisiana, and that personal jurisdiction may exist. *See ante* at 6; *see also* R. Doc. 77 at ¶¶ 38–44; R. Doc. 121 at 15 ("… Aspen, as a direct participant in its censorship operations [] affected Louisiana residents' speech as well as the speech that Louisiana residents could receive, and so affected Louisiana."). So limited jurisdictional discovery is thus necessary to show to what extent Aspen's online activities were "directed" at the forum state. *See Hawbecker v. Hall*, 88 F.Supp.3d 723, 727–30 (W.D.Tex. 2015). As for standing, we similarly find that Plaintiffs have provided sufficient allegations to put beyond mere conjecture or suggestion that Plaintiffs' alleged injuries are fairly traceable to the acts of Aspen. Specifically, Aspen is alleged to have a "coordinating role in the EIP/VP's censorship activities challenged herein," or even more personally, "strategizing … to silence Plaintiff Jim Hoft[]," and Plaintiffs attach emails supportive of this alleged censorship coordination to their Complaint. *See* R. Doc. 77 at ¶¶ 39–44, 377–388; R. Doc. 77-2 at 20–21, 59–62, 188–90. Accordingly, Plaintiffs have "demonstrated the necessity of [jurisdictional] discovery," on the issue of standing as well. *Mid City Tower, LLC*, 2023 WL 7064162 at *3 (citing *Davila* 713 F.3d at 264). Again, because discovery would better inform our analysis of jurisdiction here, Aspen's Motion is **DENIED WITHOUT PREJUDICE**.

11

### III. DISCOVERY SCHEDULE

No specific discovery schedule will be set at this time, but all jurisdictional discovery must be approved by the Court. Plaintiffs shall file proposed discovery to be taken and a proposed schedule within fourteen (14) days of the docketing of this order. Defendants shall have fourteen (14) days to respond and Plaintiffs seven (7) days to reply.

### IV. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Plaintiffs be permitted to take jurisdictional discovery on personal jurisdiction and standing for their claims against all Defendants.

**IT IS FURTHER ORDERED** that the Stanford Defendants' Motion to Dismiss (R. Doc. 70) is **DENIED WITHOUT PREJUDICE** to refiling following jurisdictional discovery.

**IT IS FURTHER ORDERED** that Aspen's Motion to Dismiss (R. Doc. 104) is **DENIED WITHOUT PREJUDICE** to refiling following jurisdictional discovery.

**MONROE, LOUISIANA**, this 18th day of December, 2024.

                                                                        _____
                                                                                     Terry A. Doughty
                                                                           United States District Judge