# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

JILL HINES, ET AL.,

            *Plaintiffs*,

    *v.*

ALEX STAMOS, ET AL.,

            *Defendants*.

Case No. 3:23-cv-571

Chief Judge Terry A. Doughty

Magistrate Judge Kayla D. McClusky

# MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED JOINT MOTION TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................ 1

BACKGROUND .............................................................................................................. 2

ARGUMENT .................................................................................................................... 4

I.    The Court Lacks Personal Jurisdiction ................................................................. 4

    A.  Plaintiffs Did Not Allege Minimum Contacts with Louisiana, and Discovery Confirmed the Lack of Such Contacts .......................................................... 4

    B.  Plaintiffs' Group Allegations Must Be Disregarded ...................................... 7

    C.  The Group Allegations Are Insufficient to Establish Personal Jurisdiction ................ 8

        1.    The Court Lacks Personal Jurisdiction Over Hines' Claims ..................... 8

        2.    The Court Lacks Personal Jurisdiction Over Hoft's Claims ..................... 12

II.   Plaintiffs Lack Standing ...................................................................................... 15

    A.  Under *Murthy*, Plaintiffs Were Required to Offer Facts Showing that a Particular Defendant Coerced a Platform to Censor Particular Content in a Manner Inconsistent with the Platform's Misinformation Policies ..................... 15

    B.  Plaintiffs Lack Standing Under *Murthy* ..................................................... 17

        1.    Plaintiff Hines Lacks Standing Because EIP and VP Never Sent Her Content to Any Social Media Company ................................................... 17

        2.    Plaintiff Hoft Lacks Standing Because His Alleged Injuries Stem from Discretionary Actions by Third-Party Social Media Platforms ....... 19

        3.    The Amended Complaint Does Not Contain Any Standing Allegations Relating to Any Particular Defendant ................................... 23

    C.  Plaintiffs Lack Standing to Seek Prospective Relief ................................... 25

CONCLUSION ................................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Admar Int'l, Inc. v. Eastrock, L.L.C.*,
  18 F.4th 783 (5th Cir. 2021) ...................................................................12, 14, 15

*Armstrong v. Ashley*,
  60 F.4th 262 (5th Cir. 2023) ................................................................................7

*ASARCO Inc. v. Kadish*,
  490 U.S. 605 (1989)............................................................................................22

*Bar Grp., LLC v. Bus. Intel. Advisors, Inc.*,
  215 F. Supp. 3d 524 (S.D. Tex. 2017) ................................................................8

*Bennett v. Spear*,
  520 U.S. 154 (1997)..................................................................15, 16, 17, 19

*Boyd v. Cleara, L.L.C.*,
  2025 WL 2082675 (5th Cir. July 24, 2025)......................................................13

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
  582 U.S. 255 (2017)....................................................................................5, 7, 14

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)..............................................................................................5

*Carmona v. Leo Ship Mgmt., Inc.*,
  924 F.3d 190 (5th Cir. 2019) ......................................................................5, 15

*Chow v. United States*,
  No. 20-30503, 2021 WL 3438365 (5th Cir. Aug. 5, 2021) ................................8

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)............................................................................................25

*Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*,
  24 F.4th 491 (5th Cir. 2022) ................................................................................6

*Daves v. Dallas County, Texas*,
  22 F.4th 522 (5th Cir. 2022) ..............................................................................23

*Defense Distributed v. Grewal*,
  971 F.3d 485 (5th Cir. 2020) ....................................................................11, 12, 14

*Delta Brands Inc. v. Danieli Corp.*,
    99 F. App'x 1 (5th Cir. 2004) ..................................................................8

*Eagle Metal Prods., LLC v. Keymark Enter., LLC*,
    651 F. Supp. 2d 577 (N.D. Tex. 2009) ...................................................7

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021)......................................................................5, 14

*Guidry v. U.S. Tobacco Co.*,
    188 F.3d 619 (5th Cir. 1999) ...................................................................8

*Hines v. Stamos*,
    111 F.4th 551 (5th Cir. 2024) ..................................................................3

*James v. Hegar*,
    86 F.4th 1076 (5th Cir. 2023) ................................................................25

*Johnson v. TheHuffingtonPost.com, Inc.*,
    21 F.4th 314 (5th Cir. 2021) ..................................................................12

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) .................................................................................7

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)................................................................................15

*McRorey v. Garland*,
    99 F.4th 831 (5th Cir. 2024) ..................................................................23

*Missouri v. Biden*,
    114 F.4th 406 (5th Cir. 2024) ................................................................18

*Murthy v. Missouri*,
    603 U.S. 43 (2024)........................................................................ *passim*

*Pearson v. Shriners Hospitals for Children, Inc.*,
    133 F.4th 433 (5th Cir. 2025) ..................................................................7

*Reule v. Jackson*,
    114 F.4th 360 (5th Cir. 2024) ................................................................23

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) ..................................................................12

*Rush v. Savchuk*,
    444 U.S. 320 (1980)..................................................................................7

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
  882 F.3d 96 (5th Cir. 2018) ............................................................... *passim*

*Seiferth v. Helicopteros Atuneros, Inc.*,
  472 F.3d 266 (5th Cir. 2006) ..................................................................5

*Simon v. E. Ky. Welfare Rts. Org.*,
  426 U.S. 26 (1976)...........................................................................15, 22

*Stroman Realty, Inc. v. Wercinski*,
  513 F.3d 476 (5th Cir. 2008) ...................................................................6

*Turaani v. Wray*,
  988 F.3d 313 (6th Cir. 2021) .............................................................22, 23

*Walden v. Fiore*,
  571 U.S. 277 (2014)..................................................................5, 6, 10, 15

## INTRODUCTION

Months of jurisdictional discovery have yielded nothing supporting jurisdiction in this case.  Contrary to Plaintiffs' predictions, jurisdictional discovery did not reveal any "direct communications with Louisiana residents and Louisiana state officials."  ECF 120 at 9.  It did not show that Defendants ever "targeted" Louisiana, entered Louisiana, or communicated with Louisiana officials or anyone in Louisiana about Plaintiffs' social media posts.  Reviewing social media content posted by Louisianans—along with content posted by Californians, Nevadans, Iowans, and others from across the country—is not a jurisdictional contact.  What's more, Plaintiff Jim Hoft is not even a Louisianan; he lives and posts in Missouri, and his claims have nothing to do with Louisiana.  The amended complaint's allegations provided no basis for the exercise of personal jurisdiction, and discovery has provided none either.

Nor has discovery offered any support for Plaintiffs' assertion of Article III standing. Plaintiffs theorize that Defendants conspired with the federal government to coerce social media companies to remove or impede their posts, because they must show such coercion to establish traceability under the Supreme Court's decision in *Murthy v. Missouri*.  But the evidence does not show that Defendants *ever* flagged any of Jill Hines' posts to any social media platform—much less coerced action against her posts.  That precludes standing.  As for Jim Hoft, there is no evidence to suggest that any adverse action by a social media platform against any post was the result of any "coercive" effort by the Defendants, and certainly not the result of one (as his claim requires) undertaken in conspiracy with the government.  There is nothing more than Plaintiffs' conclusory allegations—which cannot suffice—to suggest that multi-billion-dollar social media platforms like Facebook or Twitter were or could be "coerced" by any Defendant.  Indeed, jurisdictional discovery confirms that the platforms exercised independent discretion in responding, most often declining to take any action on posts flagged by participants in the Election Integrity

Partnership. As *Murthy* recognized, the platforms' exercise of independent discretion breaks the causal chain necessary for Article III standing and forecloses this suit.

Defendants are private, individual researchers and their affiliated non-governmental institutions who engaged in two research projects five years ago. Having made bold claims about what jurisdictional discovery would reveal, Plaintiffs have come up empty-handed. The evidence adduced during discovery shows that EIP participants exercised their First Amendment rights to flag content they viewed as misinformation to social media companies. But it also shows that they never did so for Jill Hines, that they never coerced anyone, and that they never directed their activities at Louisiana. Nor is there any risk that they will in the future: EIP and the Virality Project (VP) no longer exist, and most of the individually named Defendants have left their former positions. This case should be dismissed for lack of personal jurisdiction and standing.

## BACKGROUND

In May 2023, Plaintiffs Jill Hines and Jim Hoft filed this lawsuit against (1) Stanford University and its then-employees Alex Stamos and Renée DiResta; (2) University of Washington associate professor Kate Starbird (but not the University of Washington); (3) Graphika and its former employee, Camille François; and (4) the Atlantic Council and its employee Graham Brookie. The complaint was based on Defendants' participation in two cooperative research projects—the Election Integrity Partnership (EIP), formed in 2020 to address election-related misinformation, and the Virality Project (VP), formed in 2021 to address COVID-19 misinformation. EIP and VP are not Defendants.

Plaintiffs allege that EIP and VP worked with the federal government to coerce Facebook and Twitter to censor their social media posts. Am. Compl. ¶ 2; ECF 155 at 9 (Plaintiffs acknowledging that their "legal theories rest largely on contacts between Defendants and third parties (*i.e.*, with social media companies and government actors)"). Plaintiff Hoft, a Missouri resident who

runs the Gateway Pundit website, brought claims relating to EIP; Plaintiff Hines, who posted about COVID-19 issues, brought claims relating to VP.  EIP issued a public report concerning its work related to the 2020 elections on July 1, 2021, and ceased all operations after the 2022 elections; VP ceased work monitoring social media posts in August 2021 and issued a public report on its work in 2022.  Am. Compl. ¶¶ 202, 208, 281; Decl. of Alex Stamos ("Stamos Decl.") ¶¶ 3, 5-6.

Defendants moved to dismiss on jurisdictional and merits grounds and also moved to compel arbitration.  ECF 69, 70.  Defendants argued, among other things, that the Court lacked personal jurisdiction because Plaintiffs' allegations demonstrated that no Defendant took any action in Louisiana.  Defendants also argued that Plaintiffs failed to adequately allege Article III standing because their claims depended on the independent actions of third-party social media platforms.  This Court denied the arbitration motion, but did not address personal jurisdiction or standing.  ECF 88.

On appeal, the Fifth Circuit vacated the denial of the arbitration motion, concluding that the Court was required to address jurisdiction before arbitration.  The Fifth Circuit remanded "for the limited purpose of allowing the district court to determine whether it has personal jurisdiction and subject-matter jurisdiction over Defendants."  *Hines v. Stamos*, 111 F.4th 551, 566 (5th Cir. 2024).  The Fifth Circuit stated that, if "the court determines that it lacks either personal jurisdiction or subject-matter jurisdiction (in light of *Murthy*), it must dismiss the case.  If the district court concludes that it has both personal and subject-matter jurisdiction, the case will be returned to this panel" to address personal jurisdiction, standing, and arbitration.  *Id.* at 566-67.

On remand, Plaintiffs sought jurisdictional discovery.  Plaintiffs represented that discovery "will likely serve to uncover … intentionally concealed evidence" about government "launder[ing] censorship requests through the EIP/VP" and "reveal new facets of Defendants' role in censoring speech in cooperation with governmental actors."  ECF 120 at 8.  They assured the Court that discovery would identify "Defendants' individual and collective forum-specific contacts, such as

their direct communications with Louisiana residents and Louisiana state officials, and other evidence of intent to censor Louisiana-specific speech." *Id.* at 9.

Although the Court permitted jurisdictional discovery, Plaintiffs found none of the promised evidence. Defendants, and particularly Stanford, spent significant time and resources to identify any instances in which the EIP or the VP sent Plaintiffs' social media posts to any social media platform. The discovery confirms what Defendants have contended all along: not one of the Defendants ever had any jurisdictionally sufficient contacts with Louisiana, directed any conduct or communications at Louisiana, or flagged any social media posts involving Jill Hines to any social media platform. And discovery offered no evidence supporting Plaintiffs' allegations that EIP worked with the federal government to "coerce" any platform into taking any action.

Defendants now renew their motion to dismiss for lack of jurisdiction.[1]

## ARGUMENT

### I.    The Court Lacks Personal Jurisdiction

Plaintiffs' claims must be dismissed for lack of personal jurisdiction. None of the Defendants are Louisiana-based. None engaged in any Louisiana-directed activity, much less activity that is connected with either Plaintiff's claims. Plaintiffs' prediction that discovery would reveal "direct communications with Louisiana residents and Louisiana state officials" has proven false. ECF 120 at 9. Discovery only confirms that this case should not have been brought in this forum.

### A.    Plaintiffs Did Not Allege Minimum Contacts with Louisiana, and Discovery Confirmed the Lack of Such Contacts

To establish personal jurisdiction, Plaintiffs must offer nonconclusory facts establishing that each Defendant "has purposely availed himself of the privilege of conducting activities within

---

[1] Defendants also timely filed a Rule 12(b)(6) motion, though the Fifth Circuit has directed that this Court only address personal jurisdiction and standing on remand. If this case proceeds, Defendants intend to file a renewed Rule 12(b)(6) motion aimed at the amended complaint.

the forum state," *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018), and that each Plaintiff's claims "'arise out of or relate to the defendant's contacts' with the forum," *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.* ("*BMS*"), 582 U.S. 255, 262 (2017)).[2]  Exercising personal jurisdiction must also be "consistent with 'traditional notions of fair play and substantial justice.'" *Sangha*, 882 F.3d at 101.

These requirements ensure that no defendant will be subjected to personal jurisdiction "solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193-94 (5th Cir. 2019) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  They also ensure "that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Ford*, 592 U.S. at 360 (quoting *BMS*, 582 U.S. at 263).

Plaintiffs bear the burden of offering nonconclusory facts establishing personal jurisdiction over *each defendant* as to *each plaintiff and claim*.  *BMS*, 582 U.S. at 264-65; *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).  Critically, the plaintiff cannot supply "the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290.  "[T]he 'defendant *himself*'" must make "contact with the forum," *Carmona*, 924 F.3d at 194 (quoting *Walden*, 571 U.S. at 284); that contact must be "deliberate," *id.*; and it must relate to "[an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation," *Ford*, 592 U.S. at 359-60.

---

[2] Plaintiffs do not assert general personal jurisdiction over any Defendant.

Plaintiffs do not allege facts plausibly suggesting that any Defendant directed any conduct at Louisiana. They do not allege that any Defendant ever "traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to [Louisiana]." *Walden*, 571 U.S. at 289. They do not allege that any Defendant ever "physical[ly] ent[ered]" Louisiana, whether "in person or through an agent, goods, mail, or some other means," *id.* at 285—and discovery reflects that nobody worked for EIP and VP while physically in Louisiana. Decl. of Elisabeth S. Theodore ("Theodore Decl."), Ex. A at 15. They do not allege that any Defendant obtained any "benefit" in Louisiana. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 485 (5th Cir. 2008). And they do not identify a single communication between any Defendant and anyone in the State. *See, e.g.*, *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 498-99 (5th Cir. 2022). Instead, the amended complaint concerns conduct that occurred in California, Washington, New York, and the District of Columbia, Am. Compl. ¶¶ 16, 21-22, 30—*i.e.*, alleged actions taken by EIP's and VP's member organizations (and non-members) to track and flag misinformation, alleged communications with social media platforms and government officials, and decisions by social media platforms to flag or take down posts or suspend accounts.

Jurisdictional discovery has likewise revealed no evidence of any purposeful contacts with Louisiana relating to Plaintiffs' claims: no physical presence in Louisiana and no communications with anyone in Louisiana, including government officials. It is true that EIP (but not VP) assigned a student to conduct research on election laws in "Georgia/Louisiana"; EIP assigned students to research every state and the District of Columbia. Theodore Decl., Ex. B at 4-5. But this is nothing new: Plaintiffs' complaint made the same allegation, based on a statement to similar effect in EIP's report. Am. Compl. ¶ 377. As discussed below, reading online content about Louisiana is not a jurisdictional contact. *Infra* at p.14. Even if it were, it would have no connection to Plaintiffs' claims.

### B.    Plaintiffs' Group Allegations Must Be Disregarded

Rather than alleging actual facts suggesting that any particular Defendant had any contact with Louisiana, the amended complaint relies on conclusory group allegations about activities purportedly undertaken by "Defendants." For example, Plaintiffs allege that "Defendants deliberately monitor and track speech on social media by Louisiana residents," and that Defendants "assign[ed] analyst[s] specifically to Louisiana, … track[ed] [] speech's spread from Louisiana, and communicat[ed] with state officials in Louisiana about supposed disinformation." Am. Compl. ¶¶ 377-78 (second alteration in original); *see also id.* ¶¶ 375-89 (additional allegations about "Defendants").

Binding precedent requires the Court to disregard these allegations (as does the lack of any support from jurisdictional discovery). There are nine separate Defendants, and Plaintiffs must plead nonconclusory facts showing that each, *individually*, purposefully availed itself of the privilege of doing business in Louisiana. "[P]laintiffs may not aggregate defendants' forum contacts and may not establish personal jurisdiction without specifying who did what." *Pearson v. Shriners Hospitals for Children, Inc.*, 133 F.4th 433, 442 (5th Cir. 2025). "Each defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *see BMS*, 582 U.S. at 268; *Armstrong v. Ashley*, 60 F.4th 262, 274-75 (5th Cir. 2023). It is "plainly unconstitutional" for a court to "consider[] 'defending parties' together and aggregat[e] their forum contacts." *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980). Generic allegations about the actions of EIP or VP, which are not defendants and were not even legal entities under any state law, fail this test.

Plaintiffs' allegation on "information and belief" that Defendants "acted in concert," Am. Compl. ¶ 389, does not save their improper group pleading. The "Fifth Circuit [has] rejected" the theory that "an alleged conspiracy … allow[s] the court to impute each defendant's jurisdictional contacts to the other defendants." *Eagle Metal Prods., LLC v. Keymark Enter., LLC*, 651 F.

Supp. 2d 577, 593 (N.D. Tex. 2009) (citing *Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 5 (5th Cir. 2004)). Courts must evaluate "whether the plaintiffs ha[ve] made a prima facie case of specific personal jurisdiction" as to "each particular defendant," "individually and not as part of a conspiracy." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999); *see also Chow v. United States*, No. 20-30503, 2021 WL 3438365, at *2 (5th Cir. Aug. 5, 2021); *Bar Grp., LLC v. Bus. Intel. Advisors, Inc.*, 215 F. Supp. 3d 524, 539 (S.D. Tex. 2017). In any event, jurisdictional discovery has washed away Plaintiffs' ability to hide behind "information and belief."

There is not a single allegation in the amended complaint—nor any evidence from discovery—that identifies any Louisiana contact by any specific Defendant. For that reason alone, Plaintiffs fail to allege and cannot show personal jurisdiction over any Defendant. This is true for all Defendants but particularly for the five human being defendants. There is no allegation or evidence that Alex Stamos, Renée DiResta, Kate Starbird, Graham Brookie, or Camille François had anything to do with Louisiana, and due process protects them from being forced to litigate here.

## C. The Group Allegations Are Insufficient to Establish Personal Jurisdiction

Even if allegations about what "Defendants" or "EIP" or "VP" did could be attributed to any individual Defendant (they cannot), the amended complaint still would fail to allege personal jurisdiction, and jurisdictional discovery confirms the absence of personal jurisdiction.

### 1. The Court Lacks Personal Jurisdiction Over Hines' Claims

Hines alleges that she resides in Louisiana, runs two medical freedom groups through which she engages in speech about COVID-19, and operates Facebook groups with "followers" in Louisiana. Hines alleges that VP "tracks and flags 'medical freedom' groups" generally and "directly interferes with" these groups' efforts to protest COVID-19 prevention measures "by pushing [social media] platforms to censor them." Am. Compl. ¶ 374. She also alleges that she experienced "censorship" and was "restricted" on Facebook for COVID-19 related speech on three

occasions, in January 2022, May 2022, and April 2023. Am. Compl. ¶¶ 394, 397. These allegations are insufficient as a matter of law to establish personal jurisdiction over Hines' claims, and in any event discovery has now confirmed the absence of jurisdiction here.

Discovery has revealed that no one at VP (or EIP) ever flagged any posts by Hines or her groups to any social media platform. Theodore Decl., Ex. A at 6-7, 10 (RFP responses). Hines did not even allege otherwise in the amended complaint. *Cf.* Am. Compl. ¶ 362 (alleging that VP targeted health or medical freedom groups "like" hers). Thus even if VP had any qualifying Louisiana contacts, Hines' alleged injuries could not possibly arise out of such contacts. As the Judiciary Committee made public years ago, there is one EIP ticket that mentions Hines' Facebook groups because those groups were among a list of 231 groups sent to EIP by an outside, non-Louisiana, non-governmental organization, but EIP concluded that the content was out of scope, and did not send it to any social media companies. Theodore Decl., Ex. C (EIP-78); *see also* Theodore Decl., Ex. A at 6-7; Theodore Decl., Ex. D at Stanford_Hines_00000248. Indeed, Hines does not allege that EIP caused her any injury, because EIP was not focused on COVID or health issues. These facts foreclose personal jurisdiction as to Hines.

In any event, while discovery revealed no communications with any social media company about Hines' posts and Hines alleges none, a communication with an out-of-state social media company would not be a purposeful contact with Louisiana anyway. The complaint offers conclusory allegations about "targeting Louisiana," but alleges no communications with Louisiana, and discovery revealed none. The VP report does not mention Louisiana. Compl., Ex. 10.[3]

Attempting to rest personal jurisdiction on the theory that VP's non-Louisiana actions had an *effect* in Louisiana—that VP contacted a non-Louisiana social media company, the company

---

[3] The amended complaint incorporates all exhibits to the initial complaint. Am. Compl. ¶ 28 n.1.

moderated Hines' posts, and that affected Hines in Louisiana—would fail as a matter of law even if it had happened (though it didn't). The Supreme Court's *Walden* decision and the Fifth Circuit's *Sangha* decision foreclose any argument that personal jurisdiction can be based on third parties' (or Hines' own) contacts with Louisiana.

In *Walden*, a Georgia law enforcement officer seized cash from two Nevadans passing through Georgia and refused to return it to them for a prolonged period, including after they returned to Nevada. 571 U.S. at 279-80. The officer "knew his allegedly tortious conduct in Georgia would delay the return of funds to plaintiffs with connections to Nevada." *Id.* at 279. Nonetheless, the officer lacked minimal contacts with Nevada because "no part of [his] course of conduct occurred in Nevada." *Id.* at 288. He "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 289. And "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 290. That holding disposes of Hines' claim because she alleges, at *most*, injury suffered in Louisiana from conduct occurring entirely outside the State.

*Sangha* confirms that conclusion. *Sangha* held that communications sent by an out-of-state defendant to an out-of-state third party cannot give rise to personal jurisdiction—even where those communications concern the plaintiff's work in the forum or interfere with a contract the plaintiff entered into in the forum. The plaintiff in *Sangha* filed suit in Texas against his former employer, citing (1) an employment contract the plaintiff and defendant "allegedly confected in Houston"; (2) the defendant's out-of-state "email communications [that] were targeted at"—and sought to interfere with—"a contract formed in Texas"; and (3) the fact "that the [defendant's] emails concerned [the plaintiff's] work that was to be performed in Texas." 882 F.3d at 103. Those facts were "legally insufficient to support a finding of specific jurisdiction," even though the defendant's emails concerned plaintiff and his work in Texas and "affect[ed] [him] while he was at the Port of Houston." *Id.*

That the plaintiff felt the "effects" of the conduct in Texas was irrelevant, the Fifth Circuit explained, because "[t]he proper question is not whether [the plaintiff] experienced an injury or effect in a particular location, but whether [the defendant's] conduct connects it to the forum in a meaningful way." *Id.* at 103-04. And the plaintiff's "presence in the Gulf of Mexico/Port of Houston [was] largely a consequence of *his* relationship with the forum, and not of any actions [the defendant] took to establish contacts with the forum." *Id.* at 104.

*Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020), confirms that specific action by the defendant in the forum is essential for jurisdiction. There, the New Jersey Attorney General sent a cease-and-desist letter to a Texas company threatening legal action unless the company stopped publishing information about 3D print firearms. *Id.* at 488-89. The Court held that the cease-and-desist letter supported jurisdiction because the attorney general "intentionally mailed [it] into Texas," and had "selective[ly] … targeted" the defendant while ignoring "many similarly-situated persons" in other states. *Id.* at 493, 495. Critically, the Court held that "[n]one of [the other] actions" taken by the attorney general—which included sending "letters to third-party internet service providers based in California urging them to terminate their contracts with Defense Distributed"—"represent[ed] direct contacts with Texas." *Id.* at 489, 492. In short, even if Hines had adequately alleged or discovery had produced evidence that some Defendant affiliated with VP flagged her posts to a social media company, settled precedent forecloses jurisdiction.

Moreover, the amended complaint contains no factual allegations suggesting that VP focused on Louisiana, and discovery produced none. To the contrary, Defendants allegedly engaged in a nationwide campaign "across all 50 states." Am. Compl. ¶ 373; *see id.* ¶ 303. That is the premise of Plaintiffs' putative nationwide class of "social-media users." Am. Compl. ¶¶ 423-24. VP—the project Hines alleges is relevant to her—never assigned anyone to review Louisiana content (although it wouldn't matter if it had, *see infra*). Theodore Decl., Ex. B at 5.

Nationwide conduct that may have some effect in Louisiana alongside other states cannot support jurisdiction. The Fifth Circuit has expressly rejected the theory that if a communication "targets the entire United States," then "it necessarily targets Louisiana" and could support personal jurisdiction. *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 787 (5th Cir. 2021). To the contrary, "[t]o target" posts visible everywhere for supposed censorship "is to target no place at all." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318, 321-22 (5th Cir. 2021); *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002). Here, Plaintiffs' allegation that Defendants equally "targeted the many similarly-situated persons who publish … on the internet," *Def. Distributed*, 971 F.3d at 493, forecloses jurisdiction.

At bottom, Hines' claims must be dismissed because no one from VP ever communicated with anyone in Louisiana about her or flagged any of her posts to any social media company.

### 2.    The Court Lacks Personal Jurisdiction Over Hoft's Claims

Hoft's personal jurisdiction allegations are frivolous. Hoft is a resident of Missouri and operates a news site, The Gateway Pundit, from there. Hoft asserts that his speech relating to the 2020 election was censored, but his actions did not occur in Louisiana, and he does not allege that he has ever posted on social media in or even about Louisiana. Defendants have produced the tickets involving Hoft that were sent to social media platforms, and none even involve Louisiana. Even if EIP had any contacts with Louisiana (and it doesn't), Hoft's claims thus could not possibly arise out of or relate to such a contact. That ends the matter and requires dismissal here.

Hoft's "information and belief" allegations do not support personal jurisdiction, and discovery has not assisted him. Hoft previously alleged, "on information and belief," that "Defendants communicate both with Louisiana government officials and with social-media platforms" to silence speech about elections in Louisiana. Am. Compl. ¶ 382. But the next sentence identifies the purported factual support for that claim, which is an email chain produced in discovery in the

*Louisiana v. Biden* case in which Louisiana government officials reached out to CISA officials. *See id.* (citing *Louisiana v. Biden*, No. 3:22-cv-1213 (W.D. La. May 3, 2023), Doc. 266-5, at 192-200). EIP is not mentioned in any of those emails, and no one at EIP is copied on any of those emails. An email *from* a Louisiana government official to federal government officials—that does not mention or involve EIP in any way—clearly cannot support a claim that EIP, much less any specific Defendant, purposefully targeted Louisiana.

In paragraphs 377 and 378, Plaintiffs allege, again "[o]n information and belief," that Defendants monitored Louisiana speech and "communicated with state officials in Louisiana about supposed disinformation." Am. Compl. ¶¶ 377-78. Again, jurisdictional discovery has not borne out these conclusory allegations. The only evidence Plaintiffs offer in support of these assertions are statements in the EIP's 2021 final report that "each [EIP student] analyst was assigned to a specific state or interest group (see Section 3.3)," and that "*if* an internally generated EIP ticket targeted a particular region, analysts sent a short write-up to the EI-ISAC to share with the relevant election official." Compl., Ex. 1 at 27, 31 (EIP Report at 9, 13) (emphasis added); *see* Am. Compl. ¶ 377. Louisiana is not mentioned in Section 3.3 or anywhere in the EIP report. These generic comments do not evidence purposeful contacts with Louisiana by any Defendant.

As Plaintiffs already knew from the publicly available final report, and as confirmed in discovery, EIP assigned a student to research election laws in all 50 states, including by assigning a student to "Georgia/Louisiana." Theodore Decl., Ex. B at 4-5. But that is not a jurisdictional contact. "[A]ccess[ing] information from Texas sources … is insufficient" to establish personal jurisdiction. *Boyd v. Cleara, L.L.C.*, 2025 WL 2082675, at *3 (5th Cir. July 24, 2025). That is because "knowingly and simply acquiring information from Texas [is] not aiming *tortious conduct* at Texas." *Id.* An allegation that EIP assigned analysts to review online election disinformation relating to every state does not establish purposeful availment "of the privilege of conducting

activities *within* [any particular] forum state," let alone availment by any particular Defendant. *See Sangha*, 882 F.3d at 101 (emphasis added); *Def. Distributed*, 971 F.3d at 493. Reading information about a state online is not an activity *within* a state, does not involve doing business in a state, and is not a jurisdictional contact.

Moreover, as discussed above, it is not the law that someone who "targets the entire United States … necessarily targets Louisiana." *Admar*, 18 F.4th at 787 (citing cases). Were it otherwise, Defendants would have minimum contacts with *all 50 states* simply because they analyzed disinformation related to each state. Plaintiffs can point to no precedent supporting this result.

In any event, the document created by the student assigned to "Georgia/Louisiana" merely described Louisiana voting laws and procedures; it did not identify any social media posts. Theodore Decl., Ex. B at 4-5. And it certainly could not qualify as a jurisdictional contact related to Hoft's claims: Hoft does not allege that he ever posted about any Louisiana election issue, so assigning a student to analyze Louisiana election laws could not have affected Hoft. His claims do not "arise out of or relate to the defendant's contacts with the forum," *Ford*, 592 U.S. at 359 (cleaned up), even if any such contacts had occurred. Under *BMS*, Hoft's decision to join his suit with that of a Louisiana resident does not save his claim. 582 U.S at 265.

Because Hoft has nothing to do with Louisiana, he offers an even more far-fetched theory. He alleges that "Defendants" flagged his Missouri website to non-Louisiana social media platforms "to ensure that it would not reach his substantial audiences in Louisiana and elsewhere." Am. Compl. ¶ 386. That allegation is entirely conclusory; Hoft pleads no facts suggesting that any identified Defendant expressed any concern about his speech reaching Louisiana, as opposed to "elsewhere." And—yet again—discovery offered no support for his claims.

Regardless, Hoft's allegations would fail even if true. He does not allege that any Defendant had any "contact *with* the forum" aimed at preventing his speech from reaching Louisiana.

*Carmona*, 924 F.3d at 194 (emphasis added) (quoting *Walden*, 571 U.S. at 284). An allegation that out-of-state contacts have an "effect" in Louisiana—because a deleted internet post will be equally inaccessible in Louisiana and every other state—cannot establish personal jurisdiction. *See Admar*, 18 F.4th at 787; *Sangha*, 882 F.3d at 103-04 & n.3.

## II.     Plaintiffs Lack Standing

Plaintiffs lack Article III standing because they fail to allege any injury that is fairly trace-able to the challenged actions of any Defendant. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The amended complaint's factual allegations are inadequate under *Murthy v. Missouri*, 603 U.S. 43 (2024), and *Bennett v. Spear*, 520 U.S. 154 (1997), and jurisdictional discovery did not strengthen Plaintiffs' case. Quite the contrary. There is no evidence that any Defendant *ever* sent any content involving Plaintiff Hines to any social media platform. And while some tickets involving Plaintiff Hoft's Gateway Pundit website were sent to platforms—as disclosed publicly by the Judiciary Committee years ago—discovery has confirmed the absence of any factual basis to conclude that EIP or VP, let alone any particular Defendant, coerced any social media platform to censor Plaintiffs' posts or accounts. Rather, discovery confirmed that social media companies responded to flagged posts pursuant to their pre-existing policies and independent judgment.

### A.     Under *Murthy*, Plaintiffs Were Required to Offer Facts Showing that a Particular Defendant Coerced a Platform to Censor Particular Content in a Manner Inconsistent with the Platform's Misinformation Policies

The Supreme Court has long been skeptical of standing claims in cases like this one, where plaintiffs have sued a defendant for actions undertaken by third parties—social media platforms—not before the court. "[I]t is a bedrock principle that a federal court cannot redress 'injury that results from the independent action of some third party not before the court.'" *Murthy*, 603 U.S. at 57 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 42 (1976)). In such cases, plaintiffs must plead (and later prove) that the defendant's conduct, such as the advocacy alleged here, had

a "determinative or coercive effect" on the third parties who allegedly harmed the plaintiffs. *Bennett*, 520 U.S. at 169-71.

In *Murthy*, the same Plaintiffs here—Hines and Hoft—alleged that various federal government defendants pressured social media platforms to censor their posts. 603 U.S. at 49, 64-65. The Supreme Court held that Hines and Hoft lacked standing because they could not establish that the government coerced the platforms' content moderation decisions. 603 U.S. at 64-67. *Murthy* explained that the "one-step-removed" nature of Plaintiffs' injuries made the traceability element of standing particularly difficult to establish. *Id.* at 57.

Although the *Murthy* plaintiffs sought only prospective relief, they relied on claims about past injuries to support that relief. As a result, the Supreme Court specifically addressed the standards for determining "whether the plaintiffs have demonstrated traceability for their past injuries" that could have supported compensatory damages. *Id.* at 59. To establish traceability, plaintiffs must show "specific causation … with respect to any discrete instance of content moderation," and cannot "approach[] standing at a high level of generality." *Id.* The Court noted that the evidence in *Murthy* established that social media platforms were moderating content and strengthening their moderation policies before any involvement from any defendant—as Plaintiffs' allegations and documents incorporated in the amended complaint reflect here as well. *Id.* at 59-61; *see* Compl., Ex. 10 at 16 (VP Report at 9), 133 (126) & fig. 5.1; Am. Compl. ¶ 66. The platforms' "independent incentives to moderate content," and the "exercise[] [of] their own judgment," meant that Plaintiffs could not just point to content moderation and claim that it must be attributable to government pressure; instead, they must offer facts specifically tying content moderation that affected them to government pressure or coercion. 603 U.S. at 59-61.

Thus, "even where the plaintiff, platform, time, content, and defendant line up, the links must be evaluated in light of the platform's independent incentives to moderate content." *Id.* Even

16

where a defendant communicated with Facebook about a plaintiff's content before Facebook acted on that content, *Murthy* held, the factual allegations must plausibly support a conclusion that the action was attributable to "*government-coerced* enforcement of Facebook's policies, rather than to Facebook's independent judgment." *Id.* at 68 (emphasis added; quotation marks omitted); *see id.* at 60 (no standing where "platforms continued to exercise their independent judgment even after communications with the defendants began"). Absent such allegations, Plaintiffs cannot show that their claimed injuries are "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Bennett*, 520 U.S. at 167; *Murthy*, 603 U.S. at 57.

Finally, Plaintiffs may not "treat[] the defendants, plaintiffs, and platforms … as a unified whole." *Murthy*, 603 U.S. at 61. Rather, to establish standing as to each Defendant, Plaintiffs must allege facts showing "that [the] particular defendant pressured a particular platform to censor a particular topic before that platform suppressed a particular plaintiff's speech on that topic." *Id.*

Plaintiffs' amended complaint is devoid of the factual allegations required to allege standing under *Murthy*, and discovery confirms that standing is lacking.

## B. Plaintiffs Lack Standing Under *Murthy*

### 1. Plaintiff Hines Lacks Standing Because EIP and VP Never Sent Her Content to Any Social Media Company

The amended complaint does not allege that EIP or VP, let alone any Defendant, had any communication with any social media platform involving Hines, her Facebook groups, or any of her social media posts. All it alleges is that VP "push[es] platforms to censor" "medical freedom" groups *generally*. Am. Compl. ¶ 374. That is insufficient under *Murthy* as well as under general principles of standing, which require well-pleaded allegations that the defendant's conduct caused harm to the *plaintiff*, not to other people who the plaintiff believes are similar to her.

17

Extensive jurisdictional discovery, including production of the "tickets" that EIP and VP used to track potential examples of misinformation, has identified no instance in which Hines' content was flagged for or sent to any platform. In a single instance in September 2020, an outside political group (not the government) sent EIP a list of 231 links to review, including links to Hines' groups HealthFreedomLA and ReOpenLouisiana. Theodore Decl., Ex. C (EIP-78). EIP reviewed them, concluded that Hines' content was out of scope, and did not send it to any platforms. *Id.*; *see also* Theodore Decl., Ex. A at 4-5; Theodore Decl., Ex. D at Stanford_Hines_00000248.

That ends the matter. In the absence of any allegation that any Defendant ever sent any information involving Jill Hines or either of her Facebook groups to any social media platform, Hines lacks standing to pursue these claims. To the extent any of her content was ever moderated, she has offered no plausible basis to believe that any Defendant had anything to do with it.[4]

This result is no surprise, because the only content moderation that Hines claims as an injury occurred long after VP *stopped* communications with social media platforms. Plaintiffs allege, accurately, that VP started monitoring and flagging work in February 2021 and stopped in August 2021. Am. Compl. ¶ 281; *see also* Stamos Decl. ¶ 6; Compl., Ex. 10 at 34 (VP Report at 27); *id.* at 153 (146) (describing VP's "seven months of work"). Hines alleges that she was subject to three instances of content moderation in 2022 and 2023, all involving COVID-19 related speech on Facebook. She alleges that she was "restricted from Facebook" in "January 2022" and again "in late May 2022" for vaccine-related posts, Am. Compl. ¶ 394, and she further alleges that

---

[4] The amended complaint contains a carefully worded statement that this Court "found" in *Missouri v. Biden*, "based on facts similar to those alleged in this Complaint," that "Hines … was flagged by the Virality Project to be a 'medical freedom influencer.'" Am. Compl. ¶ 380. But the *Missouri* injunction has been vacated in its "entirety." *Missouri v. Biden*, 114 F.4th 406, 407-08 (5th Cir. 2024). Complaint allegations relying on vacated findings must be disregarded. Plaintiffs plead no facts suggesting that VP flagged Hines' posts in the way the vacated order described, and discovery in this matter confirms that VP did not do so.

Facebook "censored" an April 26, 2023 post about the impact of mask mandates on "female reproductive health." *Id.* ¶ 397. Hines cannot plausibly allege that these incidents are attributable to "coercion" by VP and were not "in keeping with [Facebook's] own content-moderation policy" when they began months after VP stopped flagging content. *See Murthy*, 603 U.S. at 70.

Hines lacked standing in *Murthy* because she could not trace her alleged censorship in 2023 to communications between White House officials and Facebook in 2021. *Id.* at 66-68. The "link" between the alleged censorship and the government action was simply too "weak" and "tangential" to support standing. *Id.* at 66. Here, there is *no* link. Not only were there *no communications* between VP and Facebook about Hines, all the alleged censorship happened long after VP stopped communicating with platforms at all. Hines' claims must be dismissed for lack of standing.

### 2. Plaintiff Hoft Lacks Standing Because His Alleged Injuries Stem from Discretionary Actions by Third-Party Social Media Platforms

The amended complaint likewise lacks sufficient allegations to support Hoft's standing, and jurisdictional discovery confirms that he lacks standing because he cannot plead or show that anyone at EIP or VP ever colluded with the federal government to pressure or coerce any social media platform to moderate his content.

As the Supreme Court has long held and *Murthy* reiterated*,* if a defendant's challenged actions were not "the very last step in the chain of causation," plaintiffs must establish that the defendant's actions had a "*determinative or coercive effect* upon the action" of the third party that directly caused the injury. *Bennett*, 520 U.S. at 169 (emphasis added). In this context, where the injury depends "on the *platform*'s actions," Plaintiffs must show not simply that Defendants communicated with platforms, but that, through concerted action with the federal government, "defendants will [or did] coerce [the] chosen platform to restrict" speech. *Murthy*, 603 U.S. at 57, 59. In particular, they must allege facts that, if proven, would show that any censorship was "traceable

to government-coerced enforcement of Facebook's [or another platform's] policies, rather than to
Facebook's [or another platform's] independent judgment." *Id.* at 68 (internal quotation marks
omitted).  There is no standing where "platforms continued to exercise their independent judgment
even after communications with the defendants began." *Id.* at 60.  Such is the case here.

The amended complaint alleges that EIP "repeatedly flagged" Hoft's website, The Gate-
way Pundit, to social media platforms and "mentioned" the website in its June 2021 public report
"47 times."  Am. Compl. ¶¶ 183-84.  Plaintiffs have long been aware—because the Judiciary Com-
mittee made public in 2023 a list of "tickets" involving Hoft or Gateway Pundit—that EIP flagged
certain Hoft/Gateway Pundit posts for Twitter or Facebook in 2020.  For example, Plaintiffs al-
leged in their complaint that EIP reported to Twitter a Gateway Pundit article asserting that poll
watchers were being turned away in Philadelphia, although there is no allegation (or evidence) that
Twitter took action on this post.  Am. Compl. ¶ 129; Compl., Ex. 6 at 4-5.

Although the amended complaint offers a conclusory refrain about "coercion," it contains
no *factual* allegations that support an inference that EIP, VP, or any Defendant coerced Facebook
or Twitter (or anyone else) to moderate Hoft's posts, or how they could have done so.  The
amended complaint does not allege that Defendants exercised any control over any platform.  To
the contrary, it specifically alleges that, in the majority of cases, platforms took no action when
they were alerted to content that EIP regarded as misinformation.  Am. Compl. ¶ 179; Compl., Ex.
1 at 58 (EIP Report at 40).  Though the theory of the amended complaint is that the federal gov-
ernment "induced" platforms to cooperate with EIP and VP, Am. Compl. ¶ 147, it offers no facts
in support of that theory—just conclusory labels.  The findings from *Louisiana v. Biden* and *Mis-
souri v. Biden* on which the amended complaint relies, *e.g.*, *id.* ¶¶ 147-49, have been vacated and
are void because those courts lacked subject-matter jurisdiction.

Jurisdictional discovery definitively precludes a showing of traceability under Article III

20

and *Murthy* because it refutes any notion that any platform was coerced by any Defendant to moderate Plaintiffs' content.  Defendants have produced all tickets that involved communication between EIP or VP and any social media platform relating to Hoft, and none of them contain any indication of any coercion.  To the contrary, they reflect that platforms continued to exercise independent discretion and often ignored what EIP had to say.  Twitter often responded to communications by EIP by noting, "Thanks, Twitter has received and is reviewing," and providing no further information.  *E.g.*, Theodore Decl., Ex. C at pp.3-6 (EIP-607, EIP-872, EIP-949, EIP-977).  In other instances, platforms had flagged Gateway Pundit posts even before the posts were reviewed by EIP.  *Id.* at p.4 (EIP-683).

Other evidence reflects that platforms refused to take action on tickets EIP sent, and in such instances, EIP did nothing to coerce censorship; it merely closed the tickets. After EIP reported EIP-396, which included a Gateway Pundit link, Facebook wrote back: "Just following up here. Thanks for flagging this content, after a thorough review of the content, we can confirm *that it doesn't violate* our community standards as it relates to Voter Suppression."  Theodore Decl., Ex. C at p.2 (EIP-396) (emphasis added).  Similarly, Twitter did not take action on EIP-450, and EIP simply closed the ticket.  *See id.* at p.3 (EIP-450).  After EIP flagged posts about election software to platforms, it reported that "this content was still spreading on Facebook, Instagram, and Twitter without a label." *Id.* at p.5 (EIP-949).  Platforms sometimes took action after EIP sent them information, but sometimes they didn't because they independently determined that the content didn't violate platform policies.

This is precisely the kind of evidence that precluded traceability and thus Article III standing in *Murthy*.  *Murthy* considered evidence that, "on several occasions, various platforms explained that White House officials had flagged content that did not violate company policy," and held that this showed that "platforms continued to exercise their independent judgment even after

communications with the defendants began."  603 U.S. at 60.

Nor is there any link between any Defendant and the single specific instance of censorship Hoft alleges in the complaint—that "Twitter suspended [The Gateway Pundit's] account on February 6, 2021."  Am. Compl. ¶ 188.  This action came months after EIP *stopped* flagging posts to social media companies.  Stamos Decl. ¶ 3; *see* Compl., Ex. 1 at 200, 225 n.1 (EIP Report at 182, 207 n.1); *see* Am. Compl. ¶ 146.  EIP's files do not contain any evidence of any communication with Twitter about Gateway Pundit or Hoft in the leadup to the alleged suspension, much less a coercive communication of the type that *Murthy* requires.

Overwhelming precedent, in addition to *Murthy*, confirms that plaintiffs whose injuries depend on the actions of third parties must establish that those actions were coerced or controlled—not merely affected—by the defendants.  Plaintiffs have no coherent rationale as to *how* platforms could be "coerced" by independent third-parties.  Merely alleging that a defendant contacted a social media platform about a plaintiff and that the platform then moderated the plaintiff's content is simply insufficient as a matter of law.  "Contact does not equal coercion," and "[p]assing along information … is a distant cry from forcing action." *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021).   In *Turaani*, for example, a gun dealer refused to sell to a prospective buyer after an FBI agent visited the dealer to advise that "we have a problem with the company [the buyer] keeps." *Id.* at 315.  Although the dealer remained legally entitled to sell, he said he was "no longer comfortable doing so" after the FBI visit.  *Id.*  The Sixth Circuit held that the would-be buyer lacked standing to sue the FBI because the third-party dealer had retained his "discretion" to sell or not sell.  *Id.* at 317.  Under Supreme Court precedent, a "third party's 'legitimate discretion' breaks the chain of constitutional causation."  *Id.* (citing *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989), and *Simon*, 426 U.S. at 42-43).  As long as the defendant "did not command or coerce" the third-party's action, the plaintiff lacks Article III standing.  *Id.*

The Fifth Circuit explicitly endorsed and adopted *Turaani*'s interpretation of Article III standing in *McRorey v. Garland*, 99 F.4th 831 (5th Cir. 2024). The court held that plaintiffs could not challenge a background-check law on the theory that notices sent under the law were "de facto" causing dealers to delay selling guns for more than 10 business days, because "Plaintiffs have not pointed to any provision of the law that *requires* dealers to wait more than 10 business days" after receiving a notice that there is cause for investigation of the would-be purchaser. *McRorey*, 99 F.4th at 835, 839 (emphasis added). The Court explained that "a third party's 'legitimate discretion' breaks the chain of constitutional causation." *Id.* at 839 (quoting *Turaani*, 988 F.3d at 317).

Similarly, in *Daves v. Dallas County, Texas*, 22 F.4th 522 (5th Cir. 2022), the en banc Fifth Circuit held that plaintiffs lacked standing to sue local district and county judges who set bail schedules because the "bail schedules offer only 'recommended amounts'" for magistrate judges. *Id.* at 542-43. In practice the magistrate judges relied on the schedules, but their independent decisionmaking power still broke the causal chain. *Id.* Where any injury results from the "unfettered choices made by independent actors not before the court based on those actors' broad and legitimate discretion," there is no standing. *Reule v. Jackson*, 114 F.4th 360, 368 (5th Cir. 2024).

These principles are dispositive. The complaint has never alleged facts suggesting that EIP, VP, or any Defendant could or did coerce social media companies' choices. Jurisdictional discovery confirms that platforms exercised discretion at all times. Nor has jurisdictional discovery revealed any evidence supporting Plaintiffs' assertions that Defendants conspired with the federal government to coerce platforms to censor content—indeed, *Murthy* rejected such allegations. *Murthy*, 603 U.S. at 69-74. Plaintiff Hoft lacks standing.

### 3.     The Amended Complaint Does Not Contain Any Standing Allegations Relating to Any Particular Defendant

*Murthy* held that plaintiffs cannot "treat[] the defendants, plaintiffs, and platforms each as

a unified whole," 603 U.S. at 61—and must offer facts establishing a coercive, causal relationship between actions by each "particular defendant," "particular platform," and "particular topic" involved in a particular instance of content moderation, *id.*

Even if this Court concluded that Plaintiffs' allegations sufficed to show coercion (they don't), not a single allegation in the amended complaint attempts to connect the content moderation Plaintiffs challenge to any *particular* Defendant. Plaintiffs conclusorily allege that "*Defendants* urge, pressure, and coerce social-media platforms to monitor and censor disfavored speakers and content." *E.g.*, Am. Compl. ¶ 2 (emphasis added). All of the allegations in the complaint that purport to tie actions by Defendants to content moderation experienced by the Plaintiffs are framed as allegations about the "Defendants" generally, or about "EIP" or "VP." *See id.* ¶¶ 362-421; *see, e.g.*, *id.* ¶ 393 ("Hines and her groups … have experienced extensive social-media censorship. On information and belief, much of this censorship was caused by Defendants' actions."); *id.* ¶ 410 ("On information and belief, Defendants have instigated and continue to instigate social-media censorship of Hoft's and The Gateway Pundit's speech").[5]

These allegations treating Defendants as a "unified whole" are exactly what the Supreme Court declared insufficient. The amended complaint's failure to tie any action by any Defendant to any particular instance of alleged censorship is an independent reason for dismissal. This is particularly true with respect to the individual Defendants. Plaintiffs cannot rely on allegations

---

[5] The amended complaint alleges that Defendant Starbird sent an email on August 6, 2021, relating to platform algorithms that "demote sites like … Gateway Pundit – not just accounts but sites." *See* Am. Compl. ¶ 43; *see also* ECF 77-2 at 60-61 (Am. Compl., Ex. 19). But the email does not support an inference that a "particular defendant pressured a particular platform to censor a particular topic *before* that platform suppressed a particular plaintiff's speech on that topic." *Murthy,* 603 U.S. at 61. The only particular instance of censorship involving the Gateway Pundit alleged in the complaint is that "Twitter suspended The Gateway Pundit's account on February 6, 2021." Am. Compl. ¶ 188 (brackets omitted). Starbird's email came after, not before, that alleged suspension, and the email did not mention, copy, or involve Twitter. ECF 77-2 at 60-61. (In addition, the email on its face has nothing to do with EIP or VP.)

about what EIP or VP did, or what "defendants" did, to support standing against these individuals.

### C.    Plaintiffs Lack Standing to Seek Prospective Relief

Plaintiffs' failure to plead traceability with respect to any past incident of content moderation also "substantially undermines" their claims for prospective relief. *Murthy*, 603 U.S. at 70. But they lack standing to seek such relief for a more fundamental reason: EIP and VP no longer exist, and their activities have not continued. Stamos Decl. ¶¶ 5-6. "To request prospective injunctive or declaratory relief, a litigant must demonstrate continuing harm or a real and immediate threat of repeated injury in the future." *James v. Hegar*, 86 F.4th 1076, 1081 (5th Cir. 2023) (quotation marks omitted). But the amended complaint contains no nonconclusory factual allegations suggesting that EIP or VP currently operate or will in the future. Plaintiffs do not allege that they face "certainly impending" injury attributable to any Defendant—the standard for injunctive relief—and the facts would foreclose such an allegation in any event. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Indeed, the Stanford Internet Observatory, which participated in EIP and VP, no longer exists. Stamos Decl. ¶ 2.

In addition, *Murthy* precludes Plaintiffs from showing the traceability or redressability necessary for prospective injunctive relief. *Murthy* held that the federal government is not currently pressuring any platform to take action relating to election or COVID-19 misinformation and is not likely to do so in the future. *Murthy*, 603 U.S. at 69-74. Since Plaintiffs' claims all rely on the theory that Defendants and the federal government worked together and that Defendants' conduct is actionable because of government-induced pressure coercing the platforms to take action in response to EIP's or VP's communications, *Murthy*'s holding that the government is not engaging in coercion equally precludes injunctive relief against Defendants here.

### CONCLUSION

For the foregoing reasons, the Court should dismiss for lack of jurisdiction.

November 10, 2025

*/s/ Camala E. Capodice*
Quentin F. Urquhart, Jr. (Bar #14475)
Camala E. Capodice (Bar #29117)
Gabrielle C. Broders (Bar #39821)
**IRWIN FRITCHIE URQUHART MOORE**
  **& DANIELS, LLC**
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101
Email:  qurquhart@irwinllc.com
          ccapodice@irwinllc.com
          gbroders@irwinllc.com


Mary E. Gately (*pro hac vice*)
Samantha L. Chaifetz (*pro hac vice*)
**DLA PIPER LLP (US)**
500 Eighth Street NW
Washington, DC 20004
Telephone: (202) 799-4507
Facsimile: (202) 799-5507
Email:  mary.gately@us.dlapiper.com
          samantha.chaifetz@us.dlapiper.com


Marie Bussey-Garza (*pro hac vice*)
**DLA PIPER LLP (US)**
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Telephone: (215) 656-3300
Facsimile: (215) 656-3301
Email:  marie.bussey-garza@us.dlapiper.com


*Counsel for Graphika and Camille François*

Respectfully submitted,

*/s/ James Brown*
James Brown (Bar #14101)
Devin Reid (Bar #32645)
Brady Hadden (Bar #37708)
**LISKOW *&* LEWIS**
Hancock Whitney Center
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
Email:  dcreid@liskow.com
          bhadden@liskow.com
          jabrown@liskow.com


John B. Bellinger III (*pro hac vice*)
Elisabeth S. Theodore (*pro hac vice*)
R. Stanton Jones (*pro hac vice*)
**ARNOLD & PORTER**
  **KAYE SCHOLER LLP**
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Email:  john.bellinger@arnoldporter.com
          elisabeth.theodore@arnoldporter.com
          stanton.jones@arnoldporter.com


*Counsel for Alex Stamos, Renée DiResta, the Board of Trustees of the Leland Stanford Junior University, and Leland Stanford Junior University*

*/s/ Jon K. Guice*

Jon K. Guice (Bar #20841)
**HAMMONDS, SILLS, ADKINS, GUICE, NOAH & PERKINS, L.L.P.**
1881 Hudson Circle
Monroe, Louisiana 71201
Telephone: (318) 324-0101
Facsimile: (318) 322-5375
Email: jguice@hamsil.com

Shelton Dennis Blunt (Bar #21230)
**PHELPS DUNBAR LLP**
II City Plaza | 400 Convention St., Suite 1100
Baton Rouge, Louisiana 70802
Telephone: (225) 346-0285
Facsimile: (225) 381-9197
Email: dennis.blunt@phelps.com

Karl V. Hopkins (admitted *pro hac vice*)
**STEPTOE LLP**
1330 Connecticut Ave.NW
Washington, DC 20036
Telephone: (202) 429-3000
Email: khopkins@steptoe.com

Andrew B. Johnson (*pro hac vice*)
**BRADLEY ARANT BOULT CUMMINGS LLP**
1819 Fifth Ave N
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-6295
Email: ajohnson@bradley.com

*Counsel for Atlantic Council and Graham Brookie*

*/s/ Alex B. Rothenberg*

Alex B. Rothenberg (Bar #34740), T.A.
Ewell E. Eagan (Bar #5239)
Gerald Waltman III (Bar #37347)
Elizabeth A. McGovern (Bar #41342)
**GORDON, ARATA, MONTGOMERY, BARNETT, McCOLLAM, DUPLANTIS & EAGAN, LLC**
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000
Telephone: (504) 582-1111
Facsimile: (504) 582-1121
Email: arothenberg@gamb.com
eeagan@gamb.com
jwaltman@gamb.com
emcgovern@gamb.com

Rob McKenna (*pro hac vice*)
Daniel Dunne (*pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
401 Union Street- Suite 3300
Seattle, WA 98101
Telephone: (206) 839-4300
Facsimile: (206) 839-4301
Email: ddunne@orrick.com
emckenna@orrick.com

Geoffrey Shaw (*pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
355 S. Grand Ave., Ste. 2700
Los Angeles, CA 90071
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
Email: geoffreyshaw@orrick.com

*Counsel for Kate Starbird*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 10, 2025, I filed the foregoing via the Court's CM/ECF

system which will send notification of such filing to all counsel of record.

*/s/ James Brown*