UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

JILL HINES ET AL                          CASE NO.  3:23-CV-00571

VERSUS                                    JUDGE TERRY A. DOUGHTY

ALEX STAMOS ET AL                         MAG. JUDGE KAYLA D. MCCLUSKY

## MEMORANDUM RULING

Before the Court is a Renewed Joint Motion to Dismiss for Lack of Subject Matter and Personal Jurisdiction [Doc. No. 191] filed by Defendants, Alex Stamos, Renée DiResta, the Board of Trustees of the Leland Stanford Junior University, the Leland Stanford Junior University, Kate Starbird, Graphika, Camille François, the Atlantic Council, and Graham Brookie (collectively, "Defendants"). Plaintiffs, Jill Hines ("Hines") and Jim Hoft ("Hoft") (collectively, "Plaintiffs"), filed an Opposition [Doc. No. 207]. Defendants then filed a Reply [Doc. No. 209].

For the reasons set forth, Defendants' Motion is **GRANTED**.

## I.    BACKGROUND

This case is before the Court on limited remand to determine jurisdiction. *Hines v. Stamos*, 111 F.4th 551 (5th Cir. 2024); *see also* [Doc. No. 112]. On May 2, 2023, Plaintiffs filed a complaint before this Court, alleging Defendants used two cooperative research projects—the Election Integrity Partnership ("EIP") and the Virality Project ("VP")—to survey and censor disfavored speech related to elections

Page **1** of **23**

and COVID-19 on social media platforms such as Facebook, Twitter, and YouTube.[1] On August 14, 2023, Defendants filed a motion to compel arbitration and a motion to dismiss under Rule 12(b)(1), (2), (3), and (6).[2] This Court denied the motion to compel arbitration, which Defendants timely appealed to the Fifth Circuit.[3] On July 30, 2024, the Fifth Circuit issued its opinion, finding this Court erred by failing to resolve jurisdictional challenges prior to deciding arbitrability, and vacating and remanding the decision "for the limited purpose of allowing the district court to determine whether it has personal jurisdiction and subject-matter jurisdiction over Defendants." *Hines*, 111 F.4th at 566. On November 10, 2025, Defendants filed the pending Renewed Motion to Dismiss for Lack of Jurisdiction.[4] Plaintiffs opposed the Motion[5], and Defendants filed a reply.[6]

The parties have briefed all relevant issues, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

Defendants assert that Plaintiffs' Complaint must be dismissed under Rule 12(b)(1)–(2), for lack of subject-matter and personal jurisdiction.[7] "Article III standing is a bedrock constitutional requirement . . . ." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) (citation modified). Accordingly, the Court's first inquiry will turn to whether Plaintiffs have standing to assert their claims, before examining whether it may exercise personal jurisdiction under Rule 12(b)(2).

---

[1] [Doc. No. 1].
[2] [Doc. Nos. 69; 70].
[3] [Doc. Nos. 88; 89].
[4] [Doc. No. 191].
[5] [Doc. No. 198].
[6] [Doc. No. 209].
[7] [Doc. No. 191, p. 1].

**A.      Dismissal is warranted under Rule 12(b)(1) because Plaintiffs lack standing**

### 1.      Legal Standard for Article III Standing

If a court determines at any time that the action lacks subject matter jurisdiction, the court must dismiss the action. FED. R. CIV. P. 12(h)(3). Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies." U.S. Const. Art. III, § 2. Standing—i.e., the need to demonstrate that the plaintiff has a direct, personal stake in the outcome of the suit—is an "essential and unchanging part" of this case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Article III standing requires that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016).

When subject matter jurisdiction is challenged by a Rule 12(b)(1) motion, the burden of establishing the federal court's jurisdiction falls on the party asserting the jurisdiction—in this case, Plaintiffs. *See Wittman v. Personhuballah*, 578 U.S. 539, 545 (2016). Federal district courts have the unique power to make factual findings that are decisive of subject matter jurisdiction. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1983). A district court has the power to dismiss for lack of subject matter jurisdiction—and thus for lack of standing—on any one of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413. In this case, Defendants

base their jurisdictional attack on the amended complaint supplemented by undisputed facts evidenced in the record from discovery.

"There are two types of attacks against a court's subject-matter jurisdiction: 'facial' and 'factual.'" *Reardon v. Am. Airlines, Inc.*, 167 F.4th 294, 299 (5th Cir. 2026) (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). Defendants' pending Motion presents a factual challenge as they attach and rely on evidence produced from discovery to support their Motion.[8] In factual attacks, the court may also look at parties' "affidavits, testimony, or other evidentiary materials" to ensure it has subject matter jurisdiction. *Id.* at 300. "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction, there is substantial authority that the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citation modified).

"Where . . . the parties have taken discovery, the plaintiff cannot rest on 'mere allegations,' but must instead point to factual evidence." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (internal quotation marks omitted) (quoting *Lujan*, 504 U.S. at 561). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain Plaintiffs cannot provide any set of facts in support of their claims that would entitle Plaintiffs to relief. *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

---

[8] *See generally* [Doc. Nos. 191-2, 191-3, 191-4].

## 2.    The Court finds Plaintiffs lack standing

In this case, Defendants argue that Plaintiffs lack standing because they fail to allege any injury that is "fairly traceable" to the challenged actions of any Defendant.[9] Defendants contend the jurisdictional discovery ordered by the Court "confirmed the absence of any factual basis to conclude that EIP or VP, let alone any particular Defendant, coerced any social media platform to censor Plaintiffs' posts or accounts."[10] In opposition, Plaintiffs aver that they have adequately established traceability as Hines' content on Facebook was restricted only after Defendants flagged her content to Facebook and Hoft's content was censored "as a direct result of Defendants' report."[11]

The Fifth Circuit instructed this Court on remand to address whether Plaintiffs have standing (or personal jurisdiction) in light of the Supreme Court's decision in *Murthy v. Missouri. Hines*, 111 F.4th at 566–67. In *Murthy*, the Supreme Court considered whether a group of Plaintiffs, comprised of two states and a group of social-media users, had standing to seek injunctive relief against the defendants, dozens of Executive Branch officials and agencies, who allegedly coerced social-media platforms into censoring their speech in violation of the First Amendment. *Murthy*, 603 U.S. at 48.  The *Murthy* Court concluded all of the plaintiffs failed to establish a likelihood of standing, rejecting the lower courts' broad assertions that social media

---

[9] [Doc. No. 191-1, p. 20].
[10] [Doc. No. 191-1, p. 20].
[11] [Doc. No. 207-1, p. 22–24].

platforms' censorship of plaintiffs was likely attributable to government defendants' directives. *Id.* at 59–60, 76.

Under *Murthy*, "it is a bedrock principle that a federal court cannot redress 'injury that results from the independent action of some third party not before the court.'" *Id.* at 57 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 42 (1976)). However, "that does not exclude injury [from a third party that was] produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997). The *Murthy* Court clarified that coercion is beyond mere communication and occurs when a party significantly encourages or compels the social media platform to take action. *Murthy*, 603 U.S. at 55. Coercion occurs when the party exercises "active, meaningful control, whether by entanglement in the party's decision-making process or direct involvement in carrying out the decision itself." *Id.* While *Murthy* addressed the necessity of a finding of coercion and traceability of past injuries to award prospective relief, the Fifth Circuit has held that coercion or determination is likewise required to trace a third party's conduct to a defendant in a case seeking damages. *Jackson v. City of Houston*, 143 F.4th 640, 645 n.4 (5th Cir. 2025). Thus, the Court must dismiss "theories that require guesswork as to how independent decisionmakers will exercise their judgment," and instead will only find an injury fairly traceable to Defendants if Plaintiffs demonstrate that one of the Defendants coerced or determined the third-party social media platform to restrict their speech. *Murthy*, 603 U.S. at 57–59 (quoting *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019)).

The Court will now address the threshold issue of standing as to Hines before turning to Hoft.

### a.    Hines lacks standing because EIP and VP never sent content to any social media company

Plaintiffs' amended complaint alleges Hines' Facebook group, Health Freedom Louisiana, was targeted by the VP for spreading the anti-COVID-19-vaccine narrative and VP, on Plaintiffs' "information and belief," pushed social media platforms to censor her.[12] However, Defendants assert the general allegations that Plaintiffs' content was censored, without evidentiary support in light of the extensive jurisdictional discovery, are insufficient to conclude there was a causal relationship between Defendants' targeting of Hines' speech and Facebook's censoring of the speech.[13] Defendants argue Hines' claim must be dismissed for lack of standing because she cannot trace Facebook's censoring actions to coercion from any of the Defendants.[14]

In opposition, Plaintiffs argue traceability is established as "Facebook took action against Hines' account—thereby limiting other users' access to her speech— only after Defendants flagged her content to Facebook."[15] Hines' alleged censorship actions from Facebook include a thirty-day posting ban in January 2022 "for sharing the image of a display board used in a legislative hearing that had Pfizer's preclinical trial data on it," a 90-day restriction on her personal account in 2022, and censorship

---

[12] [Doc. No. 77, p. 80 at ¶¶ 373–374].
[13] [Doc. No. 191-1, p. 22].
[14] [Id. at p. 23].
[15] [Doc. No. 207-1, p. 22].

of a post detailing health consequences of mask mandates posted on April 26, 2023.[16] However, none of these censorship actions connect Facebook, the "independent decisionmaker," to Defendants. *Murthy*, 603 U.S. at 57–59 (quoting *Dep't of Commerce v. New York*, 588 U.S. at 768).

The only example of Defendants taking notice of Hines' content is Jira ticket EIP-78.[17] The ticket lists a hyperlink to Hines' post in her group Reopen Louisiana on August 22, 2020, asking her audience to reach out to their state legislatures to end the public health emergency.[18] The ticket stated EIP "created sub tickets for each [social media] network and are looking into them" on September 8, 2020, and sent out an update that some sites were found to be out-of-scope of their work "as no election-related content was found."[19] The next day, Facebook censored Hines' Reopen Louisiana Facebook account.[20] Hines claims to have received a notification on the day of the censorship, detailing Facebook's justification for censorship was due to violating Facebook's policies regarding "Inauthentic Behavior" and the platform would be imposing "reduced distribution and other restrictions" as a result of the alleged violation.[21]

Plaintiffs' reliance on the Ninth Circuit's decision in *O'Handley v. Weber* to show that a causal relationship between flagging the speech to a social media platform and the platform subsequently censoring the speech is inapplicable here. 62

---

[16] [Doc. No. 77, p. 85 at ¶¶ 394, 397].
[17] [Doc. No. 207-2, p. 5].
[18] [Id.].
[19] [Id. at p. 2].
[20] [Doc. No. 198-1, ¶ 15].
[21] [Id.].

F.4th 1145, 1161–62 (9th Cir. 2023). Primarily, it goes without saying that *O'Handley* is not controlling; however, it may be considered for its persuasive value. *See U.S. v. Diamond*, 430 F.3d 688, 692 (5th Cir. 1970) (this court is not bound by the case law of another circuit). In *O'Handley*, the California Office of Elections Cybersecurity ("OEC"), headed by the California Secretary of State's office, flagged posts on Facebook and Twitter as erroneous or misleading social media posts. 62 F.4th at 1154–55. Twitter's flagging process for the OEC was different than the ordinary users, as "[a] limited number of government agencies and civil society groups also had access to an expedited review process through what Twitter called its Partner Support Portal." *Id.* at 1154. The OEC had access to the Partner Support Portal ("Portal"), and any tweets flagged by the OEC through the Portal were reviewed by Twitter's content moderators, who then would decide whether remedial action was warranted. *Id.* The social media platforms removed most of the flagged posts, including the plaintiff's posts from November 12, 2020. *Id.* at 1153–54. Consequently, the plaintiff filed suit alleging, among other things, violation of the First Amendment. *Id.* at 1154–55. The Ninth Circuit found traceability was established as there was "a causal line from the OEC's flagging of the November 12th post to [plaintiff's] suspension from the platform." *Id.* at 1161. The *O'Handley* court found the causal line was easy to draw when Twitter's censorship actions were only imposed on the plaintiff after the OEC placed the plaintiff's account on the social media platform's radar by flagging the plaintiff's post through the Portal. *Id.* at 1162.

Here, no one placed anything on Facebook's radar. Unlike the OEC's flagging of posts to Twitter through the Portal in *O'Handley*, Plaintiffs do not provide any evidence that Hines' post was flagged to Facebook. The subject matter of Hines' post, political activism to end the public health emergency, is exactly the type of content that is out-of-scope of EIP's election-related content monitoring.[22] The Jira ticket data confirms the post was out-of-scope and counsel for Defendants, Elisabeth Theodore, testified in a sworn declaration that discovery didn't reveal any documents of VP or EIP flagging posts from Hines to any social media platforms.[23]

As a final Hail Mary, Plaintiffs argue the close temporal proximity between EIP opening Jira ticket EIP-78 and Facebook's censorship of Reopen Louisiana "provides strong reason to believe that EIP played a causal role in the censorship occurring."[24] To support their argument, Plaintiffs rely on the *prima facie* standard for employment retaliation, asserting that temporal proximity alone is sufficient to establish causation at this stage.[25] While the Fifth Circuit "has been neither so explicit nor consistent in enforcing a separate, free-standing knowledge requirement at the pleading stage," temporal proximity alone, without the decisionmaker's knowledge, is legally insufficient to demonstrate a causal relationship once discovery has occurred. *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at * 8 (5th Cir. 2024). Even if the Court were to apply employment retaliation standards to the case at hand, this litigation is well beyond the *prima facie* stage as discovery has occurred.

---

[22] [Doc. No. 207-2, p. 2].
[23] [Doc. No. 191-1, p. 23], [Doc. No. 191-5, p. 2], [Doc. No. 191-2, ¶ 3].
[24] [Doc. No. 207-1, p. 11].
[25] [Id.].

As stated above, discovery did not reveal that Defendants flagged Plaintiff Hine's posts to Facebook.

Moreover, "even where the plaintiff, platform, time, content, and defendant line up, the links must be evaluated in light of the platform's independent incentives to moderate content." *Murthy*, 603 U.S. at 61. Facebook has had "longstanding content-moderation policies" in place for years. *Id.* at 50. Examples of its policies targeting speech it deems to be false or misleading include but are not limited to: fact-checking and demoting posts containing misleading claims about elections beginning in 2016, removing health-related misinformation beginning in 2018, and taking action against users or posts that questioned the integrity of the 2020 Presidential election results. *Id.* at 50–51. Plaintiffs do not claim Facebook lacked independent incentives to moderate their content; in fact, Hines testified she received Facebook's own content-policy justification in her notification.[26] Absent evidence to the contrary, this notification demonstrates that Facebook acted pursuant to its own "independent incentives to moderate content" rather than Defendants' coercion. *Murthy*, 603 U.S. at 61. Accordingly, Plaintiffs have failed to establish traceability from Facebook's censorship actions to any "coercion" or "significant encouragement" by Defendants necessary under *Murthy*. *Id.* at 69.

As Hines has failed to demonstrate standing—the "essential and unchanging part" of the case-or-controversy requirement under Article III—Defendants' Motion to Dismiss is **GRANTED** as to Hines' claims. *Lujan*, 504 U.S. at 560.

---

[26] [Doc. No. 198-1, ¶ 15].

### b. Hoft lacks standing because his alleged injuries stem from discretionary actions by third-party social media platforms.

Plaintiffs' amended complaint alleges that Hoft faced censorship of his social media platforms for posts related to COVID-19 and election security due to the actions of Defendants.[27] Plaintiffs assert that the suspension of Hoft's Twitter account, *The Gateway Pundit*, on February 6, 2021, was due to the EIP's efforts to flag his speech as misinformation to social-media platforms.[28] Nineteen tickets from the EIP and the VP involved speech from Hoft's website, *The Gateway Pundit*, or posts from *The Gateway Pundit's* social-media accounts.[29] On some of the tickets, Defendants made recommendations to social media platforms to remove posts from Hoft.[30] However, none of the tickets reveal what actions the social media platforms took because of Defendants' flags. Responses from social media platforms to Defendants' tickets varied among the nineteen tickets. Sometimes the social media platform would simply respond that it was reviewing the content,[31] sometimes it would respond saying the content didn't violate community standards,[32] sometimes the ticket stated the original post "was actioned" by the social media platform,[33] and

---

[27] [Doc. No. 77, ¶ 11].

[28] [Id. at ¶¶ 184, 188].

[29] [Doc. No. 207-1, p. 23]; *see also* U.S. House Judiciary Committee, Spreadsheet of Jira Tickets, Tab 1 (EIP-396); Tab 2 (EIP-216, EIP-243, EIP-556, EIP-605, EIP 683, EIP-713, EIP-829); Tab 3 (EIP-402, EIP-450, EIP-455); Tab 4 (EIP-244, EIP-312, EIP-872); Tab 5 (EIP-607, EIP-920, EIP-952, EIP-977); Tab 8 (VP-950).

[30] *See* [Doc. No. 191-5, p. 3] (For EIP-396, EIP recommended the story from *The Gateway Pundit* be removed from Facebook, Twitter, and Facebook).

[31] U.S. House Judiciary Committee, Spreadsheet of Jira Tickets, Tab 2 (EIP-605).

[32] [Doc. No. 191-5, p. 3].

[33] [Doc. No. 207-4, p. 7].

sometimes the ticket detailed that the social media platform had "already taken labeling action on the post."[34]

Defendants admit that some Jira tickets linking Hoft's *The Gateway Pundit* were sent to social media platforms.[35] However, Defendants maintain Hoft cannot establish standing as "he cannot plead or show that anyone at EIP or VP ever colluded with the federal government to pressure or coerce any social media platform to moderate his content."[36] Defendants concede that social media "[p]latforms sometimes took action after EIP sent them information."[37] Be that as it may, Defendants assert that discovery revealed the EIP's files did not contain evidence of any communication with Twitter about *The Gateway Pundit* or Hoft in the lead-up to his account's alleged suspension on February 6, 2021, "much less a coercive communication of the type that *Murthy* requires."[38] They maintain "discovery confirmed that social media companies responded to flagged posts pursuant to their pre-existing policies and independent judgment[,]" not due to coercion by any Defendants.[39]

As a refresher, the requirements of Article III standing are that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Hoft allegedly suffered injuries when his Twitter account,

---

[34] [Doc. No. 209-10, p. 3].
[35] [Doc. No. 191-1, p. 20].
[36] [Id. at p. 24].
[37] [Id. at p. 26].
[38] [Id. at p. 27].
[39] [Id. at p. 20].

*The Gateway Pundit*, was temporarily suspended on January 2 and January 29, 2021, and later permanently suspended on February 6, 2021.[40] As such, Hoft has established an injury in fact.

Plaintiffs also argue that Jira tickets EIP-402 and EIP-556 show Hoft's injuries. The Court disagrees. Under EIP-402, Defendants flagged a post by *The Gateway Pundit* to Facebook and Twitter on October 19, 2020, at 6:34 PM.[41] However, the ticket commentary posted a few hours earlier revealed that Facebook had "already taken labeling action on the post."[42] Facebook's labeling action on Hoft's post before Defendants flagging it to the social media platform clearly demonstrates that Facebook acted pursuant to its own "independent incentives to moderate content" rather than Defendants' coercion. *Murthy*, 603 U.S. at 61. Turning to EIP-556, the Court finds that an injury was not established when TikTok censored three posts from a different user, @turtlefren, that were listed on the ticket along with *The Gateway Pundit*'s Facebook post about the same content.[43] Since the ticket does not detail what action, if any, Facebook took against Hoft's post, and Plaintiffs do not prove otherwise, Plaintiffs' allegation of injury fails as to EIP-556.

Next, the Court looks at traceability. Similar to the OEC's flagging of posts to Twitter through the Portal in *O'Handley*, the EIP tickets demonstrate that Hoft's content was flagged to various social media platforms. *See O'Handley*, 62 F.4th at 1153–55. The *O'Handley* court found the causal line was easy to draw when Twitter's

---

[40] [Doc. No. 77, ¶¶ 184, 188], [Doc. No. 209-6, p. 25–26].
[41] U.S. House Judiciary Committee, Spreadsheet of Jira Tickets, Tab 3 (EIP-402).
[42] [Doc. No. 209-10, p. 3].
[43] [Id. at p. 9]; [Doc. No. 207-1, p. 23].

censorship actions were only imposed on the plaintiff after the OEC placed the plaintiff's account on the social media platform's radar by flagging the post through the Portal. *Id.* at 1162. In the case at hand, four Jira tickets show that Hoft's posts from his Twitter account, *The Gateway Pundit*, were flagged to Twitter prior to his account's suspension: EIP-683, EIP-713, EIP-816, and EIP-920. EIP-683 links to *The Gateway Pundit*'s Twitter post on November 3, 2020, about alleged Democrat electioneering in Philadelphia, and Twitter responded that evening, saying that the flag was received and it was reviewing the post.[44] EIP-713 features a post from *The Gateway Pundit*, posted on November 3, 2020, linking to an article by *The Gateway Pundit* about allegations of an official ballot box in Philadelphia being removed by a civilian.[45] The same day, an EIP worker tagged Twitter, and later noted on the ticket that "Twitter has limited the original tweet."[46] EIP-816 links to a post from *The Gateway Pundit* tweeted on November 4, 2020, discussing voter fraud allegations in Wisconsin, to which Twitter responded that it received the EIP's flag about the post on November 5, 2020.[47] EIP- 920 links to *The Gateway Pundit*'s post from November

---

[44] [Doc. No. 207-1, p. 18]; U.S. House Judiciary Committee, Spreadsheet of Jira Tickets, Tab 2 (EIP-683); https://x.com/gatewaypundit/status/1323659291577012224; [Doc. No. 191-5, p. 5] (The Court notes the public redacted version of EIP-683 does not contain Twitter's response. Twitter's response to the flagged post is found in the Jira Ticket Dataset published by the House of Representatives Committee on the Judiciary. Both parties referenced the public dataset in their filings. The Court does not reference redactions that were made to protect the identities of student and non-party individuals. The Court only references Twitter's response to the flagged post that was not produced by Defendants.).

[45] U.S. House Judiciary Committee, Spreadsheet of Jira Tickets, Tab 2 (EIP-713); https://x.com/gatewaypundit/status/1323752928067420162.

[46] U.S. House Judiciary Committee, Spreadsheet of Jira Tickets, Tab 2 (EIP-713).

[47] Id. at Tab 4 (EIP-816).

6, 2020, about alleged voter fraud in Michigan.[48] Twitter responded to the EIP later that day to note it received the flag and was reviewing it.[49]

While it is unknown if Twitter suspended Hoft's account, *The Gateway Pundit*, as a result of Defendants placing his account on Twitter's radar, Defendants concede that social media "[p]latforms sometimes took action after EIP sent them information."[50] Plaintiffs assert Defendants' reporting of Hoft's posts and Twitter's censorship as a direct result of the reports establishes a direct causal link.[51] While this uncertainty as what action Twitter took, if any, after EIP placed Hoft's posts on Twitter's radar could pass the traceability standard under *O'Handley*, the lack of evidence pointing to what action Twitter took does not pass the high barrier of causal connection required to establish traceability under the Supreme Court's holding in *Murthy*. Under *Murthy*, a defendant may be held liable for a plaintiff's injury that results from a third-party action only if the defendant had a coercive effect on the third party's actions. 603 U.S. at 69. Plaintiffs, however, have not provided any evidence that any social media platform took action against Hoft's content due to being flagged by Defendants.[52] While the Jira tickets establish EIP communicated with Twitter about Hoft's account, the *Murthy* Court clarified coercion is beyond mere communication and only occurs when a party significantly encourages or compels the social media platform to take action. *Murthy*, 603 U.S. at 55. The Court agrees with

---

[48] Id. at Tab 5 (EIP-920).
[49] Id.
[50] [Doc. No. 191-1, p. 26].
[51] [Doc. No. 207-1, p. 23–24].
[52] [Id. at p. 24].

Defendants that "discovery has confirmed the absence of any factual basis to conclude the EIP or VP, let alone any particular Defendant, coerced any social media platform to censor Plaintiffs' posts or accounts."[53] Plaintiffs have failed to demonstrate that Defendants exercised "active, meaningful control" in the suspension of Hoft's Twitter account, Twitter did not take a suspension action to Hoft's platform until two months after Defendants' first flag of *The Gateway Pundit*.[54] *Id.* Accordingly, traceability cannot be established.

As Hoft has failed to demonstrate standing, Defendants' Motion to Dismiss is **GRANTED** as to Hoft's claims.

### c.    No prospective relief

Defendants seek the Court to dismiss Plaintiffs' claims for prospective relief. Contrary to Plaintiffs' belief that a motion to dismiss under Rule 12(b)(1) does not include claims for prospective relief, the Supreme Court holds "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, *injunctive relief* and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citation omitted). To obtain prospective relief, "[P]laintiffs must establish a substantial risk of *future* injury;" that injury must be traceable to Defendants; and the injury is "likely to be redressed by an injunction against them." *Murthy*, 603 U.S. at 69 (emphasis added). "To carry that burden, the plaintiffs must proffer evidence that the defendants' 'allegedly wrongful behavior w[ould] likely occur

---

[53] [Doc. No. 191-1, p. 20].
[54] U.S. House Judiciary Committee, Spreadsheet of Jira Tickets, Tab 2 (EIP-683); https://x.com/gatewaypundit/status/1323659291577012224.

or continue.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

Here, Plaintiffs have not established a substantial risk of future injury that is traceable to Defendants as "EIP and VP no longer exist, and their activities have not continued."[55] Plaintiffs have not offered any evidence to the contrary. *See Murthy*, 603 U.S. at 59 (If "a plaintiff cannot trace her past injury to one of the defendants, it will be much harder for her to prove that she faces a continued risk of future restriction that is likely to be traceable to that same defendant.") (citation omitted). In fact, two Defendants who were alleged to have flagged Plaintiffs' content to social media platforms, EIP and VIP, no longer exist.[56] Accordingly, the Court finds the Motion is **GRANTED** as to Plaintiffs' claim for prospective relief.

### B.    Dismissal is warranted under Rule 12(b)(2) because the Court lacks personal jurisdiction over Defendants

#### 1.    Rule 12(b)(2) Legal Standard

Rule 12(b)(2) authorizes a motion to dismiss for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). Plaintiffs bear the burden of establishing that personal jurisdiction exists over each defendant as to each plaintiff and claim; however, on a pretrial motion such as this one where no evidentiary hearing is held, Plaintiffs need only make a *prima facie* case for supporting such jurisdiction. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017); *Alpine View Co. v. Atlas Copco AB*, 05 F.3d 208, 215 (5th Cir. 2000). "Moreover, on a motion to dismiss for lack of

---

[55] [Doc. No. 191-1, p. 30].
[56] [Id.].

jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (quoting *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)). As Defendant correctly points out, there are nine separate Defendants in this action and "each defendant's contacts with the forum State must be assessed individually."[57] *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984); *see BMS*, 582 U.S. at 268; *see also Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 442 (5th Cir. 2022).

A defendant may be subject to either general jurisdiction or specific jurisdiction. Plaintiffs assert the Court can exercise specific personal jurisdiction over Defendants.[58] Specific jurisdiction exists where a nonresident defendant "has 'purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)). The Fifth Circuit follows a three-step inquiry into specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or

---

[57] [Id. at p. 12].
[58] [Doc. No. 207-1, p. 8].

results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citation omitted).

### 2.    Plaintiff Hines

Even if the Court found that Hines has standing (which we previously determined she does not), Defendants argue for the Court to dismiss Hines' claims for lack of personal jurisdiction because discovery proved that neither the VP or the EIP flagged posts by Hines to any social media platform.[59] Hines does not allege otherwise, she merely asserts that the VP targeted health or medical freedom groups "like" hers, but does not offer any evidence that she herself was targeted.[60] The VP was a research project aimed at analyzing online mis- and dis- information relating to COVID-19.[61] The Court agrees with Defendants that discovery revealed the VP did not specifically target Louisiana—no one was assigned to review content coming from Louisiana.[62]  As discussed under Hines' standing claim, the Court finds that the VP didn't place any of Hines' posts on any social media platforms' radars, and thus did not have any qualifying Louisiana contacts. The Court finds Plaintiffs fail to establish the first two steps of specific jurisdiction: they cannot prove that any Defendant had minimum contacts with Louisiana, and consequently, Hines' claims could not possibly arise out of or relate to such a contact. *Seiferth*, 472 F.3d at 271.

---

[59] [Doc. No. 191-1, p. 14].
[60] [Doc. No. 77, ¶ 362].
[61] [Doc. No. 191-7, ¶ 6].
[62] [Doc. No. 191-4, p. 6]

### 3.    Plaintiff Hoft

Even if the Court followed *O'Handley* and found that Hoft has standing (which as we previously discussed above that Hoft does not), Defendants urge the Court to dismiss Hoft's claims for lack of personal jurisdiction.[63] Defendants argue his allegations "could not possibly arise out of or relate to" Defendants' contacts with Louisiana because Hoft is a resident of Missouri, operates his social media platforms from Missouri, and does not allege to have posted on social media in or even about Louisiana.[64] The four Jira tickets flagging *The Gateway Pundit* to Twitter featured election-fraud allegations in Philadelphia, Wisconsin, and Michigan.[65] None of the tickets produced in discovery involve Louisiana.[66] Plaintiffs attempt to argue that the EIP's assignment of a student-employee to serve as the analyst for Louisiana "confirms that Defendants specifically intended to target speech relating to Louisiana."[67]

The Court declines to make that unwarranted analytical leap. Students at the EIP were assigned to conduct research on all fifty states and the District of Columbia, and one student was assigned to cover Georgia and Louisiana.[68] The research was compiled into state template documents, and the Louisiana template document

---

[63] [Doc. No. 191-1, p. 17].
[64] [Id.].
[65] *See* U.S. House Judiciary Committee, Spreadsheet of Jira Tickets, Tab 2 (EIP-683), (EIP-713); Tab 4 (EIP-816); Tab 5 (EIP-920).
[66] *See generally* U.S. House Judiciary Committee, Spreadsheet of Jira Tickets, Tab 1 (EIP-396); Tab 2 (EIP-216, EIP-243, EIP-556, EIP-605, EIP 683, EIP-713, EIP-829); Tab 3 (EIP-402, EIP-450, EIP-455); Tab 4 (EIP-244, EIP-312, EIP-872); Tab 5 (EIP-607, EIP-920, EIP-952, EIP-977); Tab 8 (VP-950).
[67] [Doc. No. 198, p. 15].
[68] [Doc. No. 191-4, p. 5].

"exclusively contains information about Louisiana's voting laws and procedures."[69] Notably, Defendants argue that this research "does not reference any social media posts involving Louisiana or involving any speakers in Louisiana, and it does not contain any discussion of alleged misinformation or disinformation on social media."[70] While Plaintiffs argue that the student assigned to research Georgia and Louisiana participated in three tickets about The Gateway Pundit, none of the flagged content involves Louisiana.[71]

Plaintiffs' reliance on these attenuated online research activities to establish personal jurisdiction fails under the Fifth Circuit's holding in *Boyd v. Cleara, L.L.C.*, No. 24-10609, 2025 WL 2082675, at *3 (5th Cir. July 24, 2025). In that case, the Fifth Circuit held that a defendant who merely accessed information from Texas sources to prepare a criminal history report for a Massachusetts corporation did not subject the defendant to specific personal jurisdiction in Texas as the defendant did not have the actual knowledge that the report would be used in Texas. *Id.* Applying that reasoning here, compiling research on Louisiana voting laws and procedures does not constitute minimum contact, as simply acquiring information from Louisiana does not aim tortious conduct at Louisiana. *Id.* Hoft is a resident of Missouri, operating his platforms from Missouri, and the flagged tickets do not concern Louisiana. Although an EIP participant used a search application to identify social media interactions with a post from *The Gateway Pundit*, and identified a Twitter user who appears to

---

[69] [Id. at p. 6].
[70] [Id.].
[71] [Doc. No. 198, p. 18]; [Doc. No. 209, p. 9 n. 3].

be from Louisiana, the Court is not persuaded that this qualifies as a Louisiana-based contact or a "purposeful availment" of the privilege of conducting activities in Louisiana.[72] The Court finds Plaintiffs fail to establish the first two steps of specific jurisdiction: they cannot prove that any Defendant had minimum contacts with Louisiana, and consequently, Hoft's claims could not possibly arise out of or relate to such a contact.[73] *Seiferth*, 472 F.3d at 271. To quote Defendants, "[t]hat ends the matter and requires dismissal here."[74]

Accordingly, the Court finds the Motion is **GRANTED** as the Court lacks personal jurisdiction over all Defendants.

## III.  CONCLUSION

As the Court finds that it lacks personal jurisdiction and subject-matter jurisdiction in light of *Murthy*,

**IT IS ORDERED**, **ADJUDGED**, **AND DECREED** that Defendants' Renewed Joint Motion to Dismiss for Lack of Subject Matter and Personal Jurisdiction [Doc. No. 191] is **GRANTED**, and Plaintiffs' claims against Defendants are **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 1st day of July 2026.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

---

[72] [Doc. No. 198, p. 19].
[73] [Doc. No. 191-1, p. 17].
[74] [Id.].

Page **23** of **23**